# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| Plaintiff-Counterclaim Defendant, | No. C04-0142 |
| vs. | **ORDER** |
| ROBERT MEILL, | |
| Defendant-Counterclaimant. | |
| -------------------------------------------------- | |
| ROBERT MIELL, | |
| Third-Party Plaintiff, | |
| vs. | |
| BRETT THROLSON and BRETT THROLSON AGENCY, INC., | |
| Third-Party Defendants. | |

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Relevant Prior Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II. STATEMENT OF MATERIAL FACTS* . . . . . . . . . . . . . . . . . . . . . . . 4

*III. SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . 8

*IV. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A. Count I: Miell's Breach Of Contract Counterclaim* . . . . . . . . . . . . . 9
        *1. The Terms Of The Contracts* . . . . . . . . . . . . . . . . . . . . . . . 11
        *2. Circumstances Surrounding Contract Formation and Execution:*
                *Doctrine of Reasonable Expectations* . . . . . . . . . . . . . . . . . 12
        *3. Waiver* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

  **B. Count III: Miell's Bad Faith Counterclaim** . . . . . . . . . . . . . . . . . . . . 14
    *1. Did American Family Have A Reasonable Basis For Denying
     Additional Coverage For Miell's Vehicle Claim Under The
     BOPPs And Excess Policy?* . . . . . . . . . . . . . . . . . . . . . . . . 15
    *2. Did American Family Have A Reasonable Basis For Voiding
     Sixteen of Miell's BOPPs?* . . . . . . . . . . . . . . . . . . . . . . . . 16
    *3. Punitive Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
**V. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# I. INTRODUCTION

The matter before the court is the Motion for Partial Summary Judgment ("Motion") (docket number 44), filed by Plaintiff American Family Mutual Insurance (hereinafter "American Family").

## A. *Relevant Prior Proceedings*

On October 20, 2004 American Family filed a Complaint against Defendant Robert Miell (hereinafter "Miell") in the United States District Court for the Northern District of Iowa Cedar Rapids Division alleging the following counts: (1) breach of contract; (2) fraudulent misrepresentation; (3) violation of Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C.A. § 1962(c); (4) violation of Iowa Ongoing Criminal Conduct Act, Iowa Code § 706A.2; (5) unjust enrichment; (6) money had and received; and (7) restitution due to mistake of fact. On January 21, 2005 Miell filed an Answer to American Family's Complaint (docket number 12). On January 28, 2005 Miell filed a Demand for Jury Trial (docket number 13). On May 9, 2005 Miell filed an Amended Answer to American Family's Complaint and also filed a Third Party Complaint against Brett Throlson and Brett Throlson Agency Inc (hereinafter "Throlson") (docket number 19). On June 7, 2005 American Family filed its First Amended and Substituted Complaint (docket number 24).

On June 17, 2005 Miell filed an Answer to Amended Complaint, Third Party Complaint, and Counterclaim (docket number 26). In his Counterclaim, Miell alleges the following: (1) breach of contract; (2) request for declaratory judgment; and (3) bad faith. On June 21, 2005 Thomson filed an Answer to Counterclaim and also filed a Demand for Trial by Jury (docket numbers 27-28). On August 5, 2006 American Family filed an Answer to Miell's Counterclaim (docket number 29). On June 1, 2006 American Family filed the instant Motion for Partial Summary Judgment (docket number 44). American Family seeks partial summary judgment on Counts I and III of Miell's Counterclaim. On August 3, 2006 Miell filed his Resistance to American Family's Motion for Partial

Summary Judgment (docket number 55). On September 8, 2006 American Family filed a Reply Brief in Support of its Motion for Partial Summary Judgment (docket number 63).

### *B. Jurisdiction*

American Family is incorporated under the laws of the state of Wisconsin and its principal place of business is in Wisconsin. American Family is authorized to conduct business in the state of Iowa. Miell is a natural person residing in Cedar Rapids, Iowa. The amount in controversy, exclusive of interest and costs, exceeds $75,000. The court finds it has diversity subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(c)(1).

### *II. STATEMENT OF MATERIAL FACTS*

Viewed in a light most favorable to Miell, the non-moving party, and affording him all reasonable inferences, the facts are as follows:

At the time of the events giving rise to this lawsuit, Miell owned and managed approximately six hundred to seven hundred rental housing units in the Cedar Rapids, Linn County, Iowa area. Miell procured casualty and liability commercial insurance coverage for his rental properties from American Family through numerous business owners package policies (hereinafter "BOPPs"). Miell was also the named insured on a commercial blanket excess liability policy issued by American Family (hereinafter "Excess Policy") and a family automobile policy (hereinafter "automobile policy").

On May 10, 2001 a hailstorm damaged many of the roofs of Miell's BOPP insured properties. Each BOPP insured more than one property address, and only one deductible applied to each BOPP. The BOPPs delineated specific instructions on the method of valuing covered property after a loss. The pertinent language provided:

> VALUATION OF COVERED PROPERTY
>
> Loss or damage to covered property (except money or security) will be determined on either replacement cost or actual case value. . . .

* * * * *
1. Replacement Cost. When Replacement Cost is the basis for valuation:
    a. We will pay no more that the smaller of:
        (1) the cost to repair or replace the damaged property at the same site, and for similar use, using new materials of like kind and quality without deduction for depreciation, or
        (2) the amount actually and necessarily spent to repair or replace the damaged property. . . .

* * * * *

    c. We will not pay on a replacement cost basis until the damaged or destroyed property is repaired or replaced, and unless such repair or replacement is made as soon as reasonably possible after the loss.
        (1) You may make a claim for actual cash value and later make a claim on a replacement cost basis, if you tell us in writing within 180 days after the loss.
        (2) If you decide not to repair or replace the property at the same site, we will pay your loss on an actual cash value basis.

Pursuant to the BOPPs' provisions regarding the valuation of covered property damaged in a loss, American Family paid Miell the actual cash value of the damaged roofs of the properties. From October 2001 through January 2002, Miell then submitted documentation and invoices[1] in order to obtain replacement costs. American Family issued checks to Miell for the requested replacement costs.

In early 2004, American Family provided a defense for Miell for litigation arising out of an automobile accident caused by a consent driver of Miell's. Upon notice of the

---

[1] This documentation included estimates from various roofing companies and undelivered checks from Miell made payable to various companies.

5

lawsuit filed by Carrie Tendick, the driver injured by Miell's consent driver, American Family issued a reservation of rights letter to Miell indicating that Miell had coverage for the litigation up to $100,000 under his automobile policy. In a January 26, 2004 letter American Family notified Miell that the BOPPs and his Excess Policy did not provide additional liability coverage for the automobile accident.

Regarding business liability coverage, the BOPPs contained the following:

> 2. Exclusions. This insurance does not apply to:
>
> * * * * *
>
> h. AIRCRAFT, AUTO OR WATERCRAFT LIABILITY. We will not pay for damages due to bodily injury property damage that arises out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

Miell's Excess Policy applied to Miell's BOPPs and Employer's Liability insurance. The Excess Policy also contained an exclusion for liability coverage for owned automobiles. This exclusion was placed in an endorsement as follows:

> THIS ENDORSEMENT CHANGES THE POLICY,
> PLEASE READ IT CAREFULLY
> OWNED AUTO LIABILITY EXCLUSION
>
> This endorsement modifies insurance provided under the COMMERCIAL BLANKET EXCESS LIABILITY POLICY.
>
> Insurance under this policy does not apply to bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any auto you own or lease. Use includes operation, loading or unloading.

Miell personally settled the lawsuit brought by Tendick for $400,000. American Family then tendered $100,000 to Miell, which Miell refused to accept.

Based upon information provided by Rich Shanstrom,[2] American Family conducted an investigation as to whether Miell had actually repaired or replaced the roofs for which Miell had received replacement costs. As a result of the investigation, American Family determined that repairs had not been made on the damaged roofs. In an August 3, 2004 letter, American Family notified Miell that it was voiding sixteen of Miell's BOPPs due to Miell's violation of the "Misrepresentation, Concealment, or Fraud" clause listed in the BOPPs' General Conditions section.

This clause provided:

> 10. Misrepresentation, Concealment or Fraud. This entire policy is void if, whether before or after a loss:
>   a. an insured has willfully concealed or misrepresented:
>     (1) any material fact or circumstance concerning this insurance; or
>     (2) an insured's interest herein.
>   b. there has been fraud or false swearing by an insured about any matter concerning this insurance.

American Family offset the unearned premium paid against the amount previously paid to Miell for replacement costs. As a result of the voiding of the sixteen BOPPs, American Family withdrew a defense it had been providing for Miell against a liability claim brought by one of his tenants and declined to provide coverage for a small claims judgment brought against Miell by a different tenant.

---

[2] Mr. Shanstrom owns Classic Home builders and was one of the contractors documented to American Family as having repaired one of Miell's damaged roofs. Mr. Shanstrom contacted Iowa Insurance Fraud Bureau to inform them that he had never received checks turned in to American Family and made payable to his company.

Miell alleges the structuring of the BOPPs, particularly the single deductible for each BOPP, "resulted in a loss [to American Family] far in excess of what underwriting would have anticipated" in light of the May 10, 2001 hailstorm. Miell contends that this "unanticipated loss" was the reason why American Family voided the BOPPs and made its coverage decision regarding the automobile accident. Miell submitted an affidavit stating the following:

> After Brett Throlson became the American Family agent I dealt with, I obtained a $5,000,000 umbrella policy. In my discussions with Brett Throlson, I indicated to him I wanted to make sure that that umbrella policy applied to all of the vehicles that I own. He assured me it would. Whenever I bought a vehicle, I would advise Brett Throlson's office so the vehicle could be added to the insurance. I never had any discussions as to what policies the vehicles would be placed under, which were taken care of by Brett Throlson's office. After the loss growing out of the vehicle driven by Lisa Wagner, I was assured by Brett Throlson that the claim was covered by a business owner's personal policy and the $5,000,000 umbrella policy.

Lastly, Miell states that American Family committed its alleged bad faith actions with legal malice and seeks punitive damages.

### III. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the record shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Woods v. Daimler Chrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). An issue of fact is "genuine" if it has a real basis in the record, Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." Woods, 409 F.3d at 990 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material when it

8

is a fact " 'that might affect the outcome of the suit under the governing law. . . .' " Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting Anderson, 477 U.S. at 248). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus., 475 U.S. at 587-88. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. Id. at 587.

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel, 953 F.2d at 394 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## IV. ANALYSIS

American Family seeks partial summary judgment on Counts I and III of Miell's Counterclaim. The court addresses each Count separately.

### A. *Count I: Miell's Breach Of Contract Counterclaim*

Miell alleges as follows:

> 172. American Family breached its contract of insurance with Miell by terminating its defense of the vehicle claim and denying coverage on that claim.

American Family responds that although Miell's BOPPs and Excess Policy expressly excluded coverage for bodily injuries arising from the use of a vehicle owned by Miell, American Family still provided Miell a defense for Tendick's lawsuit under Miell's automobile policy. American then tendered $100,000.00 (the policy limits) to

9

Miell after Miell's voluntary decision to settle the case with Tendick, which Miell refused. Although the counterclaim does not clearly specify which insurance policy Miell refers to (as there are three contracts at issue in this case), the court recognizes that Miell received the maximum coverage under his automobile policy. Thus, the contract(s) at issue here are the BOPPs and Excess Liability Policy. Miell believes that either or both of these policies should have covered the additional $300,000 Miell spent to settle the vehicle claim.

Under Iowa law, Miell must prove the following in order to establish that American Family breached their insurance contract:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [Miell] has performed all the terms and conditions required under the contract; (4) [American Family]'s breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

Wagner Enterprises, Inc. v. John Deere Shared Services, Inc, 397 F. Supp. 2d 1097, 1104-1105 (N.D. Iowa 2005)(internal citations omitted).

As to the existence of the contracts, neither party disputes that Miell contracted with American Family for the BOPPs and Excess Liability policy. The disagreement arises as to whether these contracts should have covered the vehicle claim. Under Iowa law, "[t]he construction and interpretation of insurance policies is a question of law for the courts." Johnson v. Farm Bureau Mut. Ins. Co., 533 N.W.2d 203, 206 (Iowa 1995) (internal citations omitted). "The controlling consideration in interpreting insurance policies is the intent of the parties." Interstate Power Co. v. Ins. Co. of N. Am., 603 N.W.2d 751, 754 (Iowa 1999). "The intent may be 'determined from the terms of the [contract], what is necessarily implied from the terms, and the circumstances surrounding the formation and execution of the [contract].' " Rambo Associates, Inc. v. South Tama County Community School Dist., 414 F. Supp. 2d 887, 897 (N.D. Iowa 2006).

### *1. The Terms Of The Contracts*

The court first examines the plain language of the contracts. The BOPPs contain the following provision regarding liability coverage for vehicles:

> 2. Exclusions. This insurance does not apply to:
>
> * * * * *
>
> h. AIRCRAFT, AUTO OR WATERCRAFT LIABILITY. We will not pay for damages due to bodily injury property damage that arises out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

The Excess Policy also contained an exclusion for liability coverage for owned automobiles. This exclusion was placed in an endorsement as follows:

> THIS ENDORSEMENT CHANGES THE POLICY,
> PLEASE READ IT CAREFULLY
> OWNED AUTO LIABILITY EXCLUSION
>
> This endorsement modifies insurance provided under the COMMERCIAL BLANKET EXCESS LIABILITY POLICY.
>
> Insurance under this policy does not apply to bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any auto you own or lease. Use includes operation, loading or unloading.

The court notes that neither policy provides for coverage for liability arising from "use or entrustment" of Miell's vehicles. Thus, the express terms and conditions of the BOPPs and Excess Liability Policy do not extend coverage for Miell's vehicles.

## 2. Circumstances Surrounding Contract Formation and Execution: Doctrine of Reasonable Expectations

In his Response to American Family's Partial Motion for Summary Judgment, Miell argues that when he obtained the $5,000,000 umbrella insurance policy,[3] he informed the American family agent, Brett Throlson, that he wished to have all of his vehicles covered under the policy. Miell states that Throlson "acknowledged that all of his vehicles would be covered" and Miell therefore informed Throlson when he acquired vehicles. Miell appears to assert that his "objectively reasonable expectation" was that his vehicles be insured and thus this expectation should instruct the court when construing the policy at issue. citing Ferguson v. Allied Mut. Ins. Co., 512 N.W.2d 296 (Iowa 1994). Miell also states that any mistake by Brett Throlson is also a mistake on the part of American Family. citing Johnson v. United Investors Life Ins. Co, 263 N.W.2d 770, 773 (Iowa 1978).

American Family disputes Miell's "reasonable expectations" claim for the following reasons: (1) Miell's claim fails because it was not part of his pleadings against American Family; (2) even if Miell had raised the claim properly, he waives the claim due to his failure to adequately brief the new claim; (3) the doctrine of reasonable expectations exists to protect the unsophisticated layperson, and not "a highly educated, highly-sophisticated multi-millionaire with specialized training in insurance law."; and (4) even if the doctrine applied to Miell, Miell cannot demonstrate that he relied upon representations by Throlson when he decided to buy the policy.[4]

As noted by American Family, Iowa law dictates that the doctrine of reasonable expectations "is carefully circumscribed and does not contemplate the expansion of coverage on a general equitable basis." American Family Mut. Ins. Co. v. Corrigan, 697

---

[3] Although not clearly specified, Miell appears to refer to his Commercial Blanket Excess Liability Policy.

[4] American Family emphasizes that the doctrine of reasonable expectations "applies only to representations made by the insurer at the time of policy negotiation and issuance." Vos v. Farm Bureau Ins. Co, 667 N.W.2d 36, 50 (Iowa 2003).

N.W.2d 108, 118 (Iowa 2005)(internal citations omitted). The doctrine first requires Miell to establish that "an ordinary layperson would misunderstand the policy coverage or that there are circumstances attributable to the insurer that led the insured to expect coverage." American Family Mut. Ins. Co. v. Corrigan, 697 N.W.2d 108, 118 (Iowa 2005)(citations omitted). Miell's argument appears to center upon the second prong--Miell states that the American Family agent led him to believe that the Excess Liability Policy covered all of Miell's vehicles. For the purposes of this Motion, the court accepts this proposition as true.

Next, Miell must establish that American Family's denial of coverage for Miell's vehicle claim under the Excess Liability Policy: (1) [was] bizarre or oppressive; (2) eviscerate[d] terms explicitly agreed to; or (3) eliminate[d] the dominant purpose of the transaction. Clark-Peterson Co., Inc. v. Independent Ins. Associates, Ltd., 492 N.W.2d 675, 678 (Iowa 1992). Miell offers no evidence to establish any of these conditions. As noted previously, the non-moving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The court agrees with American Family that Miell failed to adequately brief this claim. See Brown v. Farmland Foods, Inc., 178 F. Supp. 2d 961, 974 (N.D. Iowa 2001) (court finds claim abandoned "as a result of [plaintiff]'s failure to brief his argument").

### *3. Waiver*

Alternatively, Miell argues that:

> 173. In the event that American Family does not have coverage of that claim under the terms of the applicable policies, then American Family waived its right to assert a policy defense based upon its actions in defending that claim.

American Family refutes Miell's claim by noting that Miell provides no evidence in support of waiver. This court agrees and finds that Miell waives this claim for the same reasons detailed previously regarding the necessity to offer proof sufficient for a reasonable

13

jury to find in Miell's favor. The court grants American Family's Motion as to Count I of Miell's Counterclaim.

### B. Count III: Miell's Bad Faith Counterclaim

Under Count III Miell generally alleges as follows:

> 183. American Family has cancelled the policies, denied coverage and refused to continue to provide defenses in bad faith.

American Family responds that Miell's bad faith count must fail because: (1) Miell has no viable breach of contract claim, and therefore no "bad faith breach-of-contract"claim; (2) American Family had a reasonable factual and legal basis for its coverage decision regarding the automobile accident and its voiding of the sixteen BOPPs.

Under Count III, Miell specifically alleges as follows:

> 180. American Family knew, or should have known, that it would be impossible to repair all of the roofs on Miell's property within the time period, and cannot claim in good faith that it was deceived by any actions of Miell in connection with the repair of the room claims.
>
> 181. Because American Family did not have a separate deductible for each property, but rather one for each policy, the massive hail storm of May of 2001 resulted in a loss far in excess of what underwriting would have anticipated.
>
> 182. The actions of American Family in denying coverage for the vehicle claim and the property claims, and in cancelling Miell's insurance were not done because of legitimate claim (sic) of fraud, but rather means (sic) of recouping the uninspected roof claim loss, or in retaliation for having structured the policies in such a manner that American Family sustained an unanticipated loss.

In order to prevail on his bad faith claim, Miell must show "(1) the absence of a reasonable basis for denying the claim, and (2) [American Family] knew or had reason to

know that its denial was without a reasonable basis." Galbraith v. Allied Mut. Ins. Co., 698 N.W.2d 325, 328 (Iowa 2005). "The first element is an objective one; the second element is subjective." Bellville v. Farm Bureau Mut. Ins. Co., 702 N.W.2d 468, 473 (Iowa 2005). The court decides the first prong as a matter of law. Bellville, 702 N.W.2d at 473 (citations and quotations omitted).

### *1. Did American Family Have A Reasonable Basis For Denying Additional Coverage For Miell's Vehicle Claim Under The BOPPs And Excess Policy?*

An insurance company has a reasonable basis to deny a claim where the claim is "fairly debatable." See Dirks v. Farm Bureau Mut. Ins. Co., 465 N.W.2d 857, 861 (Iowa 1991) ("Where a claim is fairly debatable, the insurer is entitled to debate it and there is no bad faith on its part in doing so."); see also Bellville, 702 N.W.2d at 473 ("[I]f reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable."). The debate may be regarding an issue of fact or law. Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 396 (Iowa 2001). Generally, the court may decide as a matter of law whether a claim is fairly debatable. Wilson v. Farm Bureau Mut. Ins. Co., 714 N.W.2d 250, 263 (Iowa 2006) (citations omitted). When analyzing this element, the "court 'do[es] not weigh the conflicting evidence that was before the insurer; [it] decide[s] whether evidence existed to justify denial of the claim." Bellville, 702 N.W.2d at 473 (internal citations omitted).

The court finds Miell's position under Count III exceedingly confusing. In his Resistance, Miell asserts the following:

> American Family denied coverage for the vehicle claim and the property claims because (sic) to recoup its unanticipated loss, and therefore, could not have been acting objectively or subjectively in a reasonable manner and for a reasonable basis.

Rather than showing the "absence of a reasonable basis" for denying additional coverage, Miell alleges that American Family possessed an alternative unreasonable basis for denial. Miell provides no evidence for this allegation. Miell does not directly address American Family's stated reasons for refusing to provide additional coverage for Miell's vehicle

15

claim. As outlined earlier, the terms and conditions of Miell's Excess Policy and the BOPPs do not extend coverage to Miell's vehicles.

Miell next suggests:

> However, in the event that the Court might find there was a reasonable basis from an objective standpoint, to deny the vehicle claim coverage, it is not appropriate to deny liability coverage because of alleged fraud in connection with a casualty claim, even if under the same policy.

Miell provides no support for this proposition. However, the court need not reach this question because Miell failed to show that American Family lacked a reasonable basis for denying additional coverage for the vehicle claim. Miell bears the burden of proving *both* objective and subjective bad faith in order to survive summary judgment as to Count III. Miell failed to meet this burden.

### 2. Did American Family Have A Reasonable Basis For Voiding Sixteen of Miell's BOPPs?

Regarding Miell's claim of bad faith on the part of American Family for voiding the BOPPs under the fraud clause, the court attempts to reconstruct Miell's reasoning as follows: (1) Miell owns a substantial number of rental properties insured by American Family; (2) American Family issued one policy for certain groups of properties, rather than one policy per property; (3) A May 2001 hailstorm damaged a substantial portion of Miell's insured properties; and (4) "Because there was no separate deductible for each property, but only for each policy which insured a group of policies, American Family was obligated to pay a far greater amount to satisfy the damage claims as a result of the hail loss than it would have if there had been a separate deductible for each property." From this, Miell concludes that American Family voided his BOPPs in order to avoid unanticipated losses. The court finds this allegation unsupported by the record and thus not a genuine issue of material fact.

The BOPPs permitted Miell to submit a claim for the actual cash value of the damaged property and also to later submit a claim for replacement cost reimbursement

16

upon the actual repair or replacement of the damaged property. American Family reimbursed Miell for actual cash value and also for replacement costs. In 2004, American Family discovered that Miell had not actually repaired or replaced the damaged roofs for which he had received replacement cost payments under sixteen of his BOPPs. American Family subsequently voided the sixteen BOPPs at issue due to Miell's violation of the BOPPs' "Misrepresentation, Concealment or Fraud" clause.

Miell does not deny submitting falsified receipts in order to obtain replacement cost benefits. Under the terms and conditions of the BOPPs, American Family could void Miell's policy where Miell "willfully concealed or misrepresented any material fact or circumstance concerning [the] insurance [policy]." The contract clearly states that American Family "will not pay on a replacement cost bases until the damaged or destroyed property is repaired or replaced." Under these circumstances, the court finds that American Family had sufficient evidence to void the policies due to Miell's misrepresentations.

### 3. *Punitive Damages*

Miell claims that he "has sustained actual damages as a result of the cancellation of his policies, the denial of coverage and the continued refusal to provide a defense." Miell further asserts that "[t]he actions of American Family were done with legal malice" and seeks punitive damages."

In Iowa, a plaintiff may recover punitive damages in order to "punish the party against whom they are awarded and to deter others from similar wrongdoing." Grefe v. Ross, 231 N.W.2d 863, 868 (Iowa 1975). In order to establish a claim for punitive damages, Miell must show by a "preponderance of clear, convincing, and satisfactory evidence" that American Family's conduct "constituted willful and wanton disregard for the safety of another." Buhmeyer v. Case New Holland, Inc., 2006 WL 2501453, 9 (S.D. Iowa 2006). According to the Iowa Supreme Court, "willful and wanton" refers to an intentional "act of unreasonable character in disregard of a known or obvious risk that was

17

so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 395 (Iowa 2001) (citations omitted).

Miell must also demonstrate that American Family acted with actual or legal malice. Id. at 396. Actual malice may be shown by such things as personal spite, hatred, or ill-will. Parks v. City of Marshalltown, 440 N.W.2d 377, 379 (Iowa 1989). Legal malice may be shown by wrongful conduct committed with a willful or reckless disregard for the rights of another. Id. "Generally, a breach of contract, even if intentional, is not sufficient to support an award of punitive damages." Seastrom v. Farm Bureau Life Ins. Co., 601 N.W.2d 339 (Iowa 1999). "An insurance company has the right to debate claims that are 'fairly debatable' without being subject to a bad faith tort claim." Sampson v. Am. Standard Ins. Co., 582 N.W.2d 146, 150 (Iowa 1998).

In the present case, Miell asserts as follows:

> Given the evidence that American Family has secreted documents, which clearly supports the inferences that it set Miell up and is attempting to defraud him and the court, there is ample basis for punitive damages.

Miell asks the court to find that American Family "secreted documents[,] set Miell up, and is attempting to defraud [Miell] and the court." The court agrees with American Family[5] that Miell must provide "real evidence" rather than have the court simply presume his allegations to be true. The court does not find Miell's allegations to constitute "clear, convincing, and satisfactory evidence" that American Family's conduct "constituted willful and wanton disregard for the safety of another." Buhmeyer v. Case New Holland, Inc., 2006 WL 2501453, 9 (S.D. Iowa 2006). The court grants American Family's motion for summary judgment as to Count III of Miell's Counterclaim.

---

[5] American Family cites to Busch v. City of Anthon, Iowa, 173 F. Supp. 2d 876, 904 (N.D. Iowa 2001), where the court granted "summary judgment as to conspiracy claims where plaintiffs failed to provide evidence 'that any injuries were tied together by an agreement to effect wrongs or injuries.' "

## V.  CONCLUSION

As set forth above, the court finds that Miell failed to provide evidence to support his allegations of breach of contract and bad faith. American Family's motion for summary judgment as to Counts I and III of Miell's Counterclaim are granted.

October 4, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT