IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>    Plaintiff-Counterclaim Defendant,<br><br>vs.<br><br>ROBERT MIELL,<br><br>    Defendant-Counterclaimant.<br><br>---<br><br>ROBERT MIELL,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>BRETT THROLSON and<br>BRETT THROLSON AGENCY, INC.,<br><br>    Third-Party Defendants. | No. C04-0142<br><br>RULING ON THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. *Background.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B. *Motor Vehicle Accident.* . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C. *Hail Storm.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . 6

V. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. *Negligence.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1. *Breach of Duty.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2. *Proximate Cause.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3. *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    B. *Indemnification or Contribution.* . . . . . . . . . . . . . . . . . . . . . . . 13
        1. *Contribution.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2. *Indemnification.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        3. *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**VI. ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

On the 12th day of April, 2007, this matter came on for telephonic hearing on the Motion for Summary Judgment (docket number 67) filed by Third-Party Defendants Brett Throlson and Brett Throlson Agency, Inc., on January 29, 2007. Plaintiff American Family Mutual Insurance Company was represented by its attorney, David J.W. Proctor. Defendant/Third-Party Plaintiff Robert Miell was represented by his attorney, Peter C. Riley. The Third-Party Defendants were represented by their attorney, Patrick L. Woodward.

## II. PROCEDURAL HISTORY

Plaintiff American Family Mutual Insurance Company ("American Family") filed a Complaint against Robert Miell ("Miell") in seven counts. Generally, American Family claims that Miell fraudulently received payment on numerous claims filed following a hail storm. American Family seeks reimbursement of the amounts paid and other damages. (*See* First Amended and Substituted Complaint, docket number 24.)

Miell denied the material allegations contained in American Family's complaint and filed a counterclaim in three counts. Count I alleged that American Family breached its contract of insurance with Miell by failing to provide liability coverage for an unrelated motor vehicle accident. Count II seeks declaratory judgment that American Family is obligated to provide a defense to "certain liability claims growing out of claims by tenants

2

claiming injuries on Miell's properties." Count III sought damages for American Family's alleged bad faith in cancelling the insurance policies. (*See* Answer to Complaint, Counterclaim and Third-Party Claim, docket number 26.) American Family moved for summary judgment on Counts I and III of the Counterclaim, however, and on October 4, 2006, Magistrate Judge John A. Jarvey entered an order dismissing Counts I and III of the Counterclaim. (*See* Order, docket number 66.) Accordingly, only Count II of the Counterclaim survives, seeking declaratory judgment on American Family's obligation to provide liability coverage on tenants' claims.

Miell also brought a third-party claim against Brett Throlson and Throlson Agency, Inc. (collectively referred to hereafter as "Throlson") in two counts. Count I alleges that Throlson was negligent "in the services and advice provided to Miell in connection with providing insurance coverage to Miell in connection with his properties and vehicles." Count II alleges that Throlson "had knowledge of and was involved in the process of the adjustment of the roof claims." It is alleged that "Throlson had a duty to assist Miell in the adjustment of his claim," and that Miell is therefore entitled to indemnification or contribution from Throlson. (*See* Answer to Complaint, Counterclaim and Third-Party Claim, docket number 26.)

In the instant Motion For Summary Judgment, Throlson requests that both counts of the Third-Party claim be summarily dismissed.

### *III. RELEVANT FACTS*

A review of the Statement of Undisputed Material Facts (docket number 67-2) filed by Throlson in support of his Motion for Summary Judgment and Miell's response (docket number 74-7) to that Statement, reflects the following undisputed facts:

#### *A. Background.*

Miell graduated from the University of Iowa in 1976, with degrees in economics and political science. In the summer of 1977, Miell began law school at Drake University, but quit when he was approximately thirty hours from completing law school to focus on

3

a career in real estate. While in law school, Miell had classes in insurance law, contracts, and corporations; and worked on a law review article on insurance. Miell has a real estate sales license and a real estate broker's license, for which he took classes and passed tests over real estate documents, ethics, and trust accounts.

Miell began his real estate career with one rental house. At the present time, Miell owns between 500 and 600 rental units in and around Cedar Rapids, with an estimated value of $75 million to $80 million.

Miell first purchased insurance from American Family in the late 1980s and since then has been assigned several different American Family agents, who were all located at the Mount Vernon Road Office. Miell procured casualty and liability commercial insurance coverage for his rental properties from American Family through numerous business owners package policies ("BOPPs"), in which Miell was the named insured. Miell was also the named insured on a commercial blanket excess liability policy issued by American Family ("excess policy"). The declarations page of the excess policy only listed the BOPPs and Employers Liability as applicable underlying insurance policies. The excess policy contained an exclusion for liability coverage for owned automobiles, similar to the exclusion set forth in the BOPPs.

Miell was also the named insured on a family car policy issued by American Family, which had bodily injury liability insurance limits of $100,000 per person. In addition to the insurance purchased from American Family, since about 1990 Miell maintained a personal umbrella insurance policy from State Farm Mutual Insurance Company, providing $1 million worth of coverage.

### B. *Motor Vehicle Accident.*

On October 17, 2001, Lisa Waggoner, while driving a 1997 GMC pick-up truck titled to Miell and operated with his consent, was involved in a motor vehicle accident with Carrie Tendick. Tendick ultimately filed a lawsuit against Miell. Upon receiving notice of the lawsuit filed by Tendick, American Family sent a letter to Miell, advising him that

4

the only policy which may provide coverage for the October 17, 2001, accident was the $100,000 per person coverage limits under the family car policy. During the pendency of the lawsuit filed by Tendick, Miell questioned whether the BOPPs or the excess commercial liability policy provided coverage for Tendick's personal injury claims. In a letter dated January 26, 2004, American Family conveyed its conclusion to Miell that there was no coverage under the terms and condition of the BOPPs or the excess policy for the automobile accident of October 17, 2001, by virtue of the "owned auto liability" exclusions.

Miell personally settled the lawsuit brought by Tendick and personally paid the settlement of $400,000. American Family tendered to Miell a check for $99,563.11, which remains uncashed.[1]

In his Statement of Undisputed Facts, Miell claims that after being notified of the accident on October 17, 2001, Throlson advised Miell that there was coverage on each BOPP policy and on the umbrella policy. According to Miell, Throlson said he should have coverage on his vehicle under his American Family policy if it was involved in an accident while being used by himself or an employee for work purposes.

### C. *Hail Storm.*

On May 10, 2001, a hail storm damaged many roofs on Miell's properties that were insured under the BOPPs. American Family paid Miell the actual cash value of the damaged roofs on the subject properties. While it is apparently undisputed that American Family subsequently paid Miell additional amounts representing the replacement cost of the roofs, Miell denies some of the details regarding the submission of those additional claims.

In his Statement of Undisputed Facts, Miell alleges that Throlson knew how extensive the hail damage was throughout all of Cedar Rapids, Marion, Hiawatha, and

---

[1] Apparently, the amount tendered represents the policy limits of $100,000, less a medical bill paid on Tendick's behalf.

surrounding areas. Miell claims that Throlson knew from his experience how long it took to coordinate repairs to one roof versus hundreds of roofs. Miell had several meetings with Throlson concerning insurance on his rental properties and the damage. They also had several discussions concerning the need for more time to complete the repairs.

Because there were so many properties, Miell met at Throlson's office with Throlson and adjuster Kelly Smoot to discuss the hail damage. It took several months for the adjusters to look at the properties. It was not until September or October 2001, before Miell and the adjuster knew the number of roofs needing repair. There were at least two meetings where they discussed the time frame for getting the inspection and repairs done. The American Family adjuster was to get back to Miell regarding which properties had damage, not just to shingles, but to siding and air conditioners, etc.

According to Miell, Throlson told him that he had a certain time period in which to get the work done. Miell believed it was one year. Throlson told him this several times. Miell asked for extensions from Throlson. Throlson represented to Miell that American Family was denying the extension, not himself. Throlson told Miell that if he did not have the repairs done within the time frame, then the claims would be denied.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America,*

*Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. CONCLUSIONS OF LAW

Miell's third-party claim against Throlson is in two parts: Count I alleges that Throlson was negligent "in the services and advice provided to Miell in connection with providing insurance coverage to Miell in connection with his properties and vehicles." Count II alleges that Throlson "had knowledge of and was involved in the process of the adjustment of the roof claims" and that Miell is therefore "entitled to indemnification or contribution against Throlson."

### A. Negligence.

While not a model of clarity, Count I of the third-party claim relates to the motor vehicle accident of October 17, 2001. As set forth in Part III(B) above, American Family

7

advised Miell that liability coverage for the accident was limited to a single $100,000 policy. That is, American Family concluded that additional liability coverage was not provided by the BOPPs, nor was additional coverage provided by the excess commercial liability policy.

In Count I of his Counterclaim, Miell claimed that American Family breached its contract of insurance by not providing additional coverage "under the terms of the applicable policies." In his ruling on American Family's Motion for Partial Summary Judgment, however, Judge Jarvey concluded that Miell's claim was meritless and dismissed Count I of the Counterclaim. (*See* Order, docket number 66.)

In Count I of this Third-Party Claim, Miell claims that Throlson was negligent in failing to provide appropriate "services and advice" in procuring adequate insurance coverage in connection with the vehicles. The elements of a negligence claim under Iowa law are: (1) the existence of a duty to conform to a standard of conduct to protect others; (2) failure to conform to that standard; (3) proximate cause; and (4) damages. *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir. 1997) (citing *Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997)). As Miell's agent, it would appear undisputed that Throlson had a duty of care toward his principal. Throlson argues, however, that (1) Miell cannot establish a breach of that duty without expert testimony, and (2) since the BOPP policies were voided by American Family, proximate cause fails as a matter of law.

### 1. Breach of Duty.

Throlson argues that Miell is unable to establish a breach of duty without appropriate expert testimony. Miell claims that despite his instructions, Throlson failed to obtain "excess coverage" on the motor vehicles, and therefore no expert testimony is required. Both parties cite *Humiston Grain Co. v. Rowley Interstate Transportation Co., Inc.*, 512 N.W.2d 573 (Iowa 1994).

In *Humiston Grain*, the plaintiff filed a third-party petition against its insurance agent, claiming that he failed to procure coverage to protect the plaintiff against its loss.

8

On appeal, the Iowa Supreme Court concluded that the district court erred, as a matter of law, in permitting recovery on a claim of professional negligence without requiring expert testimony concerning the standard of care for insurance agents. *Id.* at 574. The Court described the legal standard as follows:

> As a general proposition, Earnest-as Humiston's agent-was obliged to exercise reasonable care, diligence, and judgment in the performance of tasks undertaken on behalf of his principal. Persons engaged in the practice of a profession or trade are held to the standard of "'the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.'" The burden rested upon Humiston to prove Earnest's breach of this standard of care. Unless a professional's lack of care is so obvious as to be within the comprehension of a layperson, the standard of care and its breach must ordinarily be established through expert testimony.

*Id.* at 574-575 (all citations omitted).

The Court noted that at "one end of the spectrum" are cases in which an agent negligently fails to procure coverage requested by his principal. "Under these circumstances, commonly understood by laypersons, courts have held that expert testimony regarding the standard of care and its breach is not necessary." *Id.* at 575. At the other end of the spectrum, however, "are cases involving the agent's alleged failure to discern coverage gaps or risks of exposure in more complex business transactions. In such cases, courts have required expert testimony to establish the applicable standard of care." *Id.*

Turning to the facts in the instant action, Miell claims in an affidavit filed in resistance to the earlier motion for partial summary judgment filed by American Family, that he instructed Throlson to "make sure" that his vehicles were covered by the "umbrella policy."

> After Brett Throlson became the American Family agent I dealt with, I obtained a $5,000,000 umbrella policy. **In my discussions with Brett Throlson, I indicated to him I wanted to make sure that that umbrella policy applied to**

9

> **all of the vehicles that I own. He assured me that it would.**
> Whenever I bought a vehicle, I would advise Brett Throlson's office so the vehicle could be added to the insurance. I never had any discussions as to what policies the vehicles would be placed under, which were taken care of by Brett Throlson's office. After the loss growing out of the vehicle driven by Lisa Wagner, I was assured by Brett Throlson that the claim was covered by a business owner's personal policy and the $5,000,000 umbrella policy.

*See* Affidavit of Robert Miell, docket number 55-7 at 3 (emphasis added).

For purposes of summary judgment, the Court assumes the truth of Miell's allegations. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 928 n.2 (8th Cir. 2006). Accordingly, for purposes of the instant Motion, the Court assumes that Miell told Throlson that "I wanted to make sure that that umbrella policy applied to all of the vehicles that I own." If, after receiving such an instruction, Throlson failed to take appropriate action to include the vehicles in the "umbrella policy," then such a failure could be found to be a breach of Throlson's duty of care.

In support of his argument that expert testimony is required, Throlson also cites *Kruckenberg v. Abramsohn*, 76 F.3d 382 (Table), 1996 WL 62635 (8th Cir. (Iowa)). *Kruckenberg* cites with approval the general rule set forth by the Iowa Supreme Court in *Humiston Grain*. The Court in *Kruckenberg* noted, however, that the client had not requested specific action by the agent.

> **This is not a case in which the agent failed to procure coverage requested by the client.** In fact, there is no dispute that the Annex, which burned, was covered. The dispute is over whether Abramsohn negligently misinformed Kruckenberg about the amount of coverage or misled him into believing that it had been increased. Whether Abramsohn was negligent turns, as the jury instruction correctly stated, on whether he exercised the reasonable care of a person in the same business or profession in communicating information. Proof of the applicable standard of care requires expert testimony; Kruckenberg offered none.

10

*Id.* at *2 (emphasis added).

In this case, Miell claims that Throlson was negligent in failing to provide appropriate "services and advice" in procuring adequate insurance coverage in connection with the vehicles. To the extent that Miell claims that Throlson was negligent in providing "advice," the Court concludes that expert testimony would be required. The "services" provided by Throlson would include, however, procuring insurance pursuant to specific instructions given by Miell. As indicated by the Court in *Humiston*, if an agent negligently fails to procure requested coverage, then expert testimony regarding the standard of care and its breach is not necessary. 512 N.W.2d at 575. Assuming the truth of Miell's allegations, the Court finds that expert testimony is not required in Count I of his third-party claim.

## 2. *Proximate Cause.*

Throlson next argues that Miell's negligence claim should be summarily dismissed because the proximate cause requirement fails as a matter of law. According to the argument, even if Throlson breached a standard of care by not including the vehicles on the BOPP policies, that cannot be a proximate cause of any damage to Miell since the BOPP policies were subsequently voided by American Family. Similarly, Throlson argues that since the BOPP policies were a prerequisite to the excess liability policy, Throlson's alleged failure to include the vehicles on the excess liability policy cannot be a proximate cause of any damage to Miell.

The gist of Throlson's proximate cause argument can be found in his Memorandum of Authorities filed in support of the instant Motion for Summary Judgment:

> In the present case, by its ruling on American Family's Partial Motion for Summary Judgment, this Court has established that American Family's voiding of the BOPPs effective May 10, 2001, five (5) months before the October 17, 2001 auto accident resulting in the Tendick suit, was justified. Therefore, as a matter of law, there were no BOPPs in effect from which benefits could be paid at the time of the October 17, 2001 accident. As a matter of law, any alleged negligence

11

> on the part of Throlson in failing to cover the 1997 GMC
> pickup truck under the BOPPs could not be a proximate cause
> of Miell's alleged damage.

*See* docket number 67-3 at 10.

In concluding that "this Court has established" that the voiding of the BOPPs by American Family "was justified," Throlson relies on the Court's prior ruling on American Family's Motion for Partial Summary Judgment. Specifically, in summarily dismissing Miell's bad faith claim against American Family (Count III of his Counterclaim), the Court noted that "Miell does not deny submitting falsified receipts in order to obtain replacement cost benefits" and concluded that "the court finds that American Family had sufficient evidence to void the policies due to Miell's misrepresentations." (*See* Order, docket number 66 at 17.) This Court concludes, however, that Throlson attaches too much significance to the Court's findings in that regard.

The issue before the Court at that time was whether Miell was entitled to damages against American Family for its alleged bad faith in cancelling the BOPP policies. As indicated by Judge Jarvey in his ruling, the question at that time was "did American Family have a reasonable basis for voiding sixteen of Miell's BOPPs?" (*See Id.* at 16.) In that context, Judge Jarvey concluded that American Family had "sufficient evidence to void the policies due to Miell's misrepresentations." (*See Id.* at 17.)

While Throlson argues that by its prior order the Court "has established" that American Family's voiding of the BOPP policies "was justified," Miell argues that different issues are presented.

> The Court found no bad faith on the basis American Family
> had a reasonable basis to deny coverage and void the BOPP
> policies. Finding a reasonable basis to avoid summary
> judgment is not equivalent to finding as "a matter of law" the
> BOPP policies were properly voided.

*See* Miell's Resistance to Motion for Summary Judgment, docket number 74-1 at 2.

The Court concludes that Miell has the better argument in this regard. While the Court has concluded, as a matter of law, that American Family did not act in *bad faith* in voiding the BOPP policies, it did *not* determine whether voiding the policies constituted a breach of the contract. That issue was not before the Court on summary judgment.

### 3. *Summary.*

In summary, in order to recover against Throlson on his negligence claim, as set forth in Count I of the Third-Party Claim, Miell must prove (1) Throlson owed a standard of care toward Miell regarding the procurement of insurance, (2) Throlson breached that standard of care, (3) the breach was a proximate cause of damage to Miell, and (4) the amount of damages. The first element is undisputed. Regarding the second element, the Court concludes that if Miell gave instructions to Throlson to have his motor vehicles covered by the excess liability policy and Throlson failed to perform those instructions, then expert testimony is not required in order to establish a breach of the standard of care. Regarding the third element, the Court concludes that American Family has not established, as a matter of law, that voiding the BOPP policies was not a breach of contract. Therefore, a breach of the standard of care by Throlson could be a proximate cause of damage to Miell. Both elements present genuine issues of material fact which preclude summary judgment on Count I of the Third-Party Claim.

### B. *Indemnification or Contribution.*

Count II of the Third-Party Claim refers to the adjustment of the roof claims resulting from the hail storm. Miell claims Throlson had knowledge of and was involved in the process of the adjustment of the roof claims and had a duty to assist Miell in the adjustment of his claim. (*See* Answer to Complaint, Counterclaim, and Third-Party Claim, docket number 26 at ¶¶ 191-192.) Miell then argues generally that if he is liable to American Family under any of the grounds alleged in its Complaint, then he "is entitled to indemnification or contribution against Throlson and the Throlson Agency." (*See Id.* at ¶ 192.)

13

### *1. Contribution.*

Miell claims that if he is liable to American Family under any theory of recovery, then Throlson is required to contribute to that judgment. The interrelated common law principles of indemnity, contribution, and subrogation, are equitable in nature and employed to correct or prevent unjust enrichment. *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001). A fundamental aspect of a claim for contribution is that two parties are both obligated to a third party. *Id.* at 150. Therefore, in this case, in order to recover on a claim of contribution, Miell would be required to prove that Throlson has a legal obligation to American Family. *See also, Chicago Cent. & Pacific R. Co. v. Union Pacific R. Co.*, 558 N.W.2d 711, 715 (Iowa 1997).

Miell's pleadings are imprecise regarding the theory under which he believes Throlson would be liable to American Family.[2] Apparently, Miell claims that Throlson is liable to American Family for fraudulent misrepresentation, due to Throlson's failure to disclose Miell's false claims for replacement cost of the roofs.

Throlson argues, however, that there is no evidence to support Miell's allegations in this regard. Miell admits in his deposition that he never told Throlson that he was filing false claims regarding repairs to the damaged roofs, nor does Miell have any knowledge that Throlson knew he was filing false claims.

> Q. My question to you is did American Family know that you had received and were receiving replacement cost benefits without performing actual repairs or replacement of property damaged by the hailstorm on May 10, 2001?
> A. I don't know what they would have known.
> Q. Same question as to Mr. Throlson.

---

[2] In paragraph 191 of his Answer to Complaint, Counterclaim, and Third-Party Claim (docket number 26), Miell alleges "Throlson had knowledge of and was involved in the process of the adjustment of the roof claims and would have known it would be impossible to finish the work on the roofs within the time set by American Family."

14

| | |
|---|---|
| A. | Again, I do not know what Mr. Throlson would have known. |
| Q. | You never told him what you were doing, did you? |
| A. | No. |
| Q. | Did you ever tell American Family what you were doing? |
| A. | I don't recall I did. No. |
| . . . . | |
| Q. | Okay. Talk about these for a minute. Regarding the hail claims -- And I'm just going to use that broad term "hail claims." And that's the first negligence claim you're making against Mr. Throlson, as I understand it. Mr. Throlson never advised you to submit false claims of repair to American Family, did he? |
| A. | No. |
| Q. | And Mr. Throlson did not know you were submitting false claims of repair to American Family, did he? |
| A. | I don't know what he knew. |
| Q. | Okay. You never told Mr. Throlson that you were submitting claims to American Family that consisted of checks which had never been issued to contractors, or estimates of repair from contractors that never existed, did he -- did you? You never told him that? |
| A. | Specifically that? |
| Q. | Yes, sir. |
| A. | No. |

Miell Dep. 36:16-37:4; 259:15-260:11, April 26, 2006.

Even viewing the evidence in the light most favorable to Miell, the Court concludes that he has failed to generate a genuine issue of material fact regarding American Family's entitlement to recover against Throlson for fraudulent misrepresentation, or any other theory of recovery. Since Throlson is not jointly liable to American Family, Miell is not entitled to contribution from Throlson. The absence of joint liability is a defense to a claim for contribution. *State ex rel. Palmer*, 637 N.W.2d at 152-153.

15

## 2. Indemnification.

In Count II of his Third-Party Claim, Miell claims that Throlson is required to indemnify him for any amount owed to American Family. The Court in *Hansen v. Anderson, Wilmarth & Van Der Maaten*, 630 N.W.2d 818 (Iowa 2001), summarized the principles regarding indemnity:

> Generally speaking, "indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other." 41 Am. Jur. 2d *Indemnity* § 1, at 347 (1995). "It is a device by which a tort-feasor 'passes through' his entire liability to a third party whom the tort-feasor alleges is the real party responsible for injury." 42 C.J.S. *Indemnity* § 2, at 73 (1991).

*Id.* at 823.

In *Hansen*, the Court recognized the right to recover under the common-law doctrine of indemnity, absent a contract, in four situations:

> "(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.
> (2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged. *Restatement Restitution, Sec. 90.*
> (3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.
> (4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged."

*Id.* at 823 (citing *C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 553-54 (Iowa 1983)).

The situations described in 1, 2, and 4 above are clearly inapplicable to the instant action. American Family does not claim that Miell is vicariously liable for Throlson's wrongdoing. Miell does not claim that his actions in filing false claims were done at Throlson's direction or in Throlson's interest. Also, American Family's claim against

16

Miell is not based on any failure of Miell to discover or prevent misconduct by Throlson. Rather, Miell's claim for indemnity would seem to be based on the third alternative set forth above. That is, Miell claims that Throlson breached a duty owed to him.[3]

As set forth in Part V(A) above, the elements of a negligence claim under Iowa law are: (1) the existence of a duty to conform to a standard of conduct to protect others; (2) failure to conform to that standard; (3) proximate cause; and (4) damages. *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir. 1997) (citing *Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997)). Even assuming that Throlson had a duty to assist Miell in the adjustment of his claim, the Court concludes that Miell has failed to generate a genuine issue of material fact regarding Throlson's alleged failure to conform to a standard of conduct in that regard. As set forth in Part V(B)(1) above, there is no evidence that Throlson knew that Miell was filing false claims. Furthermore, to the extent that Throlson's services allegedly failed to conform with a standard of conduct required of insurance agents when assisting an insured in adjusting a loss, that standard falls outside the scope of knowledge commonly understood by lay persons and requires testimony of an expert witness.[4] Miell has not identified an expert witness.

### 3. Summary.

For the reasons set forth above, the Court finds that there are no genuine issues of material fact regarding Miell's claims for contribution or indemnity, as set forth in Count II of his Third-Party Claim. The Court concludes that Throlson is entitled to summary judgment on the contribution and indemnity claims as a matter of law. Therefore, Count II of the Third-Party Claim will be dismissed.

---

[3] In paragraph 192 of his Answer to Complaint, Counterclaim and Third Party Claim (docket number 26), Miell claims "Throlson had a duty to assist Miell in the adjustment of his claim. To the extent that Miell has liability to American Family under any of the grounds alleged in its Complaint, Miell is entitled to indemnification or contribution against Throlson and the Throlson Agency."

[4] *See* Analysis at Part V(A)(1) above.

17

## VI. ORDER

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (docket number 67) filed by Third-Party Defendants Brett Throlson and Brett Throlson Agency, Inc. is hereby **GRANTED** in part and **DENIED** in part as follows: The Motion for Summary Judgment regarding Count I of the Third-Party Claim is hereby **DENIED**. The Motion for Summary Judgment regarding Count II of the Third-Party Claim is hereby **GRANTED**. Count II of the Third-Party Claim (docket number 26) is hereby **DISMISSED**.

DATED this 23rd day of May, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA