# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT MIELL,<br><br>    Defendant.<br><br><br>ROBERT MIELL,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>BRET THROLSON and BRET THROLSON<br>AGENCY, INC.,<br><br>    Third-Party Defendants. | No. 04-CV-142 |

<u>EXCERPTS FROM THE JURY TRIAL HELD</u>
<u>BEFORE THE HONORABLE JON STUART SCOLES</u>,

taken at the Federal Building, 101 First Street SE,
Cedar Rapids, Iowa, on the 9th and 11th day of January,
2008, reported by Kay C. Carr, Certified Shorthand
Reporter in and for the State of Iowa.

RECEIVED

FEB 0 0 2008

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

Kay C. Carr
Certified Shorthand Reporter
Registered Professional Reporter
Cedar Rapids, Iowa
(319) 362-1543

160

## PAGE 1 SHEET 1

1

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE NORTHERN DISTRICT OF IOWA
   CEDAR RAPIDS DIVISION
3
4  AMERICAN FAMILY MUTUAL
   INSURANCE COMPANY,                    )
5                                        )
      Plaintiff,                         )
6                                        )
   vs.                                   )   No. 04-CV-142
7                                        )
   ROBERT NIELL,                         )
8                                        )
      Defendant.                         )
9                                        )
   ROBERT NIELL,                         )
10                                       )
      Third-Party Plaintiff,             )
11                                       )
   vs.                                   )
12                                       )
   BRET THROLSON and BRET THROLSON       )
13 AGENCY, INC.,                         )
                                         )
14    Third-Party Defendants.            )
15
16
17        EXCERPTS FROM THE JURY TRIAL HELD
          BEFORE THE HONORABLE JON STUART SCOLES,
18
   taken at the Federal Building, 101 First Street SE,
19 Cedar Rapids, Iowa, on the 9th and 11th day of January,
   2008, reported by Kay C. Carr, Certified Shorthand
20 Reporter in and for the State of Iowa.
21
22
23              Kay C. Carr
           Certified Shorthand Reporter
24         Registered Professional Reporter
                 Cedar Rapids, Iowa
25                (319) 362-1543

## PAGE 2

2

1              APPEARANCES:
2
3
4  DAVID J. W. PROCTOR, ESQ., and DAVID NOEL MAY,
   ESQ., Bradshaw, Fowler, Proctor & Fairgrave,
5  P.C., 801 Grand Avenue, Suite 3700, Des Moines,
   Iowa 50309-8004, on behalf of the Plaintiff.
6
7
8  PETER C. RILEY, ESQ., Tom Riley Law Firm,
   4040 First Avenue NE, P. O. Box 998,
9  Cedar Rapids, Iowa 52406-0998, on behalf of the
   Defendant/Third-Party Plaintiff.
10
11 PATRICK L. WOODWARD, ESQ., McDonald, Woodward &
   Ivers, P.C., 3432 Jersey Ridge Road,
12 P. O. Box 2746, Davenport, Iowa 52809-2746, on
   behalf of the Third-Party Defendants.
13
14
15
16
17
18
19
20
21
22
23
24
25

## PAGE 3

3

1                  I N D E X
2
3
   WITNESS          DIRECT  CROSS  REDIRECT  RECROSS  VOIR DIRE
4  PLAINTIFF'S:
5
   Robert Niell       36                              37
6  (Offer of Proof)
7
8
9              E X H I B I T S
10
   EXHIBITS                        OFFERED   RECEIVED
11 PLAINTIFF'S:
12 246                               54        54
13 247                               54        54
14 248                               54        54
15 249                               54        54
16
17 DEFENDANT'S:
18 D-1                               57        57
19
20
21
22
23
24
25

## PAGE 4

4

1              (This begins the requested, excerpted
2         portion of the record.)
3              (In open court, outside the presence of the
4         jury.)
5         THE COURT:  Let the record reflect that we're in
6  the courtroom and outside the presence of the jury.  All
7  counsel are present.  The purpose of this record is to
8  address the issue of the 404(b) issues that were
9  previously raised in Defendant's Motion in Limine.  The
10 file will reflect that the Court entered a ruling in that
11 regard on January 2, 2008.  The Court's ruling -- in fact,
12 I'll just read a couple sentences from it.  It says, "As
13 set forth above, the Court has concluded that American
14 Family may introduce evidence regarding other wrongful
15 acts if it can establish by a preponderance of the
16 evidence that the acts are relevant to the issue of
17 Niell's intent to deceive and are similar in kind and
18 close in time to the events at issue in this case, and
19 that the probative value of the evidence is higher than
20 it's prejudicial effect.  Generally, it is anticipated
21 that evidence of Niell's preparation of forged repair
22 bills and similar documents will be admissible."
23         So it was the Court's intention -- and as I
24 indicated in my order -- evidence relating to so-called
25 prior bad acts or other bad acts which are similar in kind

5

1   and close in time to these events are admissible.  By
2   similar in kind, I guess I was primarily thinking of the
3   claims, as I understood them, with respect to Mr. Niell's
4   activities in association with damage deposit returns.
5   That is, it's my understanding that he provided renters
6   with forged or phony damage invoices and things of that
7   sort in order to improperly retain their damage deposits.
8   Because those involve documents which have been fabricated
9   by Mr. Niell in an attempt to essentially defraud another
10  party for financial gain, those are similar in kind, and
11  assuming they're close in time, and further the evidence
12  can be established by a preponderance of the evidence, the
13  Court concludes that those would be admissible.
14          It's my understanding from the proffer
15  yesterday, however, that there are more activities that
16  Defendant engaged in that would be generally described as
17  fraudulent, and so the purpose of this hearing is to allow
18  Plaintiff to make a proffer as to what that evidence is
19  and listen to argument of counsel as to whether or not
20  it's admissible.
21          Mr. May or Mr. Proctor?
22          MR. PROCTOR:  It will be Mr. May.
23          MR. MAY:  Your Honor, I would like to just start
24  out by being very clear about the fact of why we want to
25  offer this evidence.  As the Court properly pointed out

7

1   on?
2           MR. MAY:  Yeah.  We do have some of those
3   documents and I'm just going to have to apologize, Your
4   Honor, that I don't have them in front of me.  I've got
5   witnesses that have seen him use other notary stamps.
6           THE COURT:  The purpose of the hearing today is
7   to be a little more specific exactly what evidence you
8   intended to offer to determine whether it's similar in
9   kind to what we're talking about here.
10          MR. MAY:  And I apologize.  I know that I've got
11  witnesses that are going to say that he used a notary
12  stamp for someone else -- with somebody else's name.
13          THE COURT:  For all I know, that means that
14  someone was, you know -- I don't know what; doing
15  something that they needed a -- their signature notarized
16  and he used -- and if he used someone else's stamp, that's
17  improper, fraudulent, maybe unlawful; a variety of things,
18  but if it's not in the context of what we're talking about
19  here, then it doesn't meet the similar in kind
20  requirement.  I mean it could have been notarizing
21  someone's signature or his signature on a passport
22  application.  Based on what you told me, there's no way I
23  can determine it's similar in kind to the allegations of
24  fraud in this case.
25          MR. MAY:  Your Honor, I understand exactly what

6

1   yesterday, we're not just -- we're not trying to show
2   Niell as a bad guy and, therefore, he did something bad
3   this time.  We're trying to show his intent, motive, and
4   his knowledge of basically forging documents in other
5   contexts and how that plays into what he did here.  And I
6   outlined for the Court several categories and I don't want
7   to re-plow the field too much and waste your time, but I
8   would say I would just go through and briefly say when we
9   talk about him using someone else's notary stamp -- and
10  this would be evidence that would be in the same time
11  frame.  In other words, we're talking about in the early
12  2000s, if you will; you know, that's a fraudulent document
13  situation.  Where he signs R. Gordan Sergeant's name --
14          THE COURT:  Let's be more specific with respect
15  to the notary stamp.  Specifically, what would the
16  evidence be if I allowed it?  Can you tell me when and
17  what documents and for what purposes these were used?
18          MR. MAY:  I can tell you that -- that what we
19  would ask Mr. Niell about -- what we would ask him about
20  is whether in 2001, 2002, 2003 he had ever used a notary
21  stamp with somebody else's name on it.  Now, the purpose
22  of using that, of course, is to falsify the fact that
23  there was a notary standing there at the time.  It would
24  be a situation where --
25          THE COURT:  Do you know what document he used it

8

1   you're saying.  I guess my -- I won't say it a million
2   times.  I think of similar in kind of being if you're
3   forging documents and I understand your point.  I'm not
4   trying to argue with you.
5           THE COURT:  Essentially, your theory is that
6   because the allegation here is fraud, that any fraud is
7   similar in kind.
8           MR. MAY:  No, Your Honor.  We will -- that would
9   be the broad stance because I've got one extra fraud, but
10  if I abandon that stance, I still have several things
11  where it's fraud and manipulating documents and that's my
12  theory.  But if you'll just bear with me.
13          THE COURT:  What's the next item?
14          MR. MAY:  Well, R. Gordan Sergeant.  And the
15  evidence here would be that R. Gordan Sergeant is an
16  imaginary person whom Mr. Niell used this name as
17  basically to mislead renters into thinking that R. Gordan
18  Sergeant was a -- the owner of the buildings or, you know,
19  that's the person that people have to go to with any of
20  their problems.  There's going to be evidence that he
21  wanted them to sue R. Gordan Sergeant instead of him and
22  that he had a stamp made up with R. Gordan Sergeant's name
23  on it and he would use that stamp and that it was used in
24  the -- in the office.
25          THE COURT:  Stamped on what?

PAGE 9  SHEET 3

9

1    MR. MAY: Documents that were used in connection
2  with tenants.
3    THE COURT: So when a lease was entered into, he
4  would stamp Mr. Sergeant's signature on a lease or I guess
5  I'm unclear as to what other claim -- if a notice was sent
6  out saying you're not getting your damage deposit back,
7  would he use Mr. Sergeant's name there?
8    MR. MAY: I wish I could be more specific with
9  you right now, Your Honor, and I just don't have the
10  answer to your question and I'll probably just bring it
11  back up before I try to offer that because I just have to
12  ask a witness. He's going to be here at one o'clock
13  today.
14    THE COURT: I guess you can bring it back up,
15  although again, that's why we came an hour early this
16  morning was to try to address these issues. Yesterday,
17  there was testimony regarding a J. J. McManus and that
18  evidence was properly admitted because that name appeared
19  on a Home Doctor bill and that Home Doctor bill was
20  submitted in connection with these losses and, therefore,
21  it was perfectly legitimate. The suggestion at that time
22  was that there is no J. J. McManus. Frankly, I hope for
23  Mr. Niell's sake that there is because I'm assuming the
24  Government is going to check that out and if there isn't a
25  J. J. McManus, I think he's probably opened himself up to

PAGE 11

11

1  however, unless R. Gordan Sergeant's name is somehow
2  either associated with this case other than simply being
3  listed as an officer in one of Mr. Niell's companies. For
4  example, his name appears on one of the documents
5  someplace or if there's some other document that's similar
6  in kind, like some sort of letter to a tenant saying you
7  don't get your damage deposit back because we had to do
8  these repairs and here's an invoice and it turns out that
9  invoice is false, that kind of testimony would be
10  admissible. And if Mr. Sergeant is somehow identified
11  with that, then that would come out and so forth, but the
12  mere fact that there may be another imaginary party out
13  there; a person out there I don't think is the similar in
14  kind or meets the similar in kind requirement that's
15  anticipated by the cases.
16    MR. MAY: And, Your Honor, I understand
17  everything you just said, and the only reason I hesitate
18  to say exactly what documents I'm fairly sure what the
19  testimony would be is -- well, first of all, I don't know
20  what Mr. Niell would say if we had him on the stand.  I
21  would like to believe he would admit to using the
22  R. Gordan Sergeant, but I think that the other witnesses
23  that we have would say that it had to do with leases at a
24  minimum and that doesn't sound like it meets what you have
25  in mind.

PAGE 10

10

1  a perjury charge because he testified unequivocally that
2  J. J. McManus does exist.
3    Having said that, however, even if, you know, we
4  think that there's a R. Gordan Sergeant out there, it's
5  somehow in my belief got to be tied into -- to what we're
6  talking about here. It's -- it's not enough -- in fact, I
7  think that's the whole thrust of 404(b) is you don't just
8  throw in a bunch of bad things about somebody so that the
9  jury can conclude he's a bad guy and, therefore, probably
10  did bad things here. It's got to be similar in kind to
11  the kind of fraud that is alleged in this case.
12    MR. PROCTOR: Judge, unless my memory is
13  failing, R. Gordan was president of at least Equity
14  Associates. Mr. Riley can correct me if I'm wrong, but
15  that's where R. Gordan Sergeant fits into the
16  performance. You see from the faxes we went over, they
17  came from Equity Associates, which again, I believe the
18  testimony in the deposition was that R. Gordan Sergeant
19  was at one time the president of that company while all of
20  this was going -- going on.
21    THE COURT: And again, if there is no
22  Mr. Sergeant, that's clearly fraud and if he submitted
23  documents with the Secretary of State which identify an
24  imaginary person, he's probably exposed himself to
25  additional criminal charges. I mean it's all bad stuff;

PAGE 12

12

1    THE COURT: Even if Mr. Niell would admit that
2  evidence, that's sort of the second part of the analysis
3  or one of the parts of the analysis. In order to be
4  admissible, first, the Court has to find that it's similar
5  in kind and close in time. And then the offer has to be
6  able to prove it by a preponderance of the evidence. Now,
7  if I find that it's similar in kind and close in time and,
8  therefore, admissible, then it might be that you can prove
9  it by his admissions and if he fails to admit it, then you
10  would have to prove it by some other means. But if -- if
11  it's not similar in kind and close in time, then whether
12  he would admit it doesn't get you home.
13    MR. MAY: I would like to just raise one other
14  issue, Judge, and it's that yesterday, when Mr. Niell was
15  up on the stand, he was talking about his motivation in
16  this case and his motivation for fixing roofs and he said
17  that that was for the good of his tenants. And he was
18  trying to convince the jury at that point what a good guy
19  he was with regard to his tenants and I think that weighs
20  in favor of our other evidence regarding how he treats his
21  tenants.
22    THE COURT: What's the third item?
23    MR. RILEY: Your Honor, I hate to interrupt, but
24  there is something I would like to say about that brief
25  comment. I can wait until later.

13

1        THE COURT: Go ahead.
2        MR. RILEY: I think the testimony was in
3    relation to the roofs that had to be fixed before the
4    matter was fully adjusted because those roofs were
5    leaking. I don't think there was a broad claim of I'm
6    doing this for the good of my tenants. Not that that
7    makes any difference in my view, but that was my
8    recollection of the testimony.
9        THE COURT: Item No. 3?
10        MR. MAY: Rich Shanstrom is a name the jury is
11    already familiar with and -- well, I skipped. John
12    McManus we've already dealt with. Rich Shanstrom, the
13    jury already heard about him. He's the one that brought
14    this up to -- this whole scheme to the attention of the
15    fraud division and Mr. Shanstrom would say that Mr. Niell
16    sent him an inflated 1099 and that it was an effort --
17    well, and I don't know that Rich would say it, but what
18    could be inferred was Mr. Niell was trying to benefit
19    twice from the scheme. Not only does he not spend the
20    money on the roofs, but he gets a tax benefit as if he had
21    spent the money on the roofs.
22        THE COURT: And my recollection of the
23    testimony, or maybe it was during opening statements, but
24    there's sort of an inference that Mr. Shanstrom may have
25    had some sort of improper motive in reporting all of that

14

1    or something to that effect and it would seem like issues
2    relating to Mr. Shanstrom would then be admissible with
3    respect to what his motive may or may not have been.
4        So, Mr. Riley, how do you respond to the
5    argument that Mr. Shanstrom is more directly related to
6    the issues in this case; that is, specifically, it was a
7    claim he had done some work on the houses. That was
8    false. Mr. Shanstrom would be able to testify that he
9    didn't do any work on the houses and then apparently you
10    would be asked whether or not he got a 1099 that reflected
11    that.
12        MR. RILEY: First of all, Your Honor, we look
13    forward to talking about Mr. Shanstrom in great detail.
14    Obviously, Mr. Shanstrom is going to talk about how he
15    told the investigator no, I didn't work on this house,
16    this house, this house and that's clearly proper.
17        With respect to the issue of Mr. Shanstrom
18    saying I had tax problems because of inflated 1099s that
19    Mr. Niell submitted to the government, I would agree,
20    No. 1, that that would go to the issue of his motive and,
21    No. 2, we look forward to going into that evidence in
22    great detail. So I don't have a problem with that.
23        But I do want to raise a procedural issue as it
24    relates to the questioning of Mr. Niell on that point,
25    because that gets into the question of the matters to what

15

1    extent can you go into matters that are collateral, and
2    when Mr. Niell denies that he gave an inflated 1099 to
3    Mr. Shanstrom -- which he will do -- do they take the
4    answer or are they entitled then to try to impeach him or
5    wait until Mr. Shanstrom testifies. I'm curious about
6    that there may be some additional documents brought down
7    to the courthouse.
8        THE COURT: Well, I'm assuming that it appears
9    that the parties are in agreement that testimony regarding
10    Mr. Shanstrom and his role in that whole process is going
11    to be admissible and that will include what 1099s he got
12    from Mr. Niell and whether or not they were accurate and
13    all the rest of it. I don't think it's necessary for the
14    Plaintiff to wait until Mr. Shanstrom testifies here's my
15    1099 and it was inflated and then call Mr. Niell back and
16    ask him whether he admits that. I think they can ask him
17    during his direct examination whether or not the 1099 that
18    he issued to Mr. Shanstrom was accurate and if he says it
19    is, then that's what he says and then the Plaintiffs are
20    going to be put to some proof to establish it's something
21    else, presumably by Mr. Shanstrom's testimony.
22        What's the fourth item? Mr. McManus was No. 3.
23    Mr. Shanstrom was No. 4.
24        What's the fifth item?
25        MR. MAY: Your Honor, the fifth item had to do

16

1    with the bat cave and the bat cave -- as I recall,
2    Mr. Niell told us in his deposition that it was the cave.
3    I don't think he was willing to own up to the bat cave and
4    I told you yesterday that's a situation where Mr. Niell
5    would have taken tenants property, put it in the bat cave
6    and then in certain instances, tell the tenant that,
7    "Well, I guess somebody stole your property. I don't
8    know where it is."
9        THE COURT: This is when someone moves out or is
10    evicted? He empties the apartment, stores it
11    someplace -- if you want to call it a cave -- and then
12    lies about it to the tenant when he's asked about it?
13        MR. MAY: Yeah. And that's what we would ask
14    about.
15        THE COURT: And again, I think that shows that
16    Mr. Niell is a bad guy if that's true, but I don't think
17    it's similar in kind to the type of fraud that we're
18    talking about here.
19        MR. MAY: Would you like me to move on to the
20    next one?
21        THE COURT: Yes. No. 6.
22        MR. MAY: The next one -- and this again, Your
23    Honor -- this is about a document that he asked Teri
24    Sparks to sign that tried to force Teri Sparks, an
25    employee, to sign a confession of something that she

17

1   didn't do and that was the whole calling the employees
2   circus animals.
3          THE COURT:  Can you give me more detail of what
4   that's all about?
5          MR. MAY:  Yeah.  I didn't want to try to waste
6   your time.  I had a feeling I knew what you were going to
7   say about it.  Apparently, what Teri is going to testify
8   to is some of the staff had thought that Bob had called
9   them circus animals.
10         THE COURT:  Like what?  Like --
11         MR. MAY:  The -- the staff is a bunch of circus
12  animals.  Not like elephant or rhino.  Just circus animals
13  in a generic sense.
14         THE COURT:  So in speaking with other people, he
15  said, "My staff are a bunch of circus animals."
16         MR. MAY:  Yeah, circus animals, and apparently
17  what Mr. Niell tried to do was pin that on Teri Sparks.
18  No, it was Teri and then tried to get Teri to sign a
19  confession that, you know, I apologize for calling the
20  staff circus animals and that's why she quit.  And it was
21  actually litigated, the whole issue, in the -- because she
22  went for unemployment benefits and ultimately it was --
23  there was a credibility determination made between her and
24  Mr. Niell and she was found to be more credible and the
25  Iowa Court of Appeals said there was evidence to support

18

1   that finding so, you know, I guess it just goes back to
2   this idea that this is somebody who is happy to use
3   documents to commit fraud in lots of contexts and this is
4   not a one-time thing just because we stuck a one year
5   deadline on it.
6          THE COURT:  It sounds like kind of a bizarre
7   episode, but I guess I'm not sure how it would apply
8   here.  The only possible application, there was testimony
9   about him meeting with -- I can't remember if it was Lisa
10  Waggoner or someone and had then sign a confession that
11  they had taken some stuff from his office and I don't know
12  if it's claimed that that happened; if the Plaintiff says
13  yeah, that did happen and -- or what the Plaintiff's
14  position is as to whether or not that was a true
15  confession or if it did happen or what that's all about.
16         But theoretically, I suppose if the Plaintiffs
17  offered testimony that -- from Lisa Waggoner that I was
18  forced to sign this false confession, it wasn't true, but
19  I did it because I was pressured and so forth and so on
20  and -- and Mr. Niell denies that, then theoretically, if
21  there was another circumstance where he forced a false
22  confession, that might be relevant.  But absent that, the
23  fact that there's this episode regarding circus animals I
24  don't think has much to do with what we're doing here
25  today.

19

1          What's the seventh item?
2          MR. MAY:  This is more of a generic setting
3   where the best I can give you is that Bob was overheard to
4   say that he would ask his employees to sign his name so he
5   could later accuse them of having forged it if things went
6   badly.  In other words, to basically turn around, sign my
7   name for me in this context.
8          THE COURT:  Is there any evidence that any of
9   his employees ever signed his name?
10         MR. MAY:  His statement that that's what he
11  did.  Yeah, it would be hearsay.  His statement outside of
12  the court.  I mean it's his admission and somebody heard
13  him say it.  I don't have a piece of paper, if that's what
14  you're asking for, Your Honor.
15         THE COURT:  And who would testify that they
16  heard him say to somebody else -- I guess I'm not sure
17  who's testifying as to this.
18         MR. MAY:  Yeah.  Lisa Waggoner would say she
19  heard Bob say that.
20         THE COURT:  So Bob told Lisa, "I'm going to have
21  other people sign so that later on I can say I
22  didn't sign it."  They signed it or something to that
23  effect?
24         MR. MAY:  Or Bob is talking to somebody and Lisa
25  was there.  They were not just employees.  They lived

20

1   together for a while.
2          THE COURT:  But unless there's some -- so far I
3   don't think he's denied his signature on any of these
4   documents or signing any of these items, and unless at
5   some point he says, "I didn't sign that.  That's not my
6   signature," then the issue of whether or not, in fact, he
7   signed it and whether or not he had the scheme out there
8   where he would have other people sign so he could deny it,
9   maybe that becomes relevant.  But unless his signature is
10  called into question, I think it has really little or no
11  probative value.
12         MR. MAY:  Okay.
13         THE COURT:  And so I wouldn't be inclined to do
14  that.
15         MR. MAY:  The last issue I want to bring up, and
16  I think this is probably one -- something that would be
17  the most helpful to the jury at this stage is something
18  called whiteout Tuesday.  And the evidence will be that
19  what Mr. Niell would do is when he was getting ready --
20  Tuesday apparently is the day to go down for small claims
21  for tenants or at least at one point it was.  And that he
22  would take leases and other documents over to the
23  photocopier and he would white out the portions that he
24  wanted to white out to try to hide and then he would
25  photocopy and then present that as -- as the original.  In

21

1   other words, alteration of documents for the purpose of
2   winning lawsuits.
3            THE COURT:  The documents would be --
4            MR. MAY:  Leases is one example.  Now, where is
5   that exhibit?  Your Honor, when I deposed Mr. Niell about
6   this Exhibit L, that's that most recent, you know, one of
7   the things I went through with him is the fact that -- I
8   mean first of all, it's American Family's position that
9   this is a forgery.  This was created by Mr. Niell; this
10  Exhibit L.  That he took other fax sheets and other pieces
11  of paper and just, you know, wrote out the note and -- and
12  tried -- is trying to make it look like he faxed this back
13  in 2002.
14           THE COURT:  Well, it is true that there's
15  nothing to connect the first page to the second page
16  except for Mr. Niell's testimony.
17           MR. MAY:  Exactly.  And so -- and that is
18  exactly the reason why him manipulating documents in
19  another context to win a court case is so important.
20           THE COURT:  What do you think about that,
21  Mr. Riley?
22           MR. RILEY:  Well again, I don't know which of
23  the employees would testify to this.  There were -- in
24  their investigative reports which we were provided, there
25  was some references to some former employees referring to

22

1   hearing from other employees about whiteout Tuesday or
2   something like that.  So first of all, I think that the
3   the direct evidence of that based at least on what we've
4   been provided is going to be very, very slim.
5            Secondly, the evidence concerning this letter --
6   you have a letter which he says he sent.  He either sent
7   it or he didn't.  There is a fax transmission thing which
8   would have been generated by a machine, so there's really
9   no question as to the fact that something was faxed on
10  that date at that time.
11           THE COURT:  We know that something got faxed,
12  but there's no way of knowing whether it was this sheet
13  or, theoretically, he could have taken that second page
14  and years later wrote out the first page using the same
15  date and just put them together.
16           MR. RILEY:  But that's different from saying
17  that he makes it a habit before he goes into court of
18  altering lease documents, particularly where if he's
19  involved in a court dispute -- I mean the tenant has got a
20  copy of the document; the lease document as well.  So the
21  whole thing sounds somewhat contrived to give it -- and if
22  you look at the probative value of that in those
23  circumstances and you're willing to recognize that after
24  you do the 404(b) analysis, you have to look at the 403
25  analysis, I just think it would be unduly prejudicial

23

1   assuming -- I don't concede that it's similar related, but
2   here's somebody that sits here before he goes into court
3   altering documents by the Xerox machine.
4            Keep in mind in the context of this coming in,
5   you know, we -- we responded to voluntarily a lot more
6   requests for admissions than we would be permitted by the
7   rule.  We stipulated to a bunch of stuff to avoid
8   unnecessary proof and yet we spent a better part of
9   yesterday going document by document so we could pound
10  Mr. Niell over the head with this document, this
11  document.  There's no question and he's never denied what
12  he did with respect to it.  He's given his rationale, so I
13  just don't think in the totality of the circumstances of
14  this case, that some claim that he altered other lease
15  documents in connection with small claims litigation with
16  tenants meets the standard of 404(b) and, in any event, it
17  would be unduly prejudicial.
18           THE COURT:  Well, I do appreciate the
19  cooperation of counsel with respect to request for
20  admissions and otherwise getting this case in a position
21  where perhaps it could be submitted a little quicker.  I
22  also understand counsel's argument that in some ways,
23  maybe the Plaintiffs don't need this.  That they've
24  already got essentially admissions that he submitted
25  145 phony claims and maybe this is overkill, but neither

24

1   of those concerns really address the issue of the 404(b)
2   issue.
3            In other words, you don't get points for being
4   cooperative and it's not for me to decide, you know, how
5   much evidence the Plaintiff thinks they need in order to
6   prove their case.  Rather, it's simply an analysis as to
7   whether or not they're entitled to offer the evidence
8   under 404(b).  Frankly, if I allow it and I'm wrong and
9   they get reversed because of that, then they've shot
10  themselves in the foot because they've maybe overreached
11  and maybe could have gotten there without having to
12  introduce evidence which the circuit court would later
13  find to be objectionable.
14           But nonetheless, I have to go through my
15  analysis and enter whatever kind of ruling I think is
16  appropriate.  I think that this kind of testimony is
17  similar in kind.  It involves the manipulation of
18  documents by Mr. Niell in order to -- which are then
19  submitted to a third-party -- in this case, I guess the
20  court -- for the purpose of obtaining financial gain.  So
21  I think that they're similar in kind.  I'm assuming that
22  the testimony will be they're close in time, and by close
23  in time, I'm essentially talking about the 2000 to 2004
24  time frame which these events were all coming to pass.
25           MR. MAY:  Your Honor, Teri -- excuse me, Teri

25

1   Sparks, I believe, was only employed there from '81 to '82
2   and she is the author of the phrase whiteout Tuesday and
3   she's the one we would be offering.
4        THE COURT:  And while it may be -- have some
5   prejudicial effect -- although frankly based on what the
6   jury has heard so far, I don't know how much more shocked
7   they might be by that kind of testimony -- I think it has
8   probative value and I think the probative value is higher
9   than the prejudicial effect.  So the Court believes that
10  testimony is admissible, assuming, again, the Plaintiff
11  can prove it by a preponderance of the evidence.
12       Are there other items, Mr. May?
13       MR. MAY:  Well, the only thing I'm thinking
14  about now, Your Honor, is that -- and this is just simply
15  to make sure that we're not inconveniencing the jury, and
16  that is that I have Lisa Waggoner scheduled to be here at
17  one.  Teri Sparks is also scheduled to be here at about
18  one.  I really -- based on what you just told me -- think
19  that probably Lisa Wag -- I have -- I know that there are
20  some other issues that people want to take up with Lisa
21  Waggoner, but it seems like to me that I'm probably going
22  to have a little bit of time for an offer of proof and --
23  and I would like to question her on the record about that
24  and we'll also want to question Teri Sparks about other
25  things other than what you're going to let us do in front

26

1   of the jury.  I'm just letting you know that those are
2   things that I'm wanting to do.
3        THE COURT:  And we'll try to do that.  Normally
4   -- I would normally try to do that during the noonhour,
5   but since we're quitting early today, we're not quitting
6   during the noonhour.  What I would suggest is for the
7   offer of proof, maybe counsel can talk between now and
8   nine o'clock and see whether or not you can agree on what
9   a proffer by the Plaintiff as to what her testimony would
10  be.  In other words, make a stipulation on the record, but
11  outside the presence of the jury, that if she were called,
12  she would testify to these facts and if the parties are
13  able to reach that agreement, then it, I think, preserves
14  the error without having to take additional time to
15  actually do the questions and answer.  Now, if the parties
16  are unable to agree as to what her testimony would be,
17  then we'll have to have her testify on the record and
18  outside the presence of the jury.
19       So in summary, my ruling with respect to the
20  404(b) issues is that evidence regarding damage deposit
21  claims made by tenants in which the Defendant provided
22  phony documents or false documents in order to improperly
23  refuse to return damage deposits, I believe that's
24  similar in kind and close in time to these events and,
25  therefore, admissible.

27

1   Similarly, the so-called whiteout Tuesday where
2   the testimony apparently will be that Mr. Niell would
3   alter documents which were then submitted to third persons
4   for the purpose of gaining a financial advantage; those
5   are similar in kind and assuming that they're close in
6   time and can be established by a preponderance of the
7   evidence, those would be admissible.
8        Also, J. J. McManus -- testimony regarding him
9   is admissible.  I think we've already heard it, but that's
10  admissible.
11       And finally, testimony regarding Richard
12  Shanstrom and his 1099 and I guess whatever else there is
13  out there regarding Mr. Shanstrom would be admissible.
14  The other items I don't believe are similar in kind and
15  their probative value I think is outweighed by prejudicial
16  effect.
17       MR. MAY:  Your Honor, I need to mention two
18  other things and I apologize.  The first one I'm pretty
19  sure falls into the last part of your ruling.  I just want
20  to mention it on the record.  There's evidence that he
21  used a credit card for an imaginary brother named John
22  Niell and I think you would just say that's just like all
23  the other things you mentioned, Mr. May, as far as the --
24  like R. Gordan Sergeant, but I just wanted to mention that
25  that's another thing.

28

1        The last thing -- and I don't really consider it
2   a 404(b) issue per se, but I want to raise it just so that
3   -- because we would like to ask him about one of the
4   roofs that was not fixed that we paid -- that American
5   Family paid for and he sold it without disclosing the fact
6   that it had been fixed -- not fixed when it was not fixed
7   and he didn't disclose the damage.  Peter, do you object
8   to that?
9        MR. RILEY:  Well, first of all, there were two
10  properties that were sold and you can ask him about it.
11  You can ask him about it.  You can ask him whether he
12  submitted disclosures to the buyers.
13       THE COURT:  So apparently we don't have a
14  problem with that issue.
15       MR. MAY:  Okay.
16       MR. PROCTOR:  May I ask a clarifying question?
17       THE COURT:  Sure.
18       MR. PROCTOR:  I heard what you said on R. Gordon
19  Sergeant.  Am I correct that I am not -- repeat not -- to
20  ask Mr. Niell if R. Gordan Sergeant is an officer in one
21  of his companies; right?  Don't do that?
22       THE COURT:  That's right.
23       MR. PROCTOR:  Thank you.
24       THE COURT:  Anything else, Mr. Riley?
25       MR. RILEY:  Just from a procedural standpoint,

PAGE 29  SHEET 8

29

1  in terms of objecting to this evidence, do I need to
2  continue to object every time there's a question on, say,
3  the Home Doctor or can I merely object, you know -- you
4  know, I know that standing objections are always fraught
5  with peril in terms of did you adequately deal with the
6  scope and I don't want to have to make multiple objections
7  when these various things come up.
8      THE COURT: What I always tell lawyers is that I
9  can't give you any advice on the kind of record you need
10  to make. As far as I'm concerned, you can have, you know,
11  what's called a standing objection. Whether or not, you
12  know, the appellate court believes that was sufficient to
13  preserve error is between you and the appellate court.
14      MR. RILEY: I understand. But I believe that
15  the nature of these four items that come in are fairly
16  discreet. I'm willing to take that chance, but I thought
17  I would at least discuss with you before we go on the
18  record not in the presence of the jury how I intend to
19  handle it and so what I'll do is when anything is offered
20  on these, I'll make an objection and then -- then I'll ask
21  if I can have a standing objection to the testimony
22  concerning -- I will describe what it is and that's how I
23  intend to proceed.
24      THE COURT: That would be fine.
25      Mr. Woodward, you want any part of this?

PAGE 30

30

1      MR. WOODWARD: I think they're fighting pretty
2  good, Judge.
3      THE COURT: Is there anything else we need to
4  talk about before we get started this morning? I guess
5  there are -- I'm working on the instructions and I'm still
6  a little unclear as to what the parties believe the
7  measure of damages is. I looked at the instructions and
8  -- and my understanding is that at one point, the parties
9  more or less agreed on the measure of damages, but I think
10  the instruction says something like the amount paid out by
11  American Family under the policies reduced by any premiums
12  which Mr. Niell would have paid on those policies since
13  the loss and we haven't really gotten yet to -- well, I
14  think the spreadsheet exhibits that we looked at show the
15  amounts paid out, but is American Family also going to be
16  asking for adjusting expenses and other damages other than
17  simply the amounts paid to Mr. Niell?
18      MR. PROCTOR: Yes.
19      THE COURT: And is that included then in your
20  requested instruction about amounts paid out under the
21  policies?
22      MR. PROCTOR: I can't remember.
23      MR. MAY: Yes. Your Honor, the theory is
24  basically that in order to right this wrong, the policy
25  voids back to May 10, 2001, and all the payments that were

PAGE 31

31

1  made after May 10, 2001, anything paid under that, whether
2  it's to Mr. Niell on his behalf.
3      THE COURT: Does the contract provided for --
4  well, let me back up. I'm just trying to think out loud
5  here, but I understand under the fraudulent
6  misrepresentation claim, that essentially it's
7  consequential damages and the consequential damages would
8  be the amounts paid out to Mr. Niell and the -- also the
9  amounts you incurred in adjusting the losses and all the
10  rest of it. Count One though is a contract claim and the
11  damages presumably are established by the contract or --
12  well, maybe it's still what the consequential damages are
13  for the breach of the contract, but I guess maybe I'll
14  just ask Mr. Riley, do you concede that the -- that in
15  addition to the amounts that were paid to Mr. Niell, the
16  Plaintiffs are entitled to the adjusting losses or similar
17  kinds of claims?
18      MR. RILEY: No, Your Honor. I've never disputed
19  their numbers. I was never going to require them to prove
20  the numbers, but I don't agree that those automatically
21  are part of the breach of contract damages. No, I don't.
22      THE COURT: And how much are we talking about
23  here?
24      MR. MAY: Could I show you the exhibit?
25      MR. PROCTOR: Not much.

PAGE 32

32

1      MR. MAY: No; we're not talking about a lot. I
2  could show the exhibit to the Court.
3      THE COURT: Have you got a ballpark? $25,000?
4  More or less?
5      MR. PROCTOR: Take a quick peek at the exhibit.
6  We'll have that exhibit, Your Honor, in a minute and then
7  we won't have the potential of misrepresenting to you.
8      THE COURT: What's the number on it?
9      MR. PROCTOR: Exhibit number, Dave.
10      MR. MAY: 207.
11      THE COURT: I've got it in front of me.
12      MR. MAY: Okay. It looks like adjustment --
13  well, if you've got it, adjustment expenses paid to
14  PaceSetter, that would have been just the adjusting when
15  they went out and looked at the roofs early on. That's
16  85,000. The actual investigation expenses where in 2004
17  they go look at the roofs is about 22,000. That's that
18  third column down there.
19      THE COURT: And then also I assume the legal
20  defense expenses incurred on other claims that were made
21  of 11,784 and other adjustment expenses. So essentially
22  about $100,000 worth of sort of amounts not paid to
23  Mr. Niell?
24      MR. MAY: I think that's pretty fair.
25      MR. PROCTOR: Correct.

33

```
1     THE COURT:  And as I understand, Mr. Riley, you
2   don't dispute the accuracy of these numbers or that they
3   were fairly and reasonably incurred, but you don't think
4   that they are included in the measure of damages?
5     MR. RILEY:  Yes.
6     THE COURT:  And I don't recall; it's been a
7   while since I read the trial briefs, but I don't know that
8   the parties really address that issue, so sometime
9   tonight, tomorrow night, if you guys can take a look and
10  provide me with some cases as to whether or not these
11  adjustment losses are compensatory damages which the jury
12  would be entitled to make.  My intention is to have the
13  jury instructions in a state that I can provide those to
14  you on Friday when we quit for the weekend and that way
15  you'll have the weekend to kind of look through them and
16  kind of know where I'm heading and so that we can kind of
17  shorten the amount of time we have to spend on that later
18  on.
19    Anything else we need to talk about?
20    MR. RILEY:  Just scheduling.  Where do you guys
21  think you are in terms of when do you think you'll be
22  done?
23    MR. MAY:  I think -- well, today is definitely
24  shot.  Tomorrow is going to be pretty full too.  I don't
25  know how many hours we're going to get tomorrow.
```

34

```
1     THE COURT:  Tomorrow is a full day.  Nine to
2   4:30.  So is Friday, nine to 4:30.
3     MR. MAY:  I have a hard time thinking that we're
4   not going to go into Friday.
5     MR. PROCTOR:  I believe we'll go into Friday
6   with a little bit of luck we will rest Friday.  But I
7   can't guarantee to it, sir.
8     THE COURT:  All right.  Again, I'm hopeful that
9   we won't have any snags.  I -- we need to finish this case
10  next week absolutely and obviously, if we can finish it
11  earlier in the week, that's probably beneficial to all of
12  us.
13    MR. PROCTOR:  Judge, I don't think there's any
14  question we'll finish next week.
15    MR. RILEY:  I mean you're going to call Bret?
16    MR. MAY:  Yes, we're going to call Bret
17  Throlson.
18    MR. RILEY:  Then it's likely we may not have
19  very much evidence because I mean the main components of
20  our case are Mr. Throlson -- are Mr. Niell and
21  Mr. Throlson and I believe we'll address both of those
22  things when he's on the stand as part of their case.  We
23  may not have any evidence.
24    THE COURT:  Counting today, we've got three
25  days.  Maybe we'll be able to get the evidence in this
```

35

```
1   week and then come back and submit it on Monday.  In any
2   event, let's take our break.  We'll start in with the jury
3   at nine o'clock.
4     MR. MAY:  Your Honor, are we going to be
5   moving?
6     THE COURT:  Oh, yeah.  Thank you.  We'll be here
7   today, but then actually the reason we're quitting early
8   at 2:30 is I have to pick a jury for Judge Reade at three
9   o'clock and then Judge Reade will reclaim the third floor
10  courtroom tomorrow to try her case.  So after today, you
11  know, when we're done at 2:30, you guys will have to move
12  out.  We'll be down in the second floor courtroom for the
13  balance of the case.
14    MR. PROCTOR:  Judge, just on the logistical
15  side, we've got a lot of boxes to move and Your Honor is
16  starting up at 2:45.  I'll do my best, but maybe
17  20 minutes instead of 15 might get this courtroom cleared
18  out.
19    THE COURT:  Yeah.  The other thing is if you
20  don't get everything out of here, that's probably okay.
21  But you would have to show up early tomorrow morning or
22  wait until we get done picking our jury and come and get
23  the rest of it.  In order to pick the jury, we've got to
24  set up like 15 chairs or something in front here and so we
25  will need most of your stuff out of the way though.
```

36

```
1     MR. PROCTOR:  Yeah.  I'm just saying if we could
2   have 20 minutes instead of 15, that might help it get done
3   for you so you can have a clean courtroom.
4     THE COURT:  Dave's a young guy.
5     (Other proceedings were reported but not
6     transcribed.)
7     (In open court, outside the presence of the
8     jury.)
9     THE COURT:  Let the record reflect that we're in
10  the courtroom and outside the presence of the jury.  All
11  counsel are present.
12    Mr. May, I think you wanted to make an offer of
13  proof?
14    MR. MAY:  Yes, Your Honor.  I would like to call
15  Mr. Niell for an offer of proof.
16    THE COURT:  Mr. Niell, if you'll resume your
17  place on the witness stand.  You're still under oath.
18         DIRECT EXAMINATION
19  BY MR. MAY:
20  Q.  Mr. Niell, you are currently under indictment; is
21  that correct?
22  A.  Yes, I am.
23  Q.  And I'm going to come up and show you my copy of the
24  indictment.  And you'll see that I made a couple of marks
25  in it, but would you just look at it and make sure that it
```

37

```
1   looks like the correct Indictment.
2   A.  Yes, it is.
3   Q.  Okay. What's alleged against you in the Indictment?
4   A.  There are two counts. One is to -- I believe is as
5   far as mail fraud in regard to money received for hail
6   claims, and the second count is 11 sections with regard to
7   mail fraud with regard to tenant deposit claims.
8   Q.  Including the Home Doctor?
9   A.  Yes.
10  Q.  And actually, all told, there are 19 mail fraud
11  counts; is that right?
12  A.  I believe so.
13  Q.  And what's your understanding as to the possible
14  penalty for each of those?
15          MR. RILEY: Your Honor, I need to voir dire the
16  witness.
17          THE COURT: You may.
18              VOIR DIRE EXAMINATION
19  BY MR. RILEY:
20  Q.  Can you answer that question without reference to
21  discussions that you've had with Attorney Lane who is
22  representing you in that matter?
23  A.  No, I cannot.
24          MR. RILEY: Your Honor, my concern is they're
25  asking him what his understanding is. He can't answer
```

38

```
1   that without regard to disclosing what he has discussed
2   with his counsel. It is no secret that law enforcement
3   and U.S. Attorney personnel have been sitting there and
4   monitoring this case. I think it's unfair --
5          THE COURT: Well, as a practical matter, the
6   purpose of the offer of proof is to provide the appellate
7   court the record if I am in error on refusing to allow the
8   testimony. I'm assuming the Eighth Circuit knows what the
9   possible remedies are for mail fraud and, therefore, I
10  don't think it really tells them anything they can't
11  determine by looking at the United States Code.
12          MR. MAY: And I'm not really trying to prove the
13  legal point, Your Honor. What I'm trying to prove is
14  whether Mr. Niell, like all the readers of The
15  Cedar Rapids Gazette, have some understanding of the
16  number of years that he would be facing.
17          THE COURT: Well, that's true. The theory
18  behind this offer, I guess, is that he's motivated in his
19  testimony at this trial by his exposure in the criminal
20  case and so his understanding as to what his exposure is,
21  I guess, is theoretically associated with that offer. So
22  I'll let him testify. Well, that still doesn't address
23  the attorney/client privilege question.
24          MR. MAY: Can I just try it a couple more
25  questions and see if I can fix this at all?
```

39

```
1          THE COURT: You can try.
2          MR. MAY: Okay.
3              DIRECT EXAMINATION (Continued)
4   BY MR. MAY:
5   Q.  Has it been suggested to you that you may -- let me
6   -- let me get this straight. Have you read The
7   Cedar Rapids Gazette article about your Indictment?
8   A.  No, I have not.
9   Q.  You haven't read any of The Cedar Rapids Gazette's
10  articles about your Indictment?
11  A.  I have not.
12  Q.  Have you read any of The Cedar Rapids Gazette's
13  articles about this lawsuit?
14  A.  I have not.
15  Q.  You read The Cedar Rapids Gazette about the
16  hailstorm, but not about your own Indictment or about this
17  lawsuit; correct?
18  A.  I had a little more time two years ago, sir.
19  Q.  Is it -- is it your understanding that you could go
20  to prison for a long time if you were convicted?
21  A.  What is a long time?
22  Q.  Okay. What -- do you understand you could go to
23  prison if you were -- if you were convicted?
24  A.  Yes, sir.
25  Q.  For a year?
```

40

```
1   A.  A little longer.
2   Q.  On each of those counts?
3   A.  No.
4   Q.  You couldn't have a year for each count?
5   A.  I was --
6          MR. RILEY: Your Honor, I guess I would make the
7   same objection. He's getting into something very specific
8   that I think goes to what he talked to Mr. Lane about.
9          MR. MAY: He started testifying about it.
10         THE COURT: The maximum statutory penalties, of
11  course, are contained in the United States Code. As
12  counsel knows, there's a -- the United States Sentencing
13  Commission has an elaborate process for determining a
14  suggested sentencing guideline range. I'm assuming that
15  Defendant's counsel has perhaps reviewed with him the --
16  how those guidelines may apply in this case. It seems to
17  me that it's sufficient and I think the appellate court
18  can take judicial notice of the fact that the Defendant is
19  facing federal prison time if he's convicted, and whether
20  it's, you know, one year or ten years, the motivation is
21  more or less the same, if there is one.
22         MR. MAY: I'll move on, Your Honor.
23  Q.  And with regard to several of the counts in the
24  Indictment, those arise from the very same facts that are
25  at issue in this lawsuit; correct?
```

41

1   A.   Yes.

2   Q.   In regard to the -- and just to be clear, your claim

3   for replacement costs arising from the May 18, 2001,

4   hailstorm; correct?

5   A.   That is correct.

6   Q.   And isn't it true that part of your strategy in the

7   criminal case was to try to win the civil case and then

8   use that victory to help leverage the criminal case?

9        MR. RILEY:  Your Honor, that would involve not

10  just attorney/client communication, but also may go to

11  issues. And, by the way, Your Honor, just to speed things

12  up, obviously, I've had conversation with counsel during

13  the course of settlement about the fact that there may be

14  some benefit or preclusion, depending on the outcome of

15  this case, and if it makes it easier, I can indicate that

16  I've discussed that with Mr. Proctor, but I don't think

17  you can get -- you know, start asking this witness about

18  his litigation strategy.

19       THE COURT:  Well, your objection is sustained.

20  And, frankly, it just sort of reinforces the reason why I

21  didn't allow counsel to go there. Even if I had allowed

22  testimony that he was under indictment and allowed the

23  jury to somehow infer that has -- that influenced his

24  testimony in this case, the things you're talking about

25  now open up all kinds of cans of woras that I just don't

42

1   think are probative, or at least the prejudicial effect

2   far outweighs the probative value. So I'm not going to

3   allow the question -- I'm not going to allow questions

4   that will impede or interfere or otherwise go into an

5   attorney/client privilege. Things that his attorney has

6   talked to him about. Trial strategies, benefits of doing

7   this or that.

8        MR. MAY:  Well, Your Honor, since I'm making my

9   record, I just want to say that it's our position that I

10  didn't know that until it was disclosed to me, which in my

11  mind is a waiver of any privilege, but I'm happy to move

12  on because I know what your ruling is.

13       THE COURT:  Well, I guess if you really want to

14  make your offer of proof, you can testify as to what you

15  were told and then it makes the -- it makes the record,

16  and to the extent I'm erred in refusing to allow that,

17  then I guess the appellate court would know what the

18  testimony would have been if I would have allowed it.

19       MR. MAY:  I'm happy to go with Mr. Riley's

20  representation.

21  Q.   Mr. Niell, has the pendency of that indictment

22  influenced your testimony this last week?

23  A.   No, sir, it has not.

24  Q.   Did it influence your testimony in particular with

25  regard to whether or not the mail -- the checks were

43

1   mailed to you?

2   A.   No, it did not.

3   Q.   Have you ever used a notary stamp for your own

4   signature where that stamp bore someone else's name?

5   A.   Yes, I have.

6   Q.   What was the name on the stamp?

7   A.   Andrea Mercer.

8   Q.   Can you spell that?

9   A.   A-n-d-r-e-a, M-e-r-c-e-r.

10  Q.   And can you explain the circumstances?

11  A.   It was to record something where Mr. McManus or

12  Mr. Sergeant signed something and the -- there was not a

13  notary available at that point.

14  Q.   And who was Ms. Mercer?

15  A.   She was a -- a former employee.

16  Q.   Okay.  Can you tell me the time frame in which this

17  occurred?

18  A.   I don't know.

19  Q.   Okay.  But it would have been either Mr. McManus or

20  Mr. R. Gordan Sergeant who was signing the paper and then

21  you used the Mercer stamp; correct?

22  A.   Yes.

23  Q.   And then -- and you would have had to sign

24  Ms. Mercer's name; correct?

25  A.   That's correct.

44

1   Q.   And do you recall was that with regard to a

2   particular property?

3   A.   I don't know.

4   Q.   Who's Cindi Peacock? Let me go back before I get to

5   that. Have you ever used any other notary stamp with

6   anyone else's name besides Ms. Mercer other than your own?

7   A.   Yes.

8   Q.   Whose was that?

9   A.   Cindi Peacock.

10  Q.   You used Cindi Peacock's name?

11  A.   Yes.

12  Q.   Her notary stamp?

13  A.   Yes.

14  Q.   Was that to notarize your own signature?

15  A.   I believe it was Mr. McManus'.

16  Q.   And when did that occur?

17  A.   I'm not sure.

18  Q.   How many times did that occur?

19  A.   I'm not sure.

20  Q.   How do you -- what facts at all do you have about

21  that incident?

22  A.   I don't have any.

23  Q.   Okay.  Have you used anyone else's stamps to

24  notarize?

25  A.   I don't recall.

45

1  Q.  Carla Wilson?
2  A.  I don't think she had a stamp.  I don't recall.
3  Q.  Who is Carla Wilson?
4  A.  She was an acquaintance.
5  Q.  Did she notarize for you or did you use her stamp?
6  A.  Both.
7  Q.  You used Carla Wilson's stamp to notarize your own
8  signature?
9  A.  Yes.
10  Q.  And then you would have to write Carla Wilson's
11  signature; correct?
12  A.  That's correct.
13  Q.  And you understood when you were doing this that
14  you're not supposed to use other people's notary stamps to
15  notarize; correct?
16  A.  That's correct.
17  Q.  How long have you known Ms. Peacock?
18  A.  Six years, seven years.
19  Q.  Okay.  So with regard to her, the notarizing that you
20  just described using her stamp would have had to have
21  occurred in the last seven years?
22  A.  That's correct.
23  Q.  And with regard to Carla Wilson, when did that occur?
24  A.  I'm not sure.
25  Q.  In the last seven years?

46

1  A.  I'm not sure.
2  Q.  And with regard to Ms. Mercer?
3  A.  I'm not sure on that -- that either.
4  Q.  More than ten years?
5  A.  Yes, it could be.
6  Q.  Does R. Gordan Sergeant exist?
7  A.  Yes.
8  Q.  Can you describe him?
9  A.  Approximately five six, maybe at this point
10  mid-sixties.
11  Q.  Where does he live?
12  A.  I don't know.
13  Q.  He was an officer on one or more of your companies;
14  correct?
15  A.  Yes.
16  Q.  Which companies?
17  A.  Advanced Equities.
18  Q.  What else?
19  A.  Equity Realtors.
20  Q.  Go ahead.
21  A.  And Mayfair -- M-a-y-f-a-i-r -- Builders.
22  Q.  And are you able to produce any person that can
23  verify his existence?
24  A.  Not at this point.
25  Q.  You were asked about that back in your deposition as

47

1  well; correct?
2  A.  Yes.
3      MR. MAY:  We don't have copies?  May I
4  approach?
5      THE COURT:  You may.
6  Q.  I'll show you what I have marked as Exhibit 246, and
7  can you first tell me what this is.
8  A.  This is an affidavit in support of a forfeiture of
9  real estate contract.
10  Q.  Can you just explain to me, because I'm not a real
11  estate guy, how that works.
12  A.  That basically once someone is in default of a
13  contract, there's 30 days to cure that contract and the
14  real estate is forfeited if the contract is not cured at
15  that point.
16  Q.  So is that your signature?
17  A.  Yes, it is.
18  Q.  And your purpose in preparing this document was
19  basically to take a piece of real estate back?
20  A.  Yes, it was.
21  Q.  Okay.  And why?  Because somebody had breached a
22  contract or they weren't paying or what would it have
23  been?
24  A.  I don't know the circumstances.
25  Q.  Okay.  And do you see the notarization there where it

48

1  says Carla Wilson?
2  A.  Yes.
3  Q.  That's your signature, isn't it?
4  A.  I'm not sure.
5  Q.  Does it look like it?
6  A.  I don't know.
7  Q.  Look at the angle.
8  A.  It could be.  I'm not sure.
9  Q.  Showing you what has been marked as 247.  You see
10  where it's -- and first tell me what this is.
11  A.  It's a release for mortgage.
12  Q.  For what?  One of your properties?
13  A.  I believe it is.
14  Q.  And is that -- you see where it says J. -- John J.
15  McManus?
16  A.  Yes.
17  Q.  That's your signature; your writing?
18  A.  I believe it is, yes.
19  Q.  Okay.  And Andrea Mercer is written down here on the
20  notary?
21  A.  Yes.
22  Q.  Is that your writing?
23  A.  I'm not sure.
24  Q.  It could be?
25  A.  I'm not sure.

49

```
1    Q.   It could be?
2    A.   I don't know.
3    Q.   You don't know whether it could be?
4    A.   I don't know if it's mine or if it's hers.  I don't
5    know.
6    Q.   But it could be yours?
7    A.   It could be.
8    Q.   Showing you what has been marked as 249.  Can you
9    identify that document?
10   A.   It is a quitclaim deed.
11   Q.   And this was for one of your properties; correct?
12   A.   Again, I'm not sure.
13   Q.   "For consideration of $10 and other valuable
14   consideration, John J. McManus, a/k/a John J. McManas, a
15   single person, do hereby Quit Claim to Robert K. Niell all
16   our right, title, interest, estate, claim, and demand in
17   the following described real estate in Linn County,
18   Iowa."  Is that a quitclaim of a piece of property to you?
19   A.   Again, there's not a legal -- I'm not sure what the
20   address is, sir.
21   Q.   Okay.  Is this your signature, your writing down here
22   where it says John J. McManus?
23   A.   I'm -- I believe it is, yes.
24   Q.   Okay.  And your writing down here where it says
25   Carla A. Wilson?
```

50

```
1    A.   Yes, it is.
2    Q.   And the -- and notarizing this; correct?
3    A.   Yes, it is.
4    Q.   Do you know of any other Robert K. Niells in the Linn
5    County area?
6    A.   I'm not sure.
7    Q.   Okay.  You were talking about real estate -- Wait a
8    minute.  You don't know whether you know any Robert K.
9    Niells?
10   A.   I don't know of any.
11   Q.   Okay.  Look at that description of that property and
12   you were talking earlier about public records.  I would
13   like you to tell me whether or not that's a property that
14   was quitclaimed to you.
15   A.   It could be.  I don't know what the address is off
16   the legal description.  I'm sorry.
17   Q.   Okay.  This 249, that was in 1999; correct?  Is that
18   what that says or six?
19   A.   That appears -- I'm not sure.
20   Q.   Okay.  I think I skipped one.  Now, I'm going to show
21   you 248.  Do you see that signature right there?  John M.
22   McManus.  Do you see it?
23   A.   Yes.
24   Q.   Is that your writing?
25   A.   I'm not sure.
```

51

```
1    Q.   And 2000.  Was that in 2000?
2    A.   Yes, it is.
3    Q.   And that's your writing, Carla Wilson notarizing it;
4    right?
5    A.   Yes, it is.
6    Q.   Okay.  So you're not sure whether the John M. McManus
7    is yours or perhaps another of your employees you had sign
8    it?
9    A.   I'm not sure.
10   Q.   Do you have a notary stamp of your own?
11   A.   Yes, I do.
12   Q.   How long have you had one?
13   A.   Fifteen years.
14   Q.   So it was in force during the entire time that you
15   were notarizing using Carla Wilson's stamp, Cindi
16   Peacock's stamp, and Ms. Mercer's stamp?
17   A.   Yes, it was.
18   Q.   Have you ever signed R. Gordan Sergeant's name?
19   A.   Yes, I have.
20   Q.   Did you have a stamp made to use with R. Gordan
21   Sergeant written on it?
22   A.   Yes, I did.
23   Q.   Did you ever tell anyone who worked for you that
24   R. Gordan Sergeant was not a real person, but just sort of
25   a trade name?
```

52

```
1    A.   No, I never did.
2    Q.   Did you ever suggest to them that your reason for
3    putting R. Gordan Sergeant on leases and other documents
4    was to avoid having tenants sue you?
5    A.   No, I did not.
6    Q.   Did you ever talk to -- did you ever say that to Lisa
7    Waggoner?
8    A.   No, I did not.
9    Q.   Did you ever tell Teri Sparks that -- in a sort of
10   winking way, if you will, that he's in Florida as if to
11   imply that he really didn't exist?
12   A.   I never did that.
13   Q.   Did you -- have you ever represented that the Home
14   Doctor is a third party, which is to say it's not you?
15   A.   I'm not sure what a third party is.
16   Q.   Okay.  Did you ever represent that the Home Doctor
17   was not you?
18   A.   No, I did not that I remember that, no.
19   Q.   I was just talking to you about your deposition
20   testimony.
21   A.   Yes, I did then.
22   Q.   You remember that now?
23   A.   Yes.
24   Q.   Have there been any other instances in which you've
25   represented that the Home Doctor was not you?
```

53

1   A.   I don't recall.

2   Q.   You agree with me in your deposition you were trying

3   to tell us that the Home Doctor was not you; right?

4   A.   No, I wasn't.

5   Q.   Are you sure about that?

6        THE COURT:  Mr. Nay, this is not an offer of

7   proof.  This is just your cross-examination.

8        MR. RILEY:  That is in the record already.

9        THE COURT:  All right.

10  Q.   The bat cave.  Have you ever denied knowing what the

11  bat cave is?

12  A.   I'm not really sure I know what the bat cave is.

13  Q.   You don't know what the bat cave is?

14  A.   I heard it yesterday.

15  Q.   You offered an exhibit with the bat cave on it,

16  didn't you?

17  A.   Yes.

18       MR. NAY:  May I approach, Your Honor?

19       THE COURT:  You may.

20  Q.   This is your Exhibit O; correct?

21  A.   Yes.

22  Q.   This is your handwriting; correct?

23  A.   Yes, it is.

24  Q.   You wrote the words bat cave on it, didn't you?

25  A.   Yes, I did.

54

1        THE COURT:  Mr. Nay, it's about four minutes to

2   12.  I have a 12 o'clock hearing, so I'm going to have to

3   take a break so I can do that.  I'm guessing it's going to

4   take maybe 20 minutes or so.  We'll reconvene up here at

5   12:30.

6        (Recess at 11:57 a.m., until 12:29 p.m.)

7        THE COURT:  Mr. Niell, if you'll resume your

8   place on the witness stand.

9        MR. NAY:  Your Honor, I think we're done with

10  his testimony at this point.  We're going to offer 246,

11  247, 248, and 249 into evidence.

12       THE COURT:  The Court will allow them.  The

13  Court's ruling remains the same; however, the exhibits

14  will be placed in the file for preserving any error on

15  appeal.

16       (Plaintiff's Exhibits 246, 247, 248, and

17        249 were offered and received in evidence

18        during the offer of proof.)

19       THE COURT:  Is there any other offers of proof

20  or similar items before we take up motions?

21       MR. RILEY:  Your Honor, just so it's clear, we

22  had marked Exhibit D, which was subject to the Motion In

23  Limine and I believe an offer of proof.  With respect to

24  the matters raised by that that would be encompassed by

25  the exhibit itself which the Court has, as well as the

55

1   correspondence setting forth proposed language from that

2   ruling which could have been given to the jury.  This is

3   the statement from the summary judgment brief, so I think

4   that for purposes of the Defendant's offer of proof, it

5   would be sufficient to incorporate the exhibit itself.  I

6   can provide the Court with a copy, although I believe we

7   delivered all of our exhibits, but if you want, I can

8   provide a marked copy and then we would also incorporate

9   the correspondence that was provided by our office to the

10  Court and the response by Plaintiff's counsel in terms of

11  if some language from that were to be given, what would be

12  the appropriate language to give.

13       THE COURT:  Well, the brief itself is part of

14  the docket file; however, I think in order to preserve the

15  record on -- record on appeal, it would need to be offered

16  as a separate exhibit as if you were offering it in front

17  of a jury.  Obviously, my ruling is that it's not

18  admissible, but it would be placed then in the file and

19  sent up with any appeal.

20       MR. RILEY:  Very well.  For purposes of our

21  offer of proof, we would offer Defendant's Exhibit D and

22  further state what is probably clear in the record, but if

23  not certainly our intent, which is that a portion of

24  paragraph 12 that -- relating to the position of American

25  Family that it had produced documents which did not

56

1   include the letters, which is the relevant portion of the

2   brief.  In other words, it was not our intent that the

3   entire brief be necessarily accepted or probative, but we

4   would offer as part of our offer of proof Exhibit D and we

5   would like to have it included with that.  And if it's

6   necessary to put in the written form, I'll have to get a

7   copy of it, but the correspondence that was provided by

8   both Plaintiff, Defendant, and then Plaintiff through

9   their counsel concerning what would be the appropriate

10  language from Exhibit D to be provided to the jury.

11       THE COURT:  Well, Exhibit D, which you've

12  provided the Court, will be kept by the Clerk of Court for

13  any possible appeal.  Will not be submitted to the jury.

14  To the extent you want to make any additional record as to

15  those portions of Exhibit D which you would have offered

16  if permitted, now is kind of the time to do that.

17       MR. RILEY:  And I apologize.  I'm not sure I

18  have my -- you know, I don't have my entire file on this,

19  Your Honor, because of the fact that -- I mean there's a

20  limit to what I wanted to haul down here, and so I don't

21  believe I included the correspondence and all the

22  pleadings.  I could probably get copies of that, because

23  for one thing, I have sort of my computer back in the

24  office in electronic form and get those generated, printed

25  off.

57

1      THE COURT: Let's take a 30 second break.  I
2  think I may be able to help you out.
3      MR. RILEY: I'm going to mark as Exhibit D-1 my
4  correspondence to the Court of December 27, 2007, which
5  was our suggestion of the particular language from the
6  order that we felt should be included or provided to the
7  jury.
8      THE COURT: Exhibit D-1 will be docketed by the
9  clerk and reserved for any possible appeal.
10         (Defendant's Exhibit D-1 was offered and
11          received in evidence during the offer of
12          proof.)
13      THE COURT: Any additional offers of proof?
14      MR. RILEY: Not from the Defendant.
15      MR. WOODWARD: None from Throlson.
16      THE COURT: Mr. Riley, did you have any motions
17  that you wanted to make?
18      MR. RILEY: Yes, Your Honor.  At this time, the
19  evidence having closed but pursuant to the agreement that
20  was made at the close of the Plaintiff's evidence, we
21  would move for a directed verdict on the claims asserted
22  by the Plaintiff in this litigation.  There are four
23  claims that have been asserted.  A breach of contract
24  claim, a fraudulent misrepresentation claim, a RICO claim,
25  and a claim of continuing conduct under Iowa Code

58

1  Chapter 706A.  And I would like to address them first with
2  respect to the RICO claim; then with respect to the
3  Chapter 706A claim, and then the fraud and breach of
4  contract claims.
5      First of all, with respect to the RICO claim, we
6  believe that taking all of the evidence at the close of
7  Plaintiff's evidence -- or at the close of all evidence in
8  the light most favorable to the Plaintiff, the Plaintiff
9  has failed to generate a jury question on all of the -- on
10  all of the elements that it needs to prove in connection
11  with a RICO claim, and including, but not limited to, the
12  failure to adequately prove the existence of an
13  enterprise; the failure to prove participation in the
14  enterprise by Niell; the failure to prove continuity, and
15  the failure to prove appropriate predicate acts.  We would
16  also state there is no evidence of damage, in as much as
17  the undisputed evidence shows that ultimately Mr. Niell
18  paid more in connection with the claims -- or in
19  connection with fixing roofs than he was paid by American
20  Family.
21      With respect to the Chapter 706A claim, we would
22  incorporate the argument we made with respect to the RICO
23  claims.  State that it is our belief and position that
24  Chapter 706A is based upon and derived from the federal
25  RICO statute and so all of the elements that would be

59

1  required for RICO are not missing and, in particular,
2  again, you know, continuity and I just want to make a
3  general observation.  This was a situation where we have a
4  discreet specific thing that was done here; submission of
5  claims over a period of just under a year.  I don't see
6  where there is -- since they all grew out of one loss
7  event, there is any basis to submit that there would be
8  the potential for any continuing similar conduct in the
9  future.
10      With respect to the fraudulent misrepresentation
11  claim, we move for directed verdict on the basis that the
12  Defendant has failed -- or the Plaintiff has failed to
13  prove evidence of all the elements required to prove, but
14  in particular we would say that there is insufficient
15  evidence of reasonable reliance in fact.  I think it is
16  clear from the testimony of Mr. Nau that he really did not
17  look at, nor particularly care what type of documentation
18  was submitted.  Further, we believe there is no evidence
19  of damages with respect to the matter of fraudulent
20  misrepresentation for the same grounds we noted earlier.
21  That is, that Mr. Niell ultimately spent more fixing the
22  roofs.
23      With respect to the contract claim, we believe
24  that the Plaintiff has failed to establish an evidentiary
25  basis to void the policies.  Further, in the event that

60

1  they have provided evidence to provide a basis for voiding
2  the policies, that there's insufficient evidence under the
3  policies as to the effect of the voiding or the time in
4  which the voiding would be effective.  Furthermore, we
5  believe that there is no basis to void the contract with
6  respect to the separate and discreet claim for actual cash
7  value which was -- or with respect to the costs associated
8  with adjusting that claim because those payments and those
9  costs would have been paid regardless of anything alleged
10  to have been done by the Defendant.
11      Finally, we believe that there is insufficient
12  evidence to submit the issue of punitive damages to the
13  jury.  But in any event, not in connection with any RICO
14  claim as it's our position that punitive damages are not
15  allowed under the RICO statute.
16      So for all of those reasons, we would move the
17  Court to direct a verdict on the claims of the Plaintiff.
18      THE COURT: Mr. May, do you wish to respond?
19      MR. MAY: Yes, Your Honor.  And I'm going to try
20  to be brief.  With regard to the RICO claim, we have
21  briefed that issue and made previous record on that issue
22  throughout this trial as to why we think all of those
23  elements -- the required elements are fulfilled.  And I'm
24  not sure what else to add to that, frankly.  We have a --
25  you know, at a minimum, a closed period of continuity of

61

1    at least a year and possibly going back several more
2    months than a year. Also, there -- as I mentioned before,
3    we assert the possibility of a more open-ended continuity
4    in light of the ongoing insurance fraud perpetrated by
5    Mr. Niell in this litigation.
6        With regard to the Iowa Continuing Criminal Act,
7    we've already briefed it. I don't want to bother you.
8    I'll just say I think you've agreed with me before that
9    the participation element is not an impediment or not a
10   required element.
11       With regard to the fraud, I mean we've -- if you
12   just read the stipulation, there's more than enough for
13   the judge to -- or for the jury to infer fraud, plus all
14   the other misrepresentations that we've gone over and
15   over, and with regard to justified reliance, whether Niell
16   was critical of John Nau of paying him and he said he
17   wasn't. That's really grounds for -- to eliminate that
18   issue in our favor.
19       With regard to the contracts, you know, Iowa law
20   is clear Mr. Niell -- that an insurance company can void
21   the policy when there's fraud by an insured and Mr. Niell
22   has admitted to violating that -- that -- the fraud
23   clause, if you will, and also the evidence of damages has
24   been presented that we've had lots of money flowing from
25   American Family to Mr. Niell that would not otherwise have

62

1    been paid; money to which he was not entitled to in 2001,
2    2002. So that more than covers the damages.
3        On the punitive damages, I'm just going to
4    withdraw the punitive damage question with regard to the
5    RICO because I found five district court cases and four of
6    them suggested they didn't want to go that way, so there's
7    no use to create that issue.
8        But with regard to all the other claims, I see
9    no impediment to punitive damages. This has been a scheme
10   to defraud that has been admitted and that creates a prima
11   facie case for punitive damages.
12       THE COURT: I need to grab my notes off of my
13   desk. It will take me 30 seconds.
14       First of all, the record should reflect that we
15   have had this discussion, I think, a couple of different
16   times and we've discussed the various elements. Well, let
17   me back up. Let me take the counts in order.
18       The contract case in -- viewing the evidence in
19   the light most favorable to the Plaintiff, the Court
20   believes there is sufficient evidence to submit the claim
21   to the jury.
22       Similarly, with respect to Count Two, fraudulent
23   misrepresentation, when viewing the evidence in the light
24   most favorable to the Plaintiff, the Court concludes that
25   that claim should be submitted to the jury.

63

1        Count Three is the RICO claim and Count Four is
2    the ongoing criminal conduct state claim based on
3    Chapter 706A of the Iowa Code. We've had several
4    discussions about these and, frankly, I've spent a fair
5    amount of time reading lots of cases on the subject. Also
6    some treatises on RICO. I won't prolong the record here
7    either. Frankly, if I'm wrong, the parties can, you know,
8    make their arguments in -- in St. Louis and what I have to
9    say here today isn't going to make much difference one way
10   or the other. You're probably more interested in the
11   bottom line.
12       I've concluded that neither the RICO claim nor
13   the ongoing criminal conduct claim should be submitted to
14   the jury. With respect to the RICO claim, there are
15   essentially four elements. The existence of an
16   enterprise, and in this case, Plaintiff claims that it is
17   the enterprise and I believe that -- that the Plaintiff
18   can be the enterprise. The Plaintiffs have cited a case
19   Aetna Casualty Surety Company v. B & P Autobody, 43 F.3d
20   1546 where the Defendants were essentially submitting
21   fraudulent claims regarding vehicle damage and being paid
22   by Aetna. In that case, the First Circuit said that the
23   insurance company plaintiff can be the enterprise.
24       The second element is that there has to be
25   conduct by the Defendant in association with the

64

1    enterprise, and the -- sort of the principal case in this
2    area is the United States Supreme Court case of Reves v.
3    Ernst & Young, 507 U.S. 170. And it indicated that there
4    has to be participation, which includes operation or
5    management of the enterprise. Obviously, Mr. Niell is not
6    an employee of this enterprise and, therefore, he would
7    have to be participating -- Well, strike that. The
8    statute says he must participate directly or indirectly in
9    the conduct of such enterprise's affairs, and in Reves v.
10   Ernst & Young, the Court interpreted the word conduct and
11   concluded that it must involve some sort of operation or
12   management.
13       In this case, the Court does not find that
14   Defendant engaged in the operation or management of
15   American Family. I know that the theory is that if he had
16   not made fraudulent claims, then American Family would not
17   have paid him, and in that way, he participated in the
18   operation of American Family. And Plaintiff cites the
19   Aetna Casualty case, which suggests that might not be a
20   bad argument. There is a distinction, however, with
21   respect to the facts in Aetna. In that case, there were
22   two adjusters of Aetna who were in on it that were
23   associated with the enterprise and were part of the
24   scheme. In this case, there's no indication that anyone
25   associated with the enterprise -- American Family -- was

65

1  in on the scene, and I think that's an important factual
2  distinction.
3        In addition, there are cases that have followed
4  Aetna which are critical of the First Circuit's view and I
5  would cite AllState Insurance Company v. Seigel, which is
6  312 F.Supp.2d 260.  It's a district court case out of the
7  District of Connecticut.  And there's a long analysis of
8  Aetna in there and in Reves and I won't go through it in
9  detail, but I will just sort of read one small section.
10  It says this.  "Moreover, the Court is concerned that the
11  First Circuit's construction of the operation and
12  management test might well read that test out of the act.
13  For under AllState's reading of P & B Autobody -- which
14  is the Aetna case -- any time the company is defrauded by
15  the conduct of a defendant, one could say that the
16  defendant "controlled" the company's operations, since
17  absent the fraud, the company would not have done what it
18  did or acted in the manner in which it did.  Such a
19  free-wheeling interpretation of the operation and
20  management test would appear to be inconsistent with
21  Reves, and as AllState's counsel essentially conceded at
22  oral argument, with the more rigorous approach to the
23  operation and management requirement that district courts
24  in the Second Circuit have adopted."
25        Well, similarly the Eighth Circuit has adopted a

66

1  more rigorous view than what the First Circuit described
2  in Aetna, and specifically the Eighth Circuit precedent
3  that I'm bound by is Bennett v. Berg, 710 F.2d 1361, which
4  the Supreme Court relied on or cited in the Reves case.
5  Another case that's critical of the Aetna case is
6  Arrandt -- A-r-r-a-n-d-t -- v. Steiner Corporation,
7  which is a Northern District of Illinois case.  It's not
8  reported, but it's found at 2001 WL 893887.  And again,
9  I'll read just a little bit of it.  It talks about the
10  Plaintiff relying on Aetna Casualty v. P & B Autobody and
11  it says, "Plaintiff relies on Aetna Casualty v. P & B
12  Autobody to argue that merely causing the enterprise to
13  pay fraudulent claims is sufficient to meet the Reves
14  "operation or management" test.  However, in Aetna, the
15  Reves test was not met merely because defendants (body
16  shop owners who intentionally inflicted damage to cars and
17  placed defective parts on them for appraisal) submitted
18  fraudulent claims to the plaintiff enterprise, Aetna
19  Casualty Surety Company, which Aetna paid.  Rather, in
20  order for Aetna to pay the false claims, there had to
21  first be an appraisal by Aetna appraisers, and, it was
22  defendants' actions in causing Aetna's appraisers to
23  approve false claims and conduct their appraisals in a
24  manner contrary to Aetna's business practices that enabled
25  defendants to exert control over a vital aspect of Aetna's

67

1  business-the appraising, investigating, process and paying
2  of insurance claims.  Indeed, the Aetna appraisers
3  "helped" the other defendants defraud Aetna and were also
4  defendants in the RICO action.  Thus, absent some
5  indication that Steiner had involvement in the direction
6  or control of Arrandt's business in a more material way
7  than just demanding payment by sending an invoice,
8  Arrandt's claim fails."
9        And then later in the decision, "To accept
10  Arrandt's reading would be to nullify the Reves test,
11  which specifically rejected the interpretation that
12  "almost any involvement in the affairs of an enterprise
13  would satisfy the conduct or participate requirement"."
14        So again, I am distinguishing Aetna on its
15  facts.  I also frankly am more sympathetic to those that
16  are more critical of Aetna and I believe under Bennett v.
17  Berg, which is a controlling Eighth Circuit precedent,
18  that the participation requirement has not been met here.
19        Just by way of parenthetical, I do think that
20  there's evidence which would support the finding of two or
21  more predicate acts, which is the third requirement.
22        The fourth requirement under the code is that
23  there has to be a pattern of racketeering and the cases
24  which interpret pattern require a continuity.  This is a
25  close ended period of time of approximately one year, as

68

1  Mr. Riley points out.  It all arises out of a single
2  event; the hailstore event.  There is a single victim in
3  this case.  The Court believes that the continuity or
4  pattern of racketeering requirement has not been met.  And
5  I'm relying in part on a Northern District of Iowa case
6  when Judge Melloy was a district court judge.  It's Walker
7  Manufacturing v. Hoffmann, 157 F.Supp.2d 1012, a 2001
8  case.  And in that case, he selects some of the cases that
9  talk about the continuity requirement.
10        With respect to the ongoing criminal conduct
11  claim, the Court isn't aided by any state appellate
12  decisions regarding that statute because they're only
13  relatively recently adopted in 1996 and to my knowledge,
14  there have been no state appellate decisions which have
15  interpreted the civil claim aspects of Chapter 706A.
16  There are criminal cases, however, I think that talk about
17  the fact that it's patterned after the federal RICO
18  statute.  706A.2 sets forth the kind of violations that
19  can give rise to a claim under this chapter.  Paragraph 1C
20  says that, "It is unlawful for any person to knowingly
21  conduct the affairs of any enterprise through specified
22  unlawful activity or to knowingly participate directly or
23  indirectly in any enterprise that the person knows is
24  being conducted through specified unlawful activity."
25  That's the participation provision, and as I've discussed,

69

1    I don't think that's been met.

2         However, there is another way -- in fact, there

3    are lots of different ways you can have a violation of

4    706. Paragraph 706A.2(4) talks about un -- acts of

5    specified unlawful activity and it says, "It is unlawful

6    for any person to commit specified unlawful activity as

7    defined in Section 706A.1," and 706A.1 is the definition

8    section and subparagraph 5 defines specified unlawful

9    activity and it says it means any act, including any

10   preparatory or completed offense committed for financial

11   gain or a continuing basis that is punishable as an

12   indictable offense in the lawsuit of the state in which it

13   occurred and under the laws of that state.

14        So there's a continuing basis requirement and

15   that's similar to the continuity requirement and,

16   therefore, because 706A is patterned after RICO, I'm

17   interpreting it the same way. So either under

18   706A.2(1)(c) or 706A.2(4), which in turn refers to -- to

19   706A.2(5), the Court believes that the participation

20   requirements and the continuing basis requirements

21   preclude Plaintiff's recovery under that chapter.

22        Therefore, Defendant's Motion for Directed

23   Verdict with respect to Counts Three and Four will be

24   sustained.

25        With respect to the punitive damages claim, the

---

71

1    either the -- for a privately owned motor vehicle under

2    the Businessowner's Package Policy or the commercial

3    blanket excess policy.

4         Second -- our second basis is that the evidence

5    in this case is that there has been no evidence that he

6    specifically asked Mr. Throlson to insure this vehicle

7    under either policy. Instead, the testimony that

8    Mr. Niell gave is that he asked to be fully insured, or

9    words to that effect. That type of claim falls under Iowa

10   state law under the Sandbulte v. Farm Bureau Mutual

11   Insurance Company, 343 N.W.2d 457 (1984).

12        And in that case, and the law in Iowa has long

13   held that that is more of a request for full coverage.

14   Gets into whether there's a different relationship with an

15   agent than the strict agent client. In fact, the

16   undisputed evidence in this case is that Mr. Throlson was

17   a captive agent with American Family. He was not an

18   independent insurance broker or the like who was required

19   to provide a different level of care.

20        Further, there's been no testimony, expert or

21   otherwise, as to any requirements on the part of

22   Mr. Throlson to provide "full coverage". I think

23   further, Your Honor, there's been no evidence in the

24   record -- and this ties in with that same argument of a

25   duty owed by Mr. Throlson. Again, it's these fully

---

70

1    Court believes that there is sufficient evidence to

2    generate a jury question on that issue and, therefore, the

3    Motion for Directed Verdict in that regard will be

4    denied.

5         Mr. Woodward, did you have any motions you

6    wanted to make?

7         MR. WOODWARD: Yes, Your Honor. Thank you.

8    Comes now Third-Party Defendant Bret Throlson and for his

9    Motion for Directed Verdict or Judgment as a Matter of

10   Law, we would move as follows: The Court in this case had

11   previously defined the claim -- the only possible viable

12   claim based upon an affidavit submitted in support of

13   summary judgment or resistance to summary judgment as a

14   request for service to insure a 1997 GMC pickup truck

15   under a Businessowner's Package Policy. I think through

16   the course of discussions and the trial, that might have

17   been expanded to also include this commercial excess --

18   commercial blanket excess policy, so we're not dealing

19   with a case of advice, knowledge, or error on the basis of

20   Mr. Throlson.

21        First -- or our first basis for Motion for

22   Directed Verdict is that insuring a vehicle under a BOPP

23   or a commercial excess policy is impossible. The

24   undisputed evidence is that neither policy would afford

25   any type of coverage. You can't purchase coverage for

---

72

1    insured and if that's the case, there's no evidence as to

2    that necessary relationship under Sandbulte, and further,

3    I believe that would require expert testimony under

4    Kruckenberg v. Abramsohn.

5         Finally, Your Honor, our last basis for our

6    directed verdict motion is that there's been no

7    substantial evidence regarding the reasonableness of the

8    damages which the Plaintiff claims. The Plaintiff's

9    testimony about medical expenses or the lack is not

10   sufficient to raise a jury issue as to his damages he

11   claims. The Plaintiff has the burden of proof, and as the

12   Court noted during one of our sidebars, essentially we

13   could be trying this whole case here to determine

14   reasonableness. There's no stipulation regarding that.

15   The Plaintiff has totally failed to introduce any evidence

16   as to the reasonableness of the settlement he undertook,

17   and for those reasons, we believe that Mr. Throlson is

18   entitled to Judgment as a Matter of Law as to the claim of

19   agent negligence.

20        THE COURT: Mr. Riley?

21        MR. RILEY: Thank you, Your Honor. The

22   Defendant, by way of resistance to the Third-Party

23   Defendant's Motion for Directed Verdict, would say, first

24   of all, that the evidence does establish that Mr. Niell

25   requested insurance. Secondly, I believe Mr. Throlson

73

1 acknowledged that Mr. Niell requested that he have all
2 potential risks, not just the building risks, covered.
3 And thirdly, it is clear that Mr. Throlson believed and
4 assumed until January of 2004 that there was coverage. So
5 in a broad view, that is really dispositive of the
6 sufficiency of the negligence claim. That is a request
7 for insurance, which is to some substantial degree
8 corroborated by admissions of the insurance agent. The
9 fact that the policy under its terms would not provide
10 coverage would not -- would not provide a defense to the
11 failure to provide the coverage that is there. The fact
12 that he is a captive agent does not seem to preclude his
13 ability to procure the necessary insurance and I believe
14 that this is not an area where the need for expert
15 testimony is present.
16         Finally, as to the reasonableness of the
17 settlement, the Court's comment that you could retry the
18 underlying case is true. Either side have. The
19 question is, is there sufficient evidence for the trier of
20 fact to determine that the settlement was reasonable?
21 There's evidence -- Well, first of all, it was a case of
22 absolute liability. There was a case of substantial
23 medical expenses. There was an eminent trial date of
24 concern with the defense that was provided, and so for all
25 of these reasons, I think there's a substantial basis to

75

1 instructions that I have added language or included
2 language in my instructions that specifically indicates
3 that the issue here is not whether or not he --
4 Mr. Throlson -- gave appropriate advice, but rather
5 whether Mr. Niell instructed Mr. Throlson to do a
6 particular thing and Mr. Throlson negligently failed to do
7 that thing, which is the way I understand the issue.
8         With respect to the relative paucity of evidence
9 on the issue of damages, it's true that I was a little
10 surprised, frankly, by the fact that neither party really
11 offered much evidence on that subject. I mean
12 theoretically, either party could have offered evidence as
13 to the extent of Tendrick's injuries or the medical bills
14 or anything else. I think, in fact, either party could
15 have called expert testimony probably to testify as to the
16 recentness of a particular settlement based on additional
17 factors, but no one did that. I think, however, that just
18 goes to, you know, the weight of the evidence. The
19 parties can argue how good the evidence is and the jury
20 can weigh that in determining, if they get to the issue of
21 damages, how much they should award.
22         I would note that presumably Mr. Niell, when
23 he's paying for it out of his own pocket, doesn't have
24 incentive to pay more than he thought was reasonable, so
25 there's some evidence or some inference that he must have

74

1 -- or there's substantial evidence far more than mere
2 sufficiency to provide a basis for reasonableness in
3 Mr. Niell's actions in settling the claim.
4         THE COURT: The issue of whether or not an
5 expert witness is required was addressed by the Court in
6 the Motion for Summary Judgment. The Plaintiff's claim
7 alleged that Mr. Throlson was negligent in providing
8 appropriate services and advice. And as I indicated in my
9 ruling, in order to find an agent negligent for giving
10 appropriate advice, you would need an expert to testify as
11 to what kind of advice an agent is supposed to give.
12 However, I did indicate that with respect to services --
13 incidentally, that's essentially what the Kruckenberg case
14 says, but also it specifically says -- and I'm
15 quoting -- "This is not a case in which the agent failed
16 to procure coverage requested by the client."
17         That's the case we have here, at least if one
18 believes the Third-Party Plaintiff. Mr. Niell claims that
19 he essentially instructed Mr. Throlson to procure certain
20 insurance and that Mr. Throlson failed to do so. When
21 viewing the evidence in the light most favorable to the
22 Third-Party Plaintiff, the Court believes that the
23 evidence is sufficient to generate a jury question in that
24 regard.
25         I would indicate, however, you'll see in my

76

1 thought that was a reasonable settlement or otherwise he
2 wouldn't have paid it.
3         In any event, the motion to direct a verdict on
4 the third-party claim is denied.
5         Any record that the Plaintiffs want to make?
6         MR. MAY: Yes, Your Honor. The Plaintiff would
7 like to move for Judgment as a Matter of Law and I'll say
8 it like Mr. Woodward and/or directed verdict. We believe
9 we're entitled to Judgment on Count One. Mr. Niell has
10 admitted violation of the fraud clause. And on top of
11 all the facts and the stipulations create more than a
12 prima facie case. It, in fact, forecloses him from
13 debating whether or not the entire policy is void because
14 of his willful concealment and misrepresentation. I do
15 understand that there is this claim of sort of an
16 anticipatory breach. It kind of reminds me, Judge, of the
17 farmers that I once represented back in state court who
18 tried to make a similar claim in -- I think it was the FS
19 case -- where summary judgment was granted in favor of
20 Fred Mansfield's client.
21         THE COURT: That was before me.
22         MR. MAY: Yeah. Back before you for Fred
23 Mansfield against my farmers and we had tried to -- to put
24 together a they breached first argument and the Court
25 didn't think there was evidence of it.

77

1  THE COURT: I think I got affirmed on appeal.
2  MR. MAY: You got affirmed on appeal, Judge.
3  MR. PROCTOR: You should be proud of that,
4  Judge.
5  MR. MAY: You wonder why I remember it. And
6  it's the same thing. What Mr. Niell is trying to say --
7  No. 1, I don't think I've ever heard him specifically say
8  that.
9  THE COURT: Let me see if I can short cut this a
10  little bit. I -- I have considered what you refer to as
11  the anticipatory breach claim and -- and I don't think it
12  has merit either. I -- I don't think it constitutes a defense
13  to the breach of contract claim, Count One, for five
14  reasons. One, is that I don't think it is a breach of
15  contract. As I understand it, the theory -- and I guess,
16  Mr. Riley, you can correct me here if I've got your theory
17  wrong, but as I understand the theory, it's that the
18  breach of contract by American Family is the providing of
19  erroneous information. I don't believe -- even if that's
20  true -- that that would be a breach of contract. A breach
21  of contract is failure to perform some aspect of the
22  agreement. And, therefore, if, for example, Mr. Niell had
23  submitted a claim and American Family had said, "We're not
24  paying it because there's a one year limitation," that
25  would be a breach of contract. But merely giving

78

1  erroneous information -- assuming it was done -- I don't
2  believe constitutes breach of contract.
3  No. 2, this -- the -- this so-called
4  anticipatory breach or whatever you want to term it was
5  not pled in this case.
6  No. 3, it was not identified in the final
7  pretrial order as an issue to be presented by the
8  parties.
9  No. 4, it was not included in the requested
10  instructions as an issue which upon which the jury would
11  be instructed.
12  And No. 5, even if you assume that it is a
13  breach of contract to give erroneous information and that
14  it had been properly pled and that it was identified as an
15  issue and it was included in the requested instructions as
16  a matter of law, the remedy is not to submit fraudulent
17  claims. In other words, if American Family breached the
18  contract by giving erroneous information, then the
19  Defendant's remedy is to declare the contract void or to,
20  you know, sue on the breach somehow or do something, but I
21  conclude as a matter of law that when one side breaches
22  the contract, your remedy is not to submit fraudulent
23  claims.
24  So you'll see when you get my instructions that
25  I have not instructed that the provision of erroneous

79

1  information would somehow be a defense to the breach of
2  contract claim. It is relevant to the fraudulent
3  misrepresentation claim in my view because I think it goes
4  to Defendant's intent. If he was told that he had one
5  year or if he otherwise believed that for whatever
6  reasons, then it goes to whether or not he had an intent
7  to deceive, or at least that's what I've concluded in my
8  pretrial rulings. So that won't be part of the breach of
9  contract claim.
10  Having said that, however, and I guess I haven't
11  really allowed you to finish your record with respect to
12  the motion, but I don't think that automatically entitles
13  you to directed verdict on the contract claim. Well, let
14  me -- I guess I might as well tell you what my draft of
15  the instructions says because you're going to see them in
16  few minutes anyway.
17  There are four elements of the breach of
18  contract. Existence of the contract, the terms, the
19  breach, and the damages. You'll see that I've told the
20  jury that the first and third elements have been
21  established as a matter of law. That there's no question
22  there were contracts in effect. The policies here are
23  undisputed. The third element is the breach, and I've
24  concluded that as a matter of law, there was a breach.
25  It's undisputed that the Defendant submitted false

80

1  documents and that's a direct breach of paragraph ten.
2  I didn't tell the jury that the second element,
3  the terms, are established or the damages because of the
4  issue of what does it mean when the contract is void. The
5  jury is going to have to decide what the effect of that
6  language is, because it's not explicit in the contract as
7  to whether that's void ab initio or at the time of the
8  loss or at some other time and they can apply a -- based
9  on the instructions, a reasonable interpretation. They
10  can rely on testimony. I know Ms. DeLanoit said that
11  that's the standard in the industry. They can apply their
12  common sense. They can look at the rest of the policy.
13  There's all those factors that are listed in the
14  instructions and then essentially they'll decide whether
15  or not, in fact, that means void at the time of the loss
16  or something else. And the parties are free, I guess, to
17  argue that issue.
18  Go ahead and finish your record on that,
19  Mr. May, now that you know my ruling.
20  MR. MAY: Move it that my record precede the
21  ruling. There's one thing -- and I understand -- I
22  guess I will make some record. Number one, I think we
23  ought to have a legal debate about the meaning of this
24  contractual language. I think that one of the reasons
25  that insurance cases get resolved on summary judgment so

PAGE 81 SHEET 21

81

1  often is because when you have undisputed facts -- and I
2  have never heard -- I mean I'm pretty new at this still,
3  but I've never seen a stipulation with so many undisputed
4  facts among the parties. It seems like to me that that
5  would be something that we could -- you know, that that
6  would be more of an issue for the Court than for the
7  jury.
8          The second issue I guess I would raise is -- is
9  that I would ask the Court to, as a matter of law, say
10 that the entire policy is void; even if you're going to
11 submit to the jury the issue of when, if you will, because
12 that is exactly what the policy says. And there's no
13 ambiguity on that part of it.
14         THE COURT: Did you have any record on the -- is
15 that your record on -- you're not asking for directed
16 verdict on fraudulent misrepresentation?
17         MR. MAY: Your Honor, I'm going to move and this
18 is why; because as it was in the paper. I mean he
19 admitted that he had to trick American Family and there's
20 just no reasonable juror who could say he didn't have an
21 intent to deceive it. It doesn't matter what he thought
22 about one year limitations. That's an intent to deceive
23 and he admitted it. And the justified reliance, like I
24 said, he also admitted that he has no complaint about what
25 John Mau did. So there's my motion.

PAGE 82

82

1          THE COURT: Mr. Riley, you want to make any
2  record?
3          MR. RILEY: Well, he didn't have any complaint
4  with what Mr. Mau did because Mr. Mau paid the claims as
5  they were submitted. But the point is if you get -- I
6  think there is an issue -- a factual issue as to
7  reasonable reliance based on Mau's testimony, but I think
8  there's a factual issue on intent to deceive when you take
9  the testimony of Mr. Niell as a whole, including what he
10 said as to his reasons for doing all of this, so I do
11 think there are factual issues on both of those elements.
12         THE COURT: In viewing the evidence in the light
13 most favorable to the Defendant, the Court concludes that
14 there is a genuine issue of material fact regarding the
15 fraudulent misrepresentation claim and, therefore, that
16 will be submitted to the jury.
17         With respect to the more narrow issue on the
18 contract claim, I'll have to think about the
19 instructions -- and I guess we're going to get to the
20 instructions here in a second -- as to whether or not the
21 jury would be more specifically told. Frankly, initially,
22 I was inclined to instruct the jury that the first three
23 elements of the breach of contract claim had been
24 established except for the damages. But I was sort of
25 pursuaded by some of the questioning Mr. Riley did on what

PAGE 83

83

1  does it really mean to -- to void it and that's why I left
2  the terms of the policy still in there. But I also agree
3  with Mr. May that as a matter of law, the policy was
4  voided. It's just a question of how do you interpret the
5  terms of the policy as to when, and I don't know if it's
6  necessary for me to make that any more explicit in the
7  instructions or not, but I'll think about it.
8          In any event, the Motion for Directed Verdict or
9  motion for Judgment on the pleadings is denied.
10         Any additional record that anyone cares to make
11 on any of the motions before we get to the issue of
12 instructions?
13         MR. MAY: I don't think so, Your Honor.
14         MR. RILEY: No, Your Honor.
15         MR. WOODWARD: Motion to reconsider.
16         THE COURT: You see that on TV. They always lay
17 it on the table. I don't know what that means.
18         The record should reflect that I'm going to give
19 counsel at this time my draft of the final jury
20 instructions. What I do is provide the draft of the
21 instructions to counsel; give you an adequate opportunity
22 to review those instructions, and then once you've had a
23 chance to look through them, then we'll get back together
24 and have an instructions conference off the record where
25 we can talk, you know, more freely and have kind of a give

PAGE 84

84

1  and take. And at that time you can point out any obvious
2  omissions that I have or any typographical errors or that
3  type of thing and you can also argue with me or we can
4  discuss the substance of the instructions as well.
5          Following that conference, then I make some sort
6  of final decisions on what I think the instructions ought
7  to look like and I put them in final form and then I'll
8  provide them to you a second time, and then at that time,
9  we'll go back on the record and you'll make your formal
10 objections and exceptions.
11         Any questions about any of that?
12         MR. MAY: When would you like us back?
13         THE COURT: How long do you want to take? Well,
14 let's do this. I'll give you the instructions now. When
15 each of you are ready, let Lindsey or Karo know and then
16 when everybody is ready, we'll get back at it. I'm hoping
17 it won't take long. Yeah, I think when you look at them,
18 you know, half of them are -- are uniform Eighth Circuit
19 instructions on basic stuff. What you'll see is three
20 marshaling instructions on the three claims that are going
21 to go to the jury and then a few supporting instructions,
22 so there's really only ten instructions you have to really
23 study.
24         All right. That will conclude the record.
25         (Recess at 1:25 p.m., until 2:14 p.m.)

85

1       (Jury instructions were discussed off the
2     record at this time.)
3       (In open court, outside the presence of the
4     jury.)
5       THE COURT:  Let the record reflect that we're in
6   the courtroom and outside the presence of the jury.  All
7   counsel are present.  The Court has provided counsel with
8   its final jury instructions.  Counsel have indicated that
9   they've had an adequate opportunity to review those final
10  jury instructions and are now prepared to take their
11  objections and exceptions.
12      Mr. Proctor or Mr. May?
13      MR. MAY:  Your Honor, I'm going to make our
14  objections as such as they are in this format.  That we
15  don't have any objections except that we do think the
16  Court should instruct in our favor on all elements of
17  Count One and Count Two; just in -- consistent with our
18  Judgment as a Matter of Law.  And I know what the Court's
19  ruling is on that.  Just making that clear.  And that's
20  the only real objection.
21      I just want to make some record for the future
22  that we would also like to have the Court enter a
23  declaratory judgment with regard to the voiding of the
24  contracts, but that's really separate from this issue of
25  these particular papers.  I just wanted to put that on the

86

1   record.  Otherwise, we're fine.
2       THE COURT:  So as I understand it, the only
3   objection is to the Court's submission of Counts One and
4   Two to the jury rather than directing a verdict.  And for
5   the reasons previously stated, the Court finds that
6   objection should be denied.
7       MR. MAY:  That's correct, Your Honor.
8       THE COURT:  Mr. Riley?
9       MR. RILEY:  Yes.  By way of exceptions and
10  objections to the Court's instructions, we would first
11  incorporate our Motion for Directed Verdict made at the
12  close of all the evidence and considered as made at the
13  close of the Plaintiff's evidence and incorporate that
14  herein and state that we, therefore, would object to the
15  submission on any issue where the Court failed to sustain
16  our Motion for Directed Verdict.
17      We would also object to that portion of the
18  final Instruction No. 6 regarding measure of damages on
19  the grounds that it fails to give the jury the opportunity
20  to consider the issue of when the policy was voided and
21  the consequence of that.  That would be the extent of the
22  Plaintiff's exceptions to the Court's instructions -- or
23  Defendant's exceptions to the Court's instructions.
24      THE COURT:  With respect to the directed verdict
25  objection, for all the reasons the Court previously

87

1   indicated on the record, that objection is denied.
2       With respect to Instruction No. 6, that portion
3   of the instruction that deals with damages, which is at
4   the bottom of the first page; it starts regarding Element
5   No. 4 of Instruction No. 5.  This was the requested
6   instruction by Plaintiff.  The Court did not receive a
7   requested instruction by Defendant and, in fact, it wasn't
8   known to me and my impression is it wasn't known to
9   Plaintiff until yesterday during the questioning that the
10  Defendant had some theory as to a measure of damages that
11  was different than what the Plaintiff was proposing.
12  There was no reference to it in Defendant's trial brief;
13  nor was there a reference in the final pretrial order that
14  identified issues; nor was there any instruction
15  submitted.
16      However, I did give Defendant today an
17  opportunity to submit a requested instruction in that
18  regard.  The one that was provided -- and I'll just read
19  it here -- says, "Regarding Element No. 4 of Instruction
20  No. blank, the measure of damage is the amount of all
21  payments made by American Family after the date the
22  policies were voided, reduced by the amount of any premium
23  paid by Niell for the policies after the date the policies
24  were voided."
25      The Court believes that that instruction could

88

1   allow the jury to find that the policies were voided on
2   the date that American Family notified Niell that the
3   policies were voided, which, of course, would eliminate
4   any damage, which I think would be contrary to law and,
5   therefore, the Court is not inclined to submit that
6   instruction.
7       Therefore, the Court will submit the instruction
8   as written and the objection is denied.
9       MR. RILEY:  Excuse me, Your Honor.  Just so the
10  record is clear, as part of our objection, I think we
11  would have wanted the Court to submit the instruction that
12  the Court just read and I wanted to make sure that our
13  objection encompasses that.
14      THE COURT:  Yes.  I understood you were making
15  that requested instruction at this time and as I've
16  indicated, that request is denied.
17      Mr. Woodward?
18      MR. WOODWARD:  Thank you, Your Honor.
19  Third-party Defendant Throlson, for his objections and
20  exceptions, we would object to the submission of
21  Instruction No. 10 for the reason set forth in our Motion
22  for Directed Verdict, and additionally, the verdict form
23  beginning at question eight for the same reasons.
24      And for our exceptions, we would take exception
25  that the Court has declined to submit Iowa Civil Jury

89

1  Instruction 100.15 particularly setting forth that
2  Mr. Niell made statements under oath before trial and
3  during trial which were inconsistent and that the jury
4  could use that as a basis to disregard any and all of his
5  testimony, should they so desire.
6          THE COURT: With respect to the first objection,
7  the submission of the negligence claim, essentially with
8  the relating special verdict form, for the reasons stated
9  by the Court when discussing the directed -- the Motion
10  for Directed Verdict, the Court finds that objection
11  should be denied.
12          With respect to the second objection and the
13  Court's failure to include Iowa Uniform Jury Instruction
14  100.15, which -- and I'm paraphrasing here because I don't
15  have it in front of me, but essentially tells the jury if
16  they find that the other party made some statements prior
17  to trial which were inconsistent with statements they made
18  at the time of the trial, they can, but are not required,
19  to disregard the witness' statements made at the time of
20  the trial. The Court believes that that instruction is
21  adequately covered by Instruction No. 3, which says in the
22  first paragraph that you may believe all of what a witness
23  said or only part of it or none of it. And then in
24  paragraph two, it lists the factors which the jury may
25  consider and included in that, one of the factors is

90

1  whether a witness said something different at an earlier
2  time.
3          So counsel is certainly free to refer to the
4  instruction and argue to the jury that the Defendant or
5  any other witness said something at an earlier time which
6  was different and, therefore, you should disregard their
7  testimony. Therefore, that objection will be denied.
8          So all of the objections and exceptions made by
9  counsel are denied. The jury instructions will be
10  submitted as drafted.
11          Any additional record we need to make?
12          MR. PROCTOR: No.
13          MR. RILEY: Yes, Your Honor. Just so the Court
14  understands, I don't know if you saw this, but I had
15  indicated that I might prepare an instruction on the
16  definition of Section -- I think it's 6672, which is the
17  taxing and, in fact, prepared one and it was e-mailed.
18  But in view of the fact that Mr. Niell was able to give
19  testimony as to what taxing meant, such an instruction
20  would not be necessary. But I thought I would mention it
21  because the record would now, I believe, reflect that that
22  instruction -- a proposal of that instruction was
23  electronically filed sometime earlier this afternoon but
24  we're not requesting it at this time.
25          THE COURT: I haven't seen it, but in any event,

91

1  the record is that it's being withdrawn?
2          MR. RILEY: Yes.
3          THE COURT: Any additional record, Mr. Proctor
4  or Mr. May?
5          MR. PROCTOR: No, sir.
6          MR. MAY: No, sir.
7          THE COURT: Mr. Woodward?
8          MR. WOODWARD: No, sir.
9          THE COURT: We're going to begin with closing
10  arguments at 9 a.m. on Monday. Pursuant to the local
11  rule, each party will be given up to one hour. The
12  Plaintiff is required to allocate that between its opening
13  argument and rebuttal argument.
14          MR. MAY: Your Honor, just to be clear, do I
15  have to -- you know, with the Iowa Supreme Court, you
16  always have to say how much you want to reserve or can I
17  just go for 18 minutes or 32 minutes and then we keep the
18  rest?
19          THE COURT: I'll keep track of when you start
20  and when you stop and --
21          MR. MAY: Ten-four.
22          THE COURT: -- so if you end up going longer,
23  whatever you do is up to you, but obviously if you go the
24  whole time, you won't have a rebuttal.
25          MR. WOODWARD: Is he going to get to rebut me

92

1  too?
2          THE COURT: I hadn't thought about that, but I
3  suppose that's right, because he has the burden of proof
4  in that regard. You know, theoretically, I don't know if
5  you're able to separate out your arguments, but
6  theoretically, I think you would be entitled to an hour's
7  argument on -- and I'm talking, of course, to Mr. Riley
8  here for purposes of the record on the Plaintiff's claim
9  and then you would be able to for additional argument on
10  the other claim, because otherwise you are potentially
11  facing two hours of argument and you only have one hour to
12  respond to that.
13          MR. RILEY: Well, with respect to that, and I
14  think that the -- first of all, let's talk about the
15  order. Then we'll talk about the duration. I would think
16  that the appropriate order would be Plaintiff, Defendant,
17  Third-party Defendant, Defendant's reply to the
18  Third-party Defendant, and then American Family is the
19  Plaintiff getting the last word. I would say that that
20  would probably be the appropriate order.
21          MR. WOODWARD: And your scope is limited to
22  rebutting me?
23          MR. RILEY: Right. And, of course, since they
24  will not have -- since American Family would not have said
25  anything since it was just me, then you, then me, there

93

1   wouldn't be any reason to.

2       In terms of the duration, I -- I -- I guess I

3   would reserve the right if I really feel that I'm in --

4   that I need that time.  It's a rare case that you need an

5   hour's argument.  I just --

6       THE COURT:  Particularly, I can't believe that

7   the issue on this motor vehicle accident is going to take

8   an hour, because either they believe that Miell talked to

9   Throlson about this specifically and Throlson just dropped

10  the ball or they think Miell is making it up and -- and

11  then in addition, I suppose there will be some argument

12  maybe on the damages, but I would hope that neither one of

13  you take an hour talking about that case, frankly.

14      MR. WOODWARD:  Well, I can tell you I'm not

15  going to take an hour, Judge.

16      THE COURT:  And really even the other case, to

17  some extent, the facts are not hugely in dispute.  There's

18  some dispute as to who told what to whom and when, but you

19  know, you have up to an hour.  Don't feel like you have to

20  take the whole thing.  But as I understand it, the parties

21  generally agree that Plaintiff goes first to argue its

22  case.  Mr. Riley will then argue in response to that and

23  will also make an argument in support of his third-party

24  claim.  Mr. Woodward will then get up and will argue in

25  favor of Third-Party Defendant.  Then Mr. Riley will have

94

1   an opportunity to respond only to Mr. Woodward's motor

2   vehicle accident issues.  And then Mr. May or Mr. Proctor

3   gets the last word.  Does that sound about right?

4       MR. PROCTOR:  Sounds fair to me.

5       MR. MAY:  Sounds fair.

6       THE COURT:  We'll go on the theory that

7   Mr. Riley can get it done in an hour and if Mr. May or

8   Mr. Proctor looks like they're going to take their full

9   time and it turns out you really needed that hour to

10  respond to that and need additional time to look at the

11  motor vehicle thing, I'll be flexible in that regard,

12  because I think it is sort of two separate things, to some

13  extent.

14      MR. RILEY:  That's fine.

15      THE COURT:  Anything else we need to talk about

16  then?

17      MR. PROCTOR:  I would like one question, but not

18  on the record.

19      THE COURT:  That will conclude the record.

20          (This concludes the requested, excerpted

21          portion of the record.)

22

23

24

25

95

1

2

3

4

5                 C E R T I F I C A T E

6

7       I, Kay C. Carr, a Certified Shorthand Reporter of the
State of Iowa, do hereby certify that I acted as the

8   official court reporter at the proceedings in the
above-entitled matter at the time and place indicated.

9

10      That I reported in shorthand all of the proceedings
had at the said time and place and that said shorthand

11  notes were reduced to print by means of a computer-aided
transcription device under my direction and supervision,

12  and that the foregoing typewritten pages are a full and
complete transcript of the shorthand notes so taken.

13      I further certify that I am not related to or
employed by any of the parties to this proceeding, and

14  further that I am not a relative or employee of any
attorney of counsel employed by the parties hereto or

15  financially interested in the action.

16      IN WITNESS WHEREOF, I have set my hand this 1st day
of February, 2008.

17

18

19

20          Kay C. Carr
            Certified Shorthand Reporter

21          Registered Professional Reporter
            Cedar Rapids, Iowa

22          (319) 362-1543

23

24

25

## $

$10 49:13
$100,000 32:22
$25,000 32:3

## &

& 2:11 63:19 64:3,10 65:13 66:10, 11

## '

'01 25:1
'02 25:1

## 0

04-CV-142 1:6

## 1

1 14:20 77:7
10 30:25 31:1 41:3 88:21
100:15 89:1,14
1012 68:7
1099 13:16 14:10 15:2,15,17 27:12
1099s 14:18 15:11
11 37:6
11,784 32:21
11:57 54:6
11th 1:19
12 54:2,2 55:24
12:29 54:6
12:30 54:5
1361 66:3
145 23:25
15 35:17,24 36:2
1546 63:20
157 68:7
170 64:3
18 91:17
19 37:10
1984 71:11
1986 68:13
1997 70:14
1999 50:17
1:25 84:25
1C 68:19
1st 95:16

## 2

2 4:11 14:21 78:3
20 35:17 36:2 54:4
2000 24:23 51:1,1
2000s 6:12
2001 8:20 30:25 31:1 41:3 62:1
66:8 68:7
2002 6:20 21:13 62:2
2003 6:20
2004 24:23 32:16 73:4
2007 57:4
2008 4:11
207 32:10
22,000 32:17
246 47:6 54:10,16
247 48:9 54:11,16
248 50:21 54:11,16
249 49:8 50:17 54:11,17
260 65:6
27 57:4
2746 2:12
2:14 84:25
2:30 35:8,11
2:45 35:16

## 3

3 13:9 15:22 78:6 89:21
30 47:13 57:1 62:13
312 65:6
319 1:25
32 91:17
343 71:11
362-1543 1:25
3700 2:5

## 4

4 15:23 78:9 87:5,19
403 22:24
404(b 4:8 10:7 22:24 23:16 24:1,8
26:20 28:2
4040 2:8

## 43
43 63:19
457 71:11
4:30 34:2,2

## 5

5 69:8 78:12 87:5
507 64:3
52809-2746 2:12

## 6

6 16:21 86:18 87:2
6672 90:16

## 7

708 69:4
706A 58:1,3,21,24 63:3 68:15 69:16
706A.1 69:7,7
706A.2 68:18
706A.2(1)(c 69:18
706A.4 69:4,18
706A.2,5 69:19
710 66:3

## 8

801 2:5
85,000 32:16
893807 66:8

## 9

9 91:10
998 2:8
9th 1:19

## A

A-n-d-r-e-a 43:9
A-r-r-a-n-d-t 66:6
a.m 54:6 91:10
a/k/a 49:14
ab 80:7
abandon 8:10
ability 73:13
able 12:6 14:8 26:13 34:25 46:22
57:2 90:18 92:5,9
about 5:24 6:9,11,19,19 7:9,16 10:6,8 12:15,24 13:13 14:13,14 15:5 16:12,12,14,18,23 17:4,7 18:9,15 21:5,20 22:1 24:23 25:14,17,23,24 28:3,10,11 30:4,20 31:22 32:1,17, 22 33:19 39:7,10,13,15,16 40:8, 9 41:13,17,24 42:6 44:20 46:25 50:7,12 52:19 53:5 54:1 63:4 66:9 68:9,16 69:4 72:9 80:23 81:22,24 82:18 83:7 84:11 92:2,14,15 93:9, 13 94:3,15
above 4:13
Abramsohn 72:4
absent 18:22 65:17 67:4
absolute 73:22
absolutely 34:10
accept 67:9
accepted 56:3
accident 93:7 94:2
accuracy 33:2
accurate 15:12,18
accuse 19:5
acknowledged 73:1
acquaintance 45:4
Act 61:6 65:12 69:9
acted 65:18
action 67:4 95:15
actions 66:22 74:3
activities 5:4,15
activity 68:22,24 69:5,6,9
acts 4:15,16,25,25 58:15 67:21
69:4
actual 32:16 60:6
actually 17:21 26:15 35:7 37:10
add 60:24
added 75:1
addition 31:15 65:3 93:11
additional 10:25 15:6 26:14 56:14
57:13 75:16 83:10 90:11 91:3 92:9
94:10
additionally 88:22
address 4:8 9:16 24:1 33:8 34:21
38:22 49:20 50:15 58:1
addressed 74:5
adequate 83:21 85:9
adequately 29:5 58:12 89:21

adjusted 13:4
adjusters 64:22
adjusting 30:8 31:9,16 32:14 60:8
adjustment 32:12,13,21 33:11
admissible 4:22 5:1,13,20 11:10
12:4,8 14:2 15:11 25:10 26:25 27:7,9,10,13 55:18
admission 19:12
admissions 12:9 23:6,20,24 73:8
admit 11:21 12:1,9,12
admits 15:16
admitted 9:18 61:22 62:10 76:10
81:19,23,24
adopted 65:24,25 68:13
Advanced 46:17
advantage 27:4
advice 29:9 70:19 74:8,10,11 75:4
Aetna 63:19,22 64:19,21,22 65:4,
8,14 66:2,5,10,11,14,18,19,20,21
67:2,3,14,16
Aetna's 66:22,24,25
affairs 64:9 67:12 68:21
affidavit 47:8 70:12
affirmed 77:1,2
afford 70:24
after 22:23 31:1 35:10 68:17 69:
16 87:21,23
afternoon 90:23
again 9:15 10:17,21 16:15,22 21:
22 25:10 34:8 49:12,19 59:2 66:8
67:14 71:25
against 37:3 76:23
AGENCY 1:13
agent 71:15,15,17 72:19 73:8,12
74:9,11,15
ago 39:18
agree 14:19 26:8,16 31:20 53:2
83:2 93:21
agreed 30:9 61:8
agreement 15:9 26:13 57:19 77:22
ahead 13:1 46:20 80:18
aided 68:11
allegation 8:6
allegations 7:23
alleged 10:11 37:3 60:9 74:7
allocate 91:12
allow 5:17 24:8 38:7 41:21 42:3,3,
16 54:12 88:1
allowed 8:16 41:21,22 42:18 60:
15 79:11
AllState 65:5
AllState's 65:13,21
almost 67:12
already 13:11,12,13 23:24 27:9
53:8 61:7
alter 27:3
alteration 21:1
altered 23:14
altering 22:18 23:3
although 9:15 25:5 55:6
always 29:4,8 83:16 91:16
ambiguity 81:12
American 4:13 21:8 28:4 30:11,15
55:24 58:19 61:25 64:15,16,18,25
71:17 77:18,23 78:17 81:19 87:21
88:2 92:18,24
among 81:4
amount 30:10 33:17 63:5 87:20,
22
amounts 30:15,17,20 31:8,9,15
32:22
analysis 12:2,3 22:24,25 24:6,15
65:7
and/or 76:8
Andrea 43:7 48:19
angle 48:7
animals 17:2,9,12,12,15,16,20 18:
18
another 5:9 11:12 18:21 21:19 27:
25 51:7 66:5 69:2
answer 9:10 15:4 26:15 37:20,25
anticipated 4:20 11:15
anticipatory 76:16 77:11 78:4
anyone 44:6,23 51:23 64:24 83:10
Anything 28:24 29:19 30:3 31:1
33:19 38:10 60:9 75:14 92:25 94:
15
anyway 79:16
apartment 16:10
apologize 7:3,10 17:19 27:18 56:
17

apparently 14:9 17:7,16 20:20 27:
2 28:13
appeal 54:15 55:15,19 56:13 57:9
77:1,2
Appeals 17:25
appear 65:20
APPEARANCES 2:1
appeared 9:18
appears 11:4 15:8 50:19
appellate 29:12,13 38:6 40:17 42:
17 68:11,14
application 7:22 18:8
apply 18:7 40:16 80:8,11
appraisal 66:17,21
appraisals 66:21
appraisers 66:21,22 67:2
appraising 67:1
appreciate 23:18
approach 47:4 53:18 65:22
appropriate 24:16 55:12 56:9 58:
15 74:8,10 75:4 92:16,20
approve 66:23
Approximately 46:9 67:25
area 50:5 64:2 73:14
argue 8:4 66:12 75:19 80:17 84:3
90:4 93:21,22,24
argument 5:19 14:5 23:22 58:22
64:20 65:22 71:24 78:24 91:13,13
92:7,9,11 93:5,11,23
arguments 63:8 91:10 92:5
arise 40:24
arises 68:1
arising 41:3
around 19:6
Arrandt 66:6
Arrandt's 67:6,8,10
article 39:7
articles 39:10,13
ask 6:19,19 9:12 15:16,16 16:13
19:4 28:3,10,11,11,16,20 29:20 31:
14 81:9
asked 14:10 16:12,23 46:25 71:6,
8
asking 19:14 30:16 37:25 41:17
81:15
aspect 66:25 77:21
aspects 68:15
assert 61:3
asserted 57:21,23
associated 11:2 38:21 60:7 64:23,
25
Associates 10:14,15
association 5:4 63:25
assume 32:19 78:12
assumed 73:4
assuming 5:11 9:23 15:8 23:1 24:
21 25:10 27:5 38:8 40:14 78:1
attempt 5:9
attention 31:14
Attorney 37:21 38:3 42:5
attorney/client 38:23 41:10 42:5
author 25:2
Autobody 81:9 65:13 66:10,12
automatically 31:20 79:12
available 43:13
Avenue 2:5,8
avoid 23:7 52:4
award 75:21

## B

back 9:6,11,14 11:7 15:15 18:1
21:12 30:25 31:4 35:1 44:4 46:25
47:19 56:23 61:1 62:17 76:17,22
83:23 84:9,12,16
bad 4:25,25 6:2,2 10:8,9,10,25 16:
16 64:20
badly 19:6
balance 35:13
ball 93:10
ballpark 32:3
Based 7:22 22:3 25:5,18 58:24
63:2 70:12 75:16 80:8 82:7
basic 84:19
basically 6:4 8:17 19:6 30:24 47:
12,19
basis 59:7,11,25 60:1,5 69:11,14,
20 70:19,21 71:4 72:5 73:25 74:2
89:4
bat 16:1,1,3,5 53:10,11,12,13,15,
24
bear 8:12
Because 5:8 8:6,9 9:11,18,23 10:
1 11:7 13:4 14:18,25 17:21 18:4,

19 24:9,10 28:3 34:19 42:12 47:
10,21 56:19,22 60:8 62:5 66:15
68:12 69:16 76:13 77:24 79:3,15
80:3,6 81:1,11,18 82:4 89:14 90:
21 92:3,10 93:8 94:12
becomes 20:9
before 9:11 13:3 22:17 23:2 29:17
30:4 44:4 54:20 61:2,8 76:21,22
83:11 89:2
begin 49:1
beginning 88:23
begins 4:1
behalf 31:2
behind 38:18
belief 10:5 58:23
believe 10:17 11:21 25:1 26:23
27:14 29:14 30:6 34:5,21 37:4,12
44:15 48:13,18 49:23 54:23 55:6
58:21 58:6 59:18,23 60:5,11 63:17
67:16 72:3,17,25 73:13 76:8 77:19
78:2 89:22 90:21 93:6,8
believes 29:5 29:12 62:20 68:3
69:19 70:1 74:18,22 87:25 89:20
beneficial 34:11
benefit 13:18,20 41:14
benefits 17:22 42:6
Bennett 66:3 67:16
Berg 66:3 67:17
besides 44:6
best 19:3 35:16
better 23:8
between 17:23 26:7 29:13 91:12
bill 9:19,19
bills 4:22 75:13
bit 25:22 34:6 66:9 77:10
bizarre 18:6
blank 87:20
blanket 70:18 71:3
Bob 17:8 19:3,19,20,24
body 66:15
BOPP 70:22
bore 43:4
both 34:21 45:6 56:8 82:11
bother 61:7
bottom 63:11 87:4
bound 66:3
Box 2:8,12
boxes 35:15
breach 31:13,21 57:23 58:3 76:16
77:11,13,14,18,20,20,25 78:2,4,13,
20 79:1,8,17,19,23,24 80:1 82:23
breached 47:21 76:24 78:17
breaches 78:21
break 35:2 54:3 57:1
Bret 34:15,16 70:8
brief 12:24 55:3,13 56:2,3 60:20
87:12
briefed 60:21 61:7
briefly 6:8
briefs 33:7
bring 9:10,14 20:15
broad 8:9 13:5 73:5
broker 71:18
brother 27:21
brought 13:13 15:6
Builders 46:21
building 73:2
buildings 8:18
bunch 10:8 17:11,15 23:7
burden 72:11 92:3
Bureau 71:10
business 68:24 67:6
business-the 67:1
Businessowner's 70:15 71:2
buyers 28:12

## C

call 15:15 16:11 34:15,16 36:14
called 17:8 20:10,18 26:11 29:11
75:15
calling 17:1,19
came 9:15 10:17
can 4:15 5:12 6:16,18 7:23 9:14
10:9,14 12:8,25 15:1,16 17:3 19:3,
21 25:11 26:7,8 27:6 28:10,11,11
29:3,10,21 33:9,13,16 34:10 36:3
37:20 38:24,25 39:1 40:18 41:15,
17 42:14 43:8,10,16 44:22 47:7,
10 49:8 54:3 55:6,7 61:20 63:7,18,
23 68:19 69:3 75:19,20 77:9,16
80:8,10,11,12 83:25 84:1,3,3 89:18
91:16 93:14 94:7

can't 18:9 29:9 30:22 34:7 37:25
38:10 70:25 93:6
cannot 37:23
cans 41:25
captive 71:17 73:12
card 27:21
care 59:17 71:19
cares 83:10
Carla 45:1,3,7,10,23 48:1 49:25
51:3,15
Carr 1:23 95:7
cars 66:16
case 4:18 7:24 10:11 11:2 12:16
14:8 21:19 23:14,20 24:6,19 34:9,
20,22 35:10,13 38:4,20 40:16 41:7,
7,8,15,24 62:11,18 63:16,18,22 64:
1,2,13,19,21,24 65:6,14 66:4,5,5,7
68:3,5,8,8 70:10,19 71:5,12,16 72:
1,13 73:18,21,22 74:13,15,17 76:
12,19 78:5 93:4,13,16,22
cases 11:15 33:10 62:5 63:5 65:3
67:23 68:8,16 80:25
cash 60:6
Casualty 63:19 64:19 66:10,11,19
24
categories 6:6
causing 66:12,22
cave 16:1,1,2,3,5,11 53:10,11,12,
13,15,24
CEDAR 1:2,19 38:15 39:7,9,12,15
95:21
certain 16:8 74:19
certainly 55:23 90:3
Certified 95:7,20
certify 95:13
chairs 35:24
chance 29:16 83:23
Chapter 58:1,3,21,24 63:3 68:15,
19 69:21
charge 10:1
charges 10:25
check 9:24
checks 42:25
Cindi 44:4,9,10 51:15
circuit 24:12 38:8 63:22 65:24,25
66:1,2 67:17 84:18
Circuit's 65:4,11
circumstance 18:21
circumstances 22:23 23:13 43:10
47:24
circus 17:2,9,11,12,15,16,20 18:
23
cite 65:5
cited 63:18 66:4
cites 64:18
civil 4:17 68:15 88:25
claim 9:5 13:5 14:7 23:14 31:6,10
41:2 49:15,16 57:24,24,24,25 58:2,
3,5,11,21 59:11,23 60:6,8,14,20
62:20,25 63:1,2,12,13,14 67:8 68:
11,15,19 69:25 70:11,12 71:9 72:
18 73:6 74:3,6 76:4,4,18 77:11,
13,23 79:2,3,9,13 82:5,18,23 89:7
92:6,10 93:24
claimed 18:12
claims 5:3 20:20 23:15,25 26:21
31:17 32:20 37:6,7 57:21,23 58:4,
18,23 59:5 60:17 62:8 63:16,21
64:16 66:13,18,20,23 67:2 72:8,11
74:18 78:17,23 82:4 84:20
clarifying 28:16
clause 61:23 76:10
clean 36:3
clear 5:24 41:2 54:21 55:22 59:16
61:20 73:3 85:19 88:10 91:14
cleared 35:17
clearly 10:22 14:16
Clerk 56:12 57:9
client 71:15 74:16 76:20
close 4:18 5:1,11 12:5,7,11 24:22,
22 26:24 27:5 57:20 58:6,7 67:25
86:12,13
closed 57:19 60:25
closing 91:9
Code 38:11 40:11 57:25 63:3 67:
22
collateral 15:1
column 32:18
come 11:1 29:7,15 35:1,22 36:23
Comes 70:8
coming 23:4 24:24
comment 12:25 73:17
commercial 70:17,18,23 71:2
Commission 40:13

commit 18:3 69:6
committed 69:10
common 60:12
communication 41:10
companies 11:3 28:21 46:13,16
COMPANY 1:4 10:19 61:20 63:19,
23 65:5,14,17 66:19 71:11
company's 65:16
compensatory 33:11
complaint 81:24 82:3
complete 95:12
completed 59:10
components 34:19
computer 56:23
concealment 76:14
concede 23:1 31:14
conceded 65:21
concern 37:24 73:24
concerned 29:10 65:10
concerning 22:5 29:22 56:9
concerns 24:1
conclude 10:9 78:21 84:24 94:19
concluded 4:13 63:12 64:11 79:7,
24
concludes 5:13 62:24 82:13 94:20
conduct 57:25 59:8 63:2,13,25
64:9,10 65:15 66:23 67:13 68:10,
21
conducted 68:24
conference 83:24 84:5
confession 16:25 17:19 18:10,15,
18,22
connect 21:15
Connecticut 65:7
connection 9:1,20 23:15 58:10,
18,19 60:13
consequence 86:21
consequential 31:7,7,12
consider 28:1 86:20 89:25
consideration 49:13,14
considered 77:10 86:12
consistent 85:17
constitutes 77:12 78:2
construction 65:11
contained 40:11
context 7:18 19:7 21:19 23:4
contexts 6:5 18:3
continue 29:2
Continued 39:3
continuing 57:25 59:8 61:6 69:11,
14,20
continuity 58:14 59:2 60:25 61:3
67:24 68:3,3 69:15
contract 31:3,10,11,13,21 47:9,
13,13,14,22 57:23 58:4 59:23 60:5
62:18 77:13,15,18,20,21,25 78:2,
13,18,19,22 79:2,9,13,18,18 80:4,6
82:18,23
contracts 61:19 79:22 85:24
contractual 80:24
contrary 66:24 88:4
contrived 22:21
control 66:25 67:6
controlled 65:16
controlling 67:17
conversation 41:12
convicted 39:20,23 40:19
convince 12:18
cooperation 23:19
cooperative 24:4
copies 47:3 56:22
copy 22:20 36:23 55:6,8 56:7
Corporation 66:6
correct 10:14 28:19 32:25 36:21
37:1 39:17 40:25 41:4,5 43:21,24,
25 45:11,12,15,16,22 46:14 47:1
49:11 50:2,17 53:20,22 77:16 86:7
correspondence 55:1,9 56:7,21
57:4
corroborated 73:8
costs 41:3 60:7,9
couldn't 41:20
counsel 4:7 5:19 23:19 26:7 36:11
38:2 40:12,15 41:12,21 55:10 56:9
65:21 83:19,21 85:7,7,8 90:3,9
counsel's 23:22
Count 31:10 37:6 40:4 62:22 63:1,
1 76:9 77:13 85:17,17
Counting 34:24
counts 37:4,11 40:2,23 62:17 69:
23 86:3
County 49:17 50:5
couple 4:12 36:24 38:24 62:15

course 6:22 40:11 41:13 70:16
88:3 92:7,23
COURT 1:1 4:3,5,10,13 5:13,25 6:
6,14,25 7:6,13 8:5,13,25 9:3,14 10:
21 12:1,4,22 13:1,9,22 15:8 16:9,
15,21 17:3,10,14,25 18:16 19:8,12,
15,20 20:2,13 21:3,14,19,20 22:11,
17,19 23:2,18 24:12,20 25:4,9 26:3
28:13,17,22,24 29:8,12,13,24 30:3,
19 31:3,22 32:2,3,8,11,19 33:1,6
34:1,8,24 35:6,19 38:4,7,9,16 37:
17 38:5,7,17 39:1 40:10,17 41:19
42:13,17 47:5 53:6,9,19 54:1,7,12,
12,19,25 55:6,10,13 56:11,12,12
57:1,4,8,13,16 60:17,18 62:5,12,
19,24 64:2,10,13 65:6,10 66:4 68:
3,6,11 69:19 70:17,1,10 72:12,20 74:
4,5,22 76:17,21,24 77:1,9 81:6,9,
14 82:1,12,13 83:16 84:13 85:3,5,
7,16,22 86:17,21,24 87:1,21 87:8,25
88:5,7,11,12,14,25 89:6,9,10,20
90:13,25 91:3,7,9,15,19,22 92:2
93:6,16 94:6,15,19 95:8
Court's 4:11,23 54:13 73:17 85:18
86:3,10,22,23 89:13
courthouse 15:7
courtroom 4:6 35:10,12,17 36:3,
10 85:6
courts 65:23
coverage 70:25,25 71:13,22 73:4,
10,11 74:16
covered 73:2 89:21
covers 62:2
create 62:7 76:11
created 21:9
creates 62:10
credibility 17:23
credible 17:24
credit 27:21
criminal 10:25 38:19 41:7,8 61:6
63:2,13 68:10,16
critical 61:16 65:4 66:5 67:16
cross-examination 53:7
cure 47:13
cured 47:14
curious 15:5
currently 36:20
cut 77:9

## D

D-1 57:3,8,10
damage 5:4,6,7 9:6 11:7 26:20,23
28:7 58:16 62:4 63:21 66:16 87:20
88:4
damages 30:7,9,16 31:7,7,11,12,
21 33:4,11 59:19 60:12,14 61:23
62:2,3,9,11 69:25 72:8,10 75:9,21
79:19 80:3 82:24 86:18 87:3,10
93:12
date 22:10,15 73:23 87:21,23 88:2
Dave 32:9
Dave's 36:4
Davenport 2:12
DAVID 2:4,4
day 1:19 20:20 34:1 95:16
days 34:25 47:13
deadline 18:5
deal 29:5
dealing 70:18
deals 87:3
dealt 13:12
debate 80:23
debating 76:13
deceive 4:17 79:7 81:21,22 82:8
December 57:4
decide 24:4 80:5,14
decision 67:9
decisions 68:12,14 84:6
declaratory 85:23
declare 78:19
declined 88:25
deed 49:10
default 47:12
defective 66:17
Defendant 1:8 5:16 26:21 40:18
56:8 57:14 59:12 60:10 63:25 64:
14 65:15,16 70:8 72:22 79:25 82:
13 87:7,10,16 88:19 90:4 92:16,17,
18 93:25
Defendant's 4:9 40:15 55:4,21
57:10 69:22 72:23 78:19 79:4 86:
23 87:12 92:17
Defendant/Third-Party 2:9

Defendants 1:14 63:20 66:15,25
67:3,4
defendants' 66:22
defense 32:20 73:10,24 77:12 79:
1
defined 69:7 70:11
defines 69:8
definitely 33:23
definition 69:7 90:16
defraud 5:9 62:10 67:3
defrauded 65:14
degree 73:7
DeLanoit 80:10
delivered 55:7
demand 49:16
demanding 67:7
denied 20:3 23:11 53:10 70:4 76:4
83:9 86:6 87:1 88:8,16 89:11 90:7,
9
denies 15:2 18:20
deny 20:8
depending 41:14
deposed 21:5
deposit 5:4 9:6 11:7 26:20 37:7
deposition 10:18 16:2 46:25 52:
19 53:2
deposits 5:7 26:23
derived 58:24
Des 2:5
describe 29:22 46:8
described 5:16 45:20 49:17 66:1
description 50:11,16
desire 89:5
desk 62:13
detail 14:13,22 17:3 65:9
determination 17:23
determine 7:8,23 38:11 72:13 73:
20
determining 40:13 75:20
device 95:11
didn't 14:9,15 17:1,5 19:22 20:5
22:7 28:7 41:21 42:10 52:11 53:
16,24 62:6 76:25 80:2 81:20 82:3
difference 13:7 63:9
different 22:16 62:15 69:3 71:14,
19 87:11 90:1,6
dire 37:15,18
direct 15:17 22:3 36:18 39:3 60:
17 76:3 80:1
directed 57:21 59:11 69:22 70:3,
9,22 72:6,23 76:8 79:13 81:15 83:
8 86:11,16,24 88:22 89:9,10
directing 86:4
direction 67:5 95:11
directly 14:5 64:8 68:22
disclose 28:7
disclosed 42:10
disclosing 28:5 38:1
disclosures 28:12
discreet 29:16 59:4 60:6
discuss 29:17 84:4
discussed 38:1 41:16 62:16 68:25
85:1
discussing 89:9
discussion 62:15
discussions 37:21 63:4 70:16
dispositive 73:5
dispute 22:19 33:2 93:17,18
disputed 31:18
disregard 89:4,19 90:6
distinction 64:20 65:2
distinguishing 67:14
DISTRICT 1:1 62:5 65:6,7,23 66:7
68:5,6
DIVISION 1:2 13:15
docket 55:14
docketed 57:8
Doctor 9:19,19 29:3 37:8 52:14,
16,25 53:3
document 6:12,25 11:5 16:23 22:
20,20 23:9,9,10,11 47:18 49:9
documentation 59:17
documents 4:22 5:8 6:4,17 7:3 8:
3,11 9:1 10:23 11:4,18 15:6 18:3
20:4,22 21:1,3,18 22:18 23:3,15
24:18 26:22,22 27:3 52:3 55:25
80:1
does 10:2 13:19 31:3 46:6,11 48:5
64:13 72:24 73:12 80:4 83:1 94:3
doesn't 7:19 11:24 12:12 38:22
75:23 81:21
doing 7:14 13:6 18:24 42:6 45:13
82:10

done 14:7 33:22 35:11,22 36:2 54:
9 59:4 60:10 65:17 78:1 94:7
down 15:6 20:20 32:18 35:12 48:
19 49:21,24 56:20
draft 79:14 83:19,20
drafted 90:10
dropped 93:9
duration 92:15 93:2
during 13:23 15:17 26:4,6 41:12
51:14 54:18 57:11 72:12 87:9 89:3
duty 71:25

## E

e-mailed 90:17
each 37:14 40:2,4 84:15 91:11
earlier 34:11 50:12 59:20 90:1,5,
23
early 6:11 9:15 26:5 32:15 35:7,21
easier 41:15
effect 4:20 14:1 19:23 25:5,9 27:
16 42:1 60:3 71:9 79:22 80:5
effective 60:4
effort 13:16
eight 88:23
Eighth 38:8 65:25 66:2 67:17 84:
18
either 11:2 22:6 43:19 46:3 63:7
69:17 71:1,7 73:18 75:12,14 77:12
93:8
elaborate 40:13
electronic 56:24
electronically 90:23
element 61:9,10 63:24 79:23 80:2
87:4,19
elements 58:10,25 59:6 60:23,23
62:16 63:15 79:17,20 82:11,23 85:
16
elephant 17:12
eliminate 61:17 88:3
else 7:12 15:21 19:16 27:12 28:24
30:3 33:19 46:18 60:24 75:14 80:
16 94:15
else's 6:9,21 7:12,16 43:4 44:6,23
eminent 73:23
employed 25:1
employee 16:25 43:15 64:6 95:14
employees 17:1 19:4,9,25 21:23,
25 22:1 51:7
empties 46:10
enabled 66:24
encompassed 54:24
encompasses 88:13
end 91:22
ended 67:25
enforcement 38:2
engaged 5:16 64:14
enough 10:6 61:12
enter 24:15 85:22
entered 4:10 9:3
enterprise 58:13 64:13 16,17,18,
23 64:1,5,6,23,25 66:12,18 67:12
68:21,23
enterprise's 64:9
entire 51:14 56:3,18 76:13 81:10
entitled 15:4 24:7 31:16 33:12 62:
1 72:18 76:9 92:6
entities 79:12
episode 18:7,23
Equities 46:17
Equity 10:13,17 46:19
Ernst 64:3,10
erred 42:16
erroneous 77:19 78:1,13,18,25
error 26:14 29:13 38:7 54:14 70:
19
errors 84:2
ESQ 2:4,11
essentially 5:9 8:5 23:24 24:23
31:6 32:21 63:15,20 65:12 72:12
74:13,19 80:14 89:7,15
establish 4:15 15:20 59:24 72:24
established 5:12 27:6 31:11 79:
21 80:3 82:24
estate 47:9,11,14,19 49:16,17 50:
7
even 10:3 12:1 41:21 77:19 78:12
81:10 93:16
event 23:16 35:2 59:7,25 60:13
68:2,2 76:3 83:8 90:25
events 4:18 5:1 24:24 26:24
ever 6:20 19:9 43:3 44:5 51:18,23
52:2,6,6,9,13,16 53:10 77:7
every 29:2

everybody 84:16
everything 11:17 35:20
evicted 16:10
evidence 4:14,16,19,21,24 5:11,
12,18,25 6:10,16 7:7 8:15,20 9:18
12:2,6,20 14:21 17:25 19:8 20:18
22:3,5 24:5,7,12 25:11 26:20 27:7,
20 29:1 34:19,23,25 54:11,17 57:
11,19,20 58:6,7,7,16,17 59:13,15,
18 60:1,2,12 61:23 62:18,20,23 67:
20 70:1,24 71:4,5,16,23 72:1,7,15,
24 73:19,21 74:1,21,23 75:8,11,12,
18,19,25 76:25 82:12 86:12,13
evidentiary 59:24
exactly 7:7,25 11:18 21:17,18 81:
12
examination 15:17 36:18 37:18
39:3
example 11:4 21:4 77:22
except 21:16 82:24 85:15
exception 88:24
exceptions 84:10 85:11 86:9,22,
23 88:20,24 90:8
excerpted 4:1 94:20
EXCERPTS 1:17
excess 70:17,18,23 71:3
excuse 24:25 88:9
exert 66:25
exhibit 21:5,6,10 31:24 32:2,5,6,9
47:6 53:15,20 54:22,25 55:5,16,21
56:4,10,11,15 57:3,8,10
exhibits 30:14 54:13,16 55:7
exist 10:2 46:6 52:1
existence 46:23 58:12 63:15 79:
18
expanded 70:17
expenses 30:16 32:13,16,20,21
72:9 73:23
expert 71:20 72:3 73:14 74:5,10
75:15
explain 43:10 47:10
explicit 80:6 83:6
exposed 10:24
exposure 38:19,20
extent 15:1 42:16 56:14 75:13 86:
21 93:17 94:13
extra 8:9

## F

F.2d 66:3
F.3d 63:19
F.Supp.2d 65:6 68:7
fabricated 5:8
facie 62:11 76:12
facing 38:16 40:19 92:11
fact 4:11 5:24 6:22 10:6 11:12 18:
23 20:6 21:7 22:9 28:5 40:18 41:
13 56:19 59:15 68:17 69:2 71:15
73:9,11,20 75:10,14 76:12 80:15
82:14 87:7 90:17,18
factors 75:17 80:13 89:24,25
facts 26:12 40:24 44:20 64:21 67:
15 76:11 81:1,4 93:17
factual 65:1 82:6,8,11
failed 58:9 59:12,12,24 72:15 74:
15,20 75:6 86:15
failing 10:13
fails 12:9 67:8 86:19
failure 58:12,13,14,15 73:11 77:21
89:13
fair 32:24 63:4 94:4,5
fairly 11:18 29:15 33:3
falls 27:19 71:9
false 11:9 14:8 18:18,21 26:22 66:
20,23 79:25
falsely 6:22
familiar 13:11
Family 4:14 28:5 30:11,15 55:25
58:20 61:25 64:15,16,18,25 71:17
77:18,23 78:17 81:19 87:21 88:2
92:18,24
Family's 21:8
far 20:2 25:6 27:23 29:10 37:5 42:
2 74:1
Farm 71:10
farmers 76:17,23
favor 12:20 61:18 76:19 85:16 93:
25
favorable 58:8 62:19,24 74:21 82:
13
fax 21:10 22:7
faxed 21:12 22:9,11
faxes 10:16

federal 40:19 58:24 68:17
feel 93:3,19
feeling 17:6
felt 57:6
few 79:16 84:21
field 6:7
Fifteen 51:13
fifth 15:24,25
fighting 30:1
filed 90:23
final 78:6 83:19 84:6,7 85:8,9 86:
18 87:13
finally 27:11 60:11 72:5 73:16
financial 5:10 24:20 27:4 69:10
financially 95:15
find 12:4,7 24:13 64:13 74:9 88:1
89:16
finding 18:1 67:20
finds 86:5 89:10
fine 29:24 86:1 94:14
finish 34:9,10,14 79:11 80:18
First 2:8 11:19 12:4 14:12 21:8,15
22:2,14 27:18 28:9 47:7 48:10 58:
1,5 62:14 63:22 65:4,11 66:1,21
70:21,21 72:23 73:21 78:24 79:20
82:22 86:10 87:4 89:8,22 92:14
93:21
fits 10:15
five 46:9 62:5 77:13
fix 38:25
fixed 13:3 28:4,6,6,6
fixing 12:16 58:19 59:21
flexible 94:11
floor 35:9,12
Florida 52:10
flowing 61:24
followed 65:3
following 49:17 84:5
follows 70:10
foot 24:10
force 16:24 51:14
forced 18:18,21
forecloses 76:12
forfeited 47:14
forfeiture 47:8
forged 4:21 5:6 19:5
forgery 21:9
forging 6:4 8:3
form 56:6,24 84:7 88:22 89:8
formal 84:9
format 85:14
former 21:25 43:15
forth 4:13 11:11 18:19 55:1 68:18
88:21 89:1
forward 14:13,21
found 17:24 62:5 66:8
four 29:15 54:1 57:22 62:5 63:1,
15 69:23 79:17
fourth 15:22 67:22
Frankly 9:22 24:8 25:5 41:20 60:
24 63:4,7 67:15 75:10 82:21 93:13
fraud 7:24 8:6,6,9,11 10:11,22 13:
15 16:17 18:3 37:5,7,10 38:9 58:3
61:4,11,13,21,22 65:17 76:10
fraudulent 5:17 6:12 7:17 31:5
57:24 59:10,19 62:22 63:21 64:16
66:13,18 76:18,22 79:2 81:16 82:
15
fraught 29:4
Fred 76:20,22
free 80:16 90:3
free-wheeling 65:19
freely 83:25
Friday 33:14 34:2,4,5,6
front 7:4 25:25 32:11 35:24 55:16
89:15
FS 76:18
fulfilled 60:23
full 33:24 34:1 71:13,22 94:8
fully 13:4 71:8,25
further 5:11 55:22 59:18,25 71:20,
23 72:2 95:13,14
Furthermore 60:4
future 59:9 85:21

## G

gain 5:10 24:20 69:11
gaining 27:4
gave 15:2 71:8 75:4
Gazette 38:15 39:7,15
Gazette's 39:9,12

general 59:3
Generally 4:20 5:16 93:21
generate 58:9 70:2 74:23
generated 22:8 56:24
generic 17:13 19:2
genuine 82:14
gets 13:20 14:25 71:14 94:3
getting 9:6 20:19 23:20 40:7 92:19
give 17:3 19:3 22:21 29:9 55:12
59:19 74:11 78:13 83:18,21,25 84:14 86:19 87:16 90:18
given 23:12 55:2,11 91:11
giving 74:9 77:25 78:18
GMC 70:14
goes 18:1 22:17 23:2 40:8 75:18 79:3,6 93:21
good 12:17,18 13:6 30:2 75:19
Gordon 6:13 8:14,15,17,21,22 10:4,13,15,18 11:1,22 27:24 28:20 43:20 46:6 51:18,20,24 52:3
Gordon 28:18
got 7:4,10 8:9 10:5,10 14:10 15:11 22:11,19 23:24 32:3,11,13 34:24 35:15,23 77:1,2,16
gotten 24:11 30:13
Government 9:24 14:19
grab 62:12
Grand 2:5
granted 76:19
great 14:13,22
grew 59:6
grounds 59:20 61:17 86:19
guarantee 34:7
guess 5:2 8:1 9:4,14 16:7 18:1,7 19:16 24:19 27:12 30:4 31:13 38:18,21 40:6 42:13,17 77:15 79:10, 14 80:16,22 81:8 82:19 93:2
guessing 54:3
guideline 40:14
guidelines 40:16
guy 6:2 10:9 12:18 16:16 36:4 47:11
guys 33:9,20 35:11

## H

habit 22:17
hadn't 92:2
hall 37:5
hallstorm 39:16 41:4 68:2
hall 64:18
hand 95:16
handle 29:19
handwriting 53:22
happen 18:13,15
happened 18:12
happy 18:2 42:11,19
hard 34:3
hate 12:23
haul 56:20
Having 10:3 19:5 24:11 26:14 52:4 57:19 79:10
head 23:10
heading 33:16
heard 13:13 19:12,16,19 25:6 27:9 28:18 53:14 77:7 81:2
hearing 5:17 7:6 22:1 54:2
hearsay 19:11
HELD 1:17 71:13
help 36:2 41:8 57:2
helped 67:3
helpful 20:17
here 6:5 7:9,19 8:6,15 9:12 10:6, 10 16:18 18:8,24 23:2 25:16,17 31:5,23 35:6,20,24 48:19 49:21,24 54:4 56:20 59:4 63:6,9 67:18 72:13 74:17 75:3 77:16 79:22 82:20 87:19 89:14 92:8
here's 18:14 15:14 23:2
hereby 49:15
herein 86:14
hesitate 11:17
hide 20:24
higher 4:19 25:8
himself 9:25 10:24
Hoffmann 68:7
Home 9:19,19 12:12 29:3 37:8 52:13,16,25 53:3
Honor 5:23 7:4,25 8:8 9:19 11:24 12:23 14:12 15:25 16:23 19:14 21:5 24:25 24:14 27:17 30:23 31:18 32:6 35:4,15 36:14 37:15,24 38:13 40:6,22 41:9,11 42:8 53:18 54:9,

21 56:19 57:18 60:19 70:7 71:23 72:5,21 76:6 81:17 83:13,14 85:13 86:7 88:9,19 90:13 91:14
hope 9:22 93:12
hopeful 34:8
hoping 84:16
hour 9:15 91:11 92:11 93:8,13,15, 19 94:7,9
hour's 92:6 93:5
hours 33:25 92:11
house 14:15,16,16
houses 14:7,9
how 6:5 12:20 14:4,14 18:7 24:4 25:6 29:18,22 31:22 33:25 40:16 44:18,20 45:17 47:11 57:11 75:21 81 83:4 84:13 91:16
however 5:15 10:3 11:1 54:13 55:14 64:20 66:14 68:16 69:2 74:12, 25 75:17 79:10 87:16
hugely 93:17

## I

idea 18:2
identified 11:10 78:6,14 87:14
identify 10:23 49:9
illinois 66:7
imaginary 8:16 10:24 11:12 27:21
impeach 15:4
impede 42:4
impediment 61:9 62:9
imply 52:11
important 21:19 65:1
impossible 70:23
impression 87:8
improper 7:17 13:25
impropriety 5:7 26:22
INC 1:13
incentive 75:24
incident 44:21
incidentally 74:13
inclined 20:13 82:22 88:5
include 15:11 56:1 70:17 89:13
included 30:19 33:4 56:5,21 57:6 75:1 78:9,15 89:25
includes 64:4
including 37:8 58:11 69:9 82:9
inconsistent 65:20 89:3,17
inconveniencing 25:15
incorporate 55:5,8 58:22 86:11, 13
incurred 31:9 32:20 33:3
indeed 67:2
independent 71:18
indicate 41:15 74:12,25
indicated 4:24 64:3 74:8 85:8 87:1 88:16 90:15
indicates 75:2
indication 84:24 67:5
indictable 69:12
indictment 36:20,24 37:1,3 39:7, 10,16 40:24 41:22 42:21
indirectly 64:8 68:23
industry 80:11
infer 41:23 61:13
inference 13:24 75:25
inferred 13:18
inflated 13:16 14:18 15:2,15
inflicted 66:16
influence 42:24
influenced 41:23 42:22
information 77:19 78:1,13,18 79:1
initially 82:21
initio 80:7
injuries 75:13
instances 16:6 52:24
instead 8:21 35:17 36:2 71:7
instruct 82:22 85:16
instructed 74:19 75:5 78:11,25
instruction 30:10,20 66:18 87:2,3, 5,6,7,14,17,19,22 88:6,7,11,15,21 89:1,13,20,21 90:4,15,19,22,22
instructions 30:5,7 33:13 75:12 78:10,15,24 79:15 80:9,14 82:19, 20 83:7,12,20,21,22,24 84:4,6,14, 19,20,21,22 85:1,8,10 86:10,22,23
insufficient 59:14 60:2,11
INSURANCE 1:4 61:4,20 63:23 65:5 67:2 71:11,18 72:25 73:7,8, 13 74:20 80:25
insure 70:14 71:6
insured 61:21 71:8 72:1
insuring 70:22

intend 29:18,23
intended 7:8
intent 4:17 6:3 55:23 56:2 79:4,6 81:21,22 82:8
intention 4:23 33:12
intentionally 66:16
interest 49:16
interested 63:10 95:15
interfere 42:4
interpret 67:24 83:4
interpretation 65:19 67:11 80:9
interpreted 64:10 68:15
interpreting 69:17
interrupt 12:23
introduce 4:14 24:12 72:15
investigating 67:1
investigation 32:16
investigative 21:24
investigator 14:15
invoice 11:8,9 67:7
invoices 5:6
involve 5:8 41:9 64:11
involved 22:19
involvement 67:5,12
involves 24:17
Iowa 1:19,20 2:12 17:25 49:18 57:25 61:6,19 63:3 68:5 71:9,12 88:25 89:13 91:15 95:21
isn't 9:24 41:6 48:3 63:9 68:11
issue 4:8,16,18 12:14 14:17,20,23 17:21 20:6,15 21:4 22:8,2,14 33:8 40:25 60:12,21,21 61:18 62:7 70:2 72:10 74:4 75:3,7,9,20 78:7,10,15 80:4,17 81:6,8,11 82:6,6,8,14,17 83:11 85:24 86:15,20 93:7
issued 15:18
issues 4:8 9:16 14:1,6 25:20 26:20 41:11 82:11 87:14 94:4
item 8:13 12:22 13:9 15:22,24,25 19:1
items 20:4 25:12 27:14 29:15 54:20
itself 54:25 55:5,13

## J

January 1:19 4:11 73:4
John 13:11 27:21 46:14 49:14,14, 22 50:21 51:6 61:16 81:25
Judge 10:12 12:14 30:2 34:13 35:6,9,14 61:13 68:6,6 76:16 77:2,4 93:15
judgment 55:3 70:9,13,13 72:18 74:6 76:7,9,19 80:25 83:9 85:18, 23
judicial 40:18
juror 81:20
JURY 1:17 4:4,6 10:9 12:18 13:10, 13 20:17 25:6,15 26:1,11,18 29:18 33:11,13 35:2,8,22,23 36:8,10 41 23 55:2,17 56:10,13 57:7 58:9 60:13 61:5 62:21,25 63:14 70:2 72:10 74:23 75:19 78:10 79:20 80:2,5 81:7,11 82:16,21,22 83:19 84:21 85:1,4,6,8,10 86:4,19 88:1,25 89:3, 13,15,24 90:4,9
justified 61:15 81:23

## K

Karo 84:15
Kay 1:23 95:7
Keep 23:4 91:17,19
kept 56:12
kind 4:17,25 5:2,10 7:9,19,23 8:2 7 10:10,11 11:6,9,14,14 12:5,7,11 16:17 18:6 24:15,16,17,21 25:7 26:24 27:5,14 29:9 33:15,16,16 56:16 68:18 74:11 76:16 83:25
kinds 31:17 41:25
knew 17:6
know 6:12,25 7:10,13,14,14 8:16 10:3 11:19 13:17 16:8 17:19 18:1, 11 21:8,11,22 22:11 23:5 24:4 25:6,19 26:1 29:3,4,4,10,12 33:7,16, 25 35:11 40:20 41:17 42:10,12,17 43:18 44:3 46:12 47:24 48:6 49:2, 3,4,5 50:4,8,8,10,15 53:12,13 56: 18 59:2 60:25 61:19 63:7 64:15 75:18 78:20 80:10,19 81:5 83:5, 17,25 84:15,18 85:18 90:14 91:15 92:4,4 93:19
knowing 22:12 53:10
knowingly 68:20,22

knowledge 6:4 68:13 70:19
known 45:17 87:8,8
knows 38:8 40:12 68:23
Kruckenberg 72:4 74:13

## L

lack 72:9
Lane 37:21 40:8
language 55:1,11,12 56:10 57:5 75:1,2 80:6,24
last 20:15 27:19 28:1 42:22 45:21, 25 72:5 92:19 94:3
later 12:25 19:5,21 22:14 24:12 33:17 67:9
law 38:2 61:19 70:10 71:10,12 72:18 76:7 78:16,21 79:21,24 81:9 83:3 85:18 88:4
laws 69:13
lawsuit 39:13,17 40:25 69:12
lawsuits 21:2
lawyers 29:8
lay 83:16
leaking 13:5
lease 9:3,4 22:18,20 23:14
leases 11:23 20:22 21:4 52:3
least 10:13 20:21 22:3 29:17 42:1 61:1 74:17 79:7
left 83:1
legal 32:19 38:13 49:19 50:16 80:23
legitimate 9:21
less 30:9 32:4 40:21
Let 4:5 25:25 31:4 36:9 38:22 39:5,6 44:4 62:16,17 77:9 79:13 84:15 85:5
Let's 6:14 35:2 57:1 84:14 92:14
letter 11:6 22:5,6
letters 56:1
letting 26:1
level 71:19
leverage 41:8
liability 73:22
lies 16:12
light 58:8 61:4 62:19,23 74:21 82:12
like 5:23 11:6,21,24 12:13,24 14:1 16:19 17:10,10,12 18:6 21:12 22:2 25:21,23 27:22,24 28:3 30:10 32:12 35:24 36:14 37:1 38:14 48:5 50:13 56:5 58:1 71:18 76:7,8 81:4, 23 84:7,12 85:22 93:19 94:8,17
likely 34:18
Limine 4:9 54:23
limit 56:20
limitation 77:24
limitations 81:22
limited 58:11 92:21
Lindsey 84:15
line 63:11
Linn 49:17 50:4
Lisa 18:9,17 19:18,20,24 25:16, 19,20 52:6
listed 11:3 80:13
listen 5:19
lists 89:24
litigated 17:21
litigation 23:15 41:18 57:22 61:5
little 7:7 20:10 23:23 25:23 30:6 34:6 39:18 40:1 66:9 75:9 77:10
live 46:11
lived 19:25
local 91:10
logistical 35:14
long 39:20,21 45:17 51:12 65:7 71:12 84:13,17
longer 40:1 91:22
look 14:12,21 21:12 22:22,24 32: 17 33:9,15 36:25 48:5,7 50:11 59: 17 80:12 83:23 84:7,17 94:10
looked 30:7,14 32:15
looking 38:11
looks 32:12 37:1 94:8
loss 30:13 59:6 80:8,15
losses 9:20 31:9,16 33:11
lot 23:5 32:1 35:15
lots 18:3 61:24 63:5 69:3
loud 31:4
Louis 63:8
luck 34:6

## M

M-a-y-f-a-l-r 46:21

M-e-r-c-e-r 43:9
machine 22:8 23:3
made 8:22 17:23 26:21 31:1 32:20 36:24 51:20 57:20 58:22 60:21 64: 16 86:11,12 87:21 89:2,16,17,19 90:8
mail 37:5,7,10 38:9 42:25
mailed 43:1
main 34:19
make 5:18 21:12 25:15 26:10 29: 6,10,20 33:12 36:12,25 40:6 42:14 56:14 57:17 59:2 63:8,9 70:6 76:5, 18 80:22 82:1 83:6,10 84:5,9 85: 13,21 88:12 90:11 93:23
makes 13:7 22:17 41:15 42:15,15
making 42:8 85:19 88:14 93:10
management 64:5,12,14 65:12, 20,23 66:14
manipulating 8:11 21:18
manipulation 24:17
manner 65:18 66:24
Mansfield 76:23
Mansfield's 76:20
Manufacturing 68:7
many 33:25 44:18 81:3
mark 57:3
marked 47:6 48:9 49:8 54:22 55:8
marks 36:24
marshaling 84:20
material 67:6 82:14
matter 13:4 37:22 38:5 59:19 70:9 72:18 76:7 78:16,21 79:21,24 81: 9,21 83:3 85:16
matters 14:25 15:1 54:24
maximum 40:10
MAY 2:4 4:14 5:21,22,23 6:18 7:2, 10,25 8:8,14 9:1,8 11:12,16 12:13 13:10,24 14:3,3 15:6,25 16:13,19, 22 17:5,11,16 19:2,10,18,24 20:12, 15 21:4,17 24:25 25:4,12,13 27:17, 23 28:15,16 30:23,25 31:1,24 32:1, 10,12,24 33:23 34:3,16,18,23 35:4 36:12,14,19 37:17 38:12,24 39:2,4, 5 40:9,16,22 41:3,10,13 42:8,19 47:3,3,5 53:6,18,18,19 54:1,9 57:2 60:18,19 76:6,22 77:2,5 80:19,20 81:17 83:3,13 84:12 85:12,13 86:7 89:22,24 91:4,6,14,21 94:2,5,7 maybe 7:17 13:23 20:9 23:23,25 24:10,11 26:7 31:12,13 34:25 35: 16 46:9 54:4 93:12
Mayfair 46:21
McDonald 2:11
McManas 49:14
McManus 9:17,22,25 10:2 13:12 15:22 27:8 43:11,19 48:15 49:14, 22 50:22 51:6
McManus' 44:15
mean 7:20 10:25 19:12 21:8 22:19 34:15,19 56:19 61:11 75:11 80:4 81:2,18 83:1
meaning 80:23
means 7:13 12:10 69:9 80:15 83: 17
meant 90:19
measure 30:7,9 33:4 86:18 87:10, 20
medical 72:9 73:23 75:13
meet 7:19 66:13
meeting 18:9
meets 11:14,24 23:16
Melloy 68:6
memory 10:12
mention 27:17,20,24 90:20
mentioned 27:23 61:2
Mercer 43:7,14,21 44:6 46:2 48: 19
Mercer's 43:24 51:16
mere 11:12 74:1
merely 29:3 66:12,15 77:25
merit 7:12
met 66:15 67:18 68:4 69:1
mid-sixties 46:10
MIELL 1:7 5:9 6:2,19 8:16 11:20 12:1,14 13:15,18 14:19,24 15:2,12, 15 16:2,4,16 17:17,24 18:20 20:19 21:5,9 23:10 24:18 27:2,22 28:20 30:12,17 31:2,8,15 32:23 34:20 36:15,16,20 38:14 42:21 49:15 54: 7 58:14,17 59:21 61:5,15,20,21,25 64:5 71:8 72:24 73:1 74:18 75:5, 22 76:9 77:8,22 82:9 87:23 88:2 89:2 90:18 93:8,10

Miell's 4:17,21 5:3 9:23 11:3 21: 16 74:3
Mielle 50:4,9
might 12:8 18:22 25:7 35:17 36:2 64:19 65:12 70:16 79:14 90:15
million 8:1
mind 11:25 23:4 42:11
mine 49:4
minimum 11:24 60:25
minute 32:6 50:8
minutes 35:17 36:2 54:1,4 79:16 91:17,17
mislead 8:17
misrepresentation 31:6 57:24 59: 10,20 62:23 76:14 79:3 81:16 82: 15
misrepresentations 61:14
misrepresenting 32:7
missing 59:1
Moines 2:5
Monday 35:1 91:10
money 13:20,21 37:5 61:24 62:1
monitoring 38:4
months 61:2
more 5:15 6:14 7:7 9:8 14:5 17:3, 24 19:2 23:5 25:6 30:9 32:4 38:24 39:18 40:21 46:4,13 58:18 59:21 61:1,3,12 62:2 63:10 65:22 66:1 67:6,15,16,21 71:13 74:1 75:24 76:11 81:6 82:17,21 83:6,25
Moreover 65:10
morning 9:16 30:4 35:21
mortgage 48:11
most 20:17 21:6 35:25 58:8 62:19, 24 74:21 82:13
Motion 4:9 54:22 69:22 70:3,9,21 72:6,23 74:6 76:3 79:12 81:25 82: 8,9,15 86:11,16 88:21 89:3
motions 54:20 57:16 70:5 83:11
motivated 38:18
motivation 12:15,16 40:20
motive 6:3 13:25 14:3,20
motor 71:1 93:7 94:1,11
move 16:19 15:15,15 40:22 42:11 57:21 59:11 60:16 70:10 76:7 80: 20 81:17
moves 16:9
moving 35:5
Ms 43:14,24 44:6 45:17 46:2 51: 16 80:10
much 6:7 18:24 24:5 25:6 31:22, 25 34:19 58:16 63:9 75:11,21 91: 16
multiple 29:6
must 64:8,11 75:25
Mutual 71:10

**N**

N.W.2d 71:11
name 6:13,21 7:12 8:16,22 9:7,18 11:1,4 13:10 19:4,7,9,21 43:4,6,24 44:6,10 51:18,25
named 27:21
narrow 82:17
nature 25:15
Nau 59:16 61:16 81:25 82:4,4
Nau's 82:7
NE 2:8
necessarily 56:3
necessary 15:13 56:6 72:2 73:13 83:6 90:20
need 23:22 24:5 27:17 29:1,9 30:3 33:19 34:9 35:25 37:15 55:15 62: 12 73:14 74:10 90:11 93:4,4 94: 10,15
needed 7:15 94:9
needs 58:10
negligence 72:19 73:6 89:7
negligent 74:7,9
negligently 75:8
neither 23:25 63:12 70:24 75:10 93:12
never 23:11 31:18,19 52:1,12 81: 2,3
new 81:2
next 8:13 16:20,22 34:10,14
night 33:9
nine 26:8 34:1,2 35:3
NOEL 2:4
None 57:15 89:23
nonetheless 24:14
noonhour 26:4,6
nor 59:17 63:12 87:13,14

Normally 26:3,4
Northern 66:7 68:5
notarization 47:25
notarize 44:14,24 45:5,7,15
notarized 7:15
notarizing 7:20 45:19 50:2 51:3, 15
notary 6:9,15,20,23 7:5,11 43:3, 13 44:5,12 45:14 48:20 51:10
note 21:11 75:22
noted 59:20 72:12
notes 62:12 95:12
nothing 21:15
notice 9:5 40:18
notified 88:2
Now 6:21 9:9 12:6 21:4 25:14 26: 7,15 41:25 50:20 52:22 56:16 70:8 80:19 84:14 85:10 90:21
nullify 67:10
number 32:8,9 38:16 80:22
numbers 31:19,20 33:2

**O**

o'clock 9:12 26:8 35:3,9 54:2
oath 36:17 89:2
object 28:7 29:2,3 86:14,17 88:20
objecting 29:1
objection 29:11,20,21 40:7 41:19 85:20 88:3,6,25 87:1 88:8,10,13 89:6,10,12 90:7
objectionable 24:11
objections 29:4,6 84:10 85:11,14, 15 86:10 88:19 90:8
observation 59:3
obtaining 24:20
obvious 84:1
Obviously 14:14 34:10 41:12 55: 17 64:5 91:23
occur 44:16,18 45:23
occurred 43:17 45:21 69:13
off 50:15 56:25 62:12 83:24 85:1
offense 60:10,12
Offer 3:6 5:25 7:8 9:11 12:5 24:7 25:22 26:7 36:12,15 38:6,18,21 42:14 53:6 54:10,18,23 55:4,21,21 56:4,4 57:11
offered 18:17 29:19 53:15 54:17 55:15 56:15 57:10 75:11,12
offering 25:3 55:16
offers 54:19 57:13
office 8:24 18:11 55:9 56:24
officer 11:3 28:20 46:13
official 95:8
often 81:1
Oh 35:6
Okay 20:12 28:15 32:12 35:20 37: 3 39:2,22 43:16,19 44:23 45:19 47:21,25 48:19 49:21,24 50:7,11, 17,20 51:6 52:16
omissions 84:2
once 47:12 76:17 83:22
one 8:9 9:12 10:19 11:3,4 12:3,13 13:13 16:20,22 18:4 20:16,21 21: 4,6 25:3,17,18 27:18 28:3,20 30:8 31:10 37:4 40:20,21 46:13 48:12 49:11 50:20 51:12 56:23 59:6 63:9 65:9,15 67:25 72:12 74:17 75:17 76:9 77:13,14,24 78:21 79:4 80: 21,22,24 81:22 85:17 86:3 87:18 89:25 90:17 91:11 92:11 93:12 94: 17
one-time 18:4
ongoing 61:4 63:2,13 68:10
only 11:17 13:19 18:8 25:1,13 68: 12 70:11 84:22 85:20 86:2 89:23 92:11 94:1
open 4:3 36:7 41:25 85:3
open-ended 61:3
opened 9:25
opening 13:23 91:12
operation 64:4,11,14,18 65:11,19, 23 66:14
operations 65:16
opportunity 83:21 85:9 86:19 87: 17 94:1
oral 65:22
order 4:24 5:7 12:3 24:5,18 26:22 30:24 35:23 55:14 57:6 62:17 66: 20 74:9 78:7 87:13 92:15,15 90:2
original 20:25
other 4:14,25 6:4,11 7:5 9:5 11:2, 5,22 12:10,13,20 17:14 19:6,21 20: 3,22 21:24 81:20 90:11 22:1 23:14 24:3

25:12,20,24,25 26:10 27:14,18,23 30:16,16 32:20,21 35:19 36:5 44: 5,6 45:14 49:13 50:4 52:3,24 54: 19 55:2 61:14 62:8 67:3 78: 17 80:8 89:16 90:5 92:10 93:16
otherwise 23:20 42:4 61:25 71:21 76:1 79:5 86:1 92:10
ought 80:23 84:6
out 5:24,25 9:6,24 10:4 11:8,11, 12,13 16:9 20:7,23,24 21:11 22:14 27:13 30:10,15 20 31:4,8 32:15 35:12,18,20,25 57:2 59:6 65:6,12 68:1,1 75:23 84:1 92:5 94:9
outcome 41:14
outlined 6:6
outside 4:3,6 19:11 26:11,18 36:7, 10 85:3,6
outweighed 27:15
outweighs 42:2
over 10:16 20:22 23:10 59:5 61: 14,15 66:25
overheard 19:3
overkill 23:25
overreached 24:10
owed 7:15
own 16:3 39:16 43:3 44:6,14 45:7 51:10 75:23
owned 71:1
owner 8:18
owners 66:16

**P**

P.C 2:5
p.m 54:6 84:25,25
PaceSetter 32:14
Package 70:15 71:2
page 21:15,15 22:13,14 87:4
paid 28:4,5 30:10,12,15,17,20 31: 1,8,15 32:13,22 58:18,19 60:9 62:1 63:21 64:17 66:19 76:2 82:4 87:23
paper 19:13 21:11 43:20 81:18
papers 85:25
paragraph 55:24 68:19 69:4 80:1 89:22,24
paraphrasing 89:14
parenthetical 67:19
part 12:2 23:8 27:19 29:25 31:21 34:22 41:6 55:13 56:4 64:23 68:5 71:21 79:8 81:13 88:10 89:23
participate 64:8 67:13 68:22
participated 64:17
participating 64:7
participation 58:13 61:9 64:4 67: 18 68:25 69:19
particular 42:24 44:2 57:5 59:1,14 75:6,16 85:25
particularly 22:18 59:17 89:1 93:8
parties 15:9 26:12,15 30:6,8 33:8 63:7 75:19 78:8 80:16 81:4 93:20
parts 12:3 66:17
party 5:10 11:12 52:14,15 75:10, 12,14 89:16 91:11
pass 24:24
passport 7:21
PATRICK 2:11
pattern 67:23,24 68:4
patterned 68:17 69:16
paucity 75:8
pay 66:13,20 75:24
paying 47:22 61:16 67:1 75:23 77: 24
payment 67:7
payments 30:25 60:8 87:21
Peacock 44:4,9 45:17
Peacock's 44:10 51:16
peak 32:5
penalties 40:10
penalty 37:14
pendency 42:21
people 8:19 17:14 19:21 20:8 25: 20
people's 45:14
per 28:2
perfectly 2:21
perform 77:21
performance 10:16
perhaps 23:21 40:15 51:7
peril 29:5
period 59:5 60:25 67:25
perjury 10:1
permitted 23:6 56:16
perpetrated 41:4
person 8:16,19 10:24 11:13 46:22

49:15 51:24 68:20,23 69:6
**personnel** 38:3
**persons** 27:3
**Peter** 28:7
**phony** 5:6 23:25 26:22
**photocopier** 20:23
**photocopy** 20:25
**phrase** 25:2
**pick** 35:8,23
**picking** 35:22
**pickup** 70:14
**piece** 19:13 47:19 49:18
**pieces** 21:10
**pin** 17:17
**place** 36:17 54:8 95:10
**placed** 54:14 55:18 66:17
**Plaintiff** 1:5 2:9 5:18 15:14 18:12
24:5 25:10 26:9 56:8,8 57:22 58:8,
8 59:12,24 60:17 62:19,24 63:16,
17,23 64:18 66:10,11,18 72:8,11,
15 74:18,22 76:6 87:6,9,11 91:12
92:16,19 93:21
**Plaintiff's** 18:13 54:16 55:10 57:
20 58:7 69:21 72:8 74:6 86:13,22
92:8
**Plaintiffs** 15:19 16:16 23:23 31:16
63:18 76:5
**plays** 6:5
**pleadings** 56:22 83:9
**pled** 78:5,14
**plus** 61:13
**pocket** 75:23
**point** 8:3 12:18 14:24 20:5,21 30:8
38:13 43:13 46:9,24 47:15 54:10
82:5 84:1
**pointed** 5:25
**points** 24:3 68:1
**policies** 30:11,12,21 59:25 60:2,3
79:22 87:22,23,23 88:1,3
**policy** 30:24 61:21 70:15,18,23,24
71:2,3,7 73:9 76:13 80:12 81:10,
12 83:2,3,5 86:20
**portion** 4:2 55:23 56:1 86:17 87:2
94:21
**portions** 20:23 56:15
**position** 18:14 21:8 23:20 42:9
55:24 58:23 60:14
**possibility** 61:3
**possible** 18:8 37:13 38:9 56:13
57:9 70:11
**possibly** 61:1
**potential** 32:7 59:8 73:2
**potentially** 92:10
**pound** 23:9
**practical** 38:5
**practices** 66:24
**precede** 80:20
**precedent** 66:2 67:17
**preclude** 69:21 73:12
**preclusion** 41:14
**predicate** 58:15 67:21
**prejudicial** 4:20 22:25 23:17 25:5,
9 27:15 42:1
**premium** 87:22
**premiums** 30:11
**preparation** 4:21
**preparatory** 69:10
**prepare** 90:15
**prepared** 85:10 90:17
**preparing** 47:18
**preponderance** 4:15 5:12 12:6
25:11 27:6
**presence** 4:3,6 26:11,18 29:18
36:7,10 85:3,6
**present** 4:7 20:25 36:11 73:15 85:
7
**presented** 61:24 78:7
**preserve** 29:13 55:14
**preserves** 26:13
**preserving** 54:14
**president** 10:13,19
**pressured** 18:19
**presumably** 15:21 31:11 75:22
**pretrial** 78:7 79:8 87:13
**pretty** 27:18 30:1 32:24 33:24 81:
2
**previous** 60:21
**previously** 4:9 70:11 86:5,25
**prima** 62:10 76:12
**primarily** 5:2
**principal** 64:1
**printed** 56:24
**prior** 4:25 89:16

**prison** 39:20,23 40:19
**privately** 71:1
**privilege** 38:23 42:5,11
**probably** 9:10,25 10:9,24 20:16
25:19,21 34:11 35:20 55:22 56:22
63:10 75:15 92:20
**probative** 4:19 20:11 22:22 25:8,8
27:15 42:1,2 56:3
**problem** 14:22 28:14
**problems** 8:20 14:18
**procedural** 14:23 28:25
**proceed** 29:23
**proceedings** 36:5 95:8
**process** 15:10 40:13 67:1
**PROCTOR** 2:4 5:21,22 10:12 28:
16,18,23 30:18,22 31:25 32:5,9,25
34:5,13 35:14 36:1 41:16 77:3 85:
12 90:12 91:3,5 94:2,4,8,17
**procure** 73:13 74:16,19
**produce** 46:22
**produced** 55:25
**Professional** 1:24
**proffer** 5:14,18 26:9
**prolong** 63:6
**Proof** 3:6 15:20 23:8 25:22 26:7
36:13,15 38:6 42:14 53:7 54:18,
19,23 55:4,21 56:4 57:12,13 72:11
92:3
**proper** 14:16
**properly** 5:25 9:18 78:14
**properties** 28:10 48:12 49:11
**property** 16:5,7 44:2 49:18 50:11,
13
**proposal** 90:22
**proposed** 55:1
**proposing** 87:11
**proud** 77:3
**prove** 12:6,8,10 24:6 25:11 31:19
38:12,13 58:10,12,13,14,15 59:13,
**provide** 33:10,13 38:6 55:6,8 60:1
71:19,22 73:9,10,11 74:2 83:20
**provided** 5:5 21:24 22:4 26:21 31:
3 55:9 56:7,10,12 57:6 60:1 73:24
85:7 87:18
**providing** 74:7 77:18
**provision** 68:25 78:25
**public** 50:12
**punishable** 69:11
**punitive** 60:12,14 62:3,4,9,11 69:
25
**purchase** 70:25
**purpose** 4:7 5:17 6:21 7:6 21:1
24:20 27:4 38:6 47:18
**purposes** 6:17 55:4,20 92:8
**pursuaded** 82:25
**pursuant** 57:19 91:10
**put** 15:20 16:5 22:15 56:6 76:23
84:7 85:25
**putting** 52:3

## Q

**question** 9:10 14:25 20:10 22:9
23:11 25:23,24 28:16 29:2 34:14
37:20 38:23 42:3 58:9 62:4 70:2
73:19 74:23 79:21 83:4 88:23 94:
17
**questioning** 14:24 82:25 87:9
**questions** 26:15 38:25 42:3 84:11
**quick** 32:5
**quicker** 23:21
**quit** 17:20 33:14 49:15
**quitclaim** 49:10,18
**quitclaimed** 50:14
**quitting** 26:5,5 35:7
**quoting** 74:15

## R

**racketeering** 67:23 68:4
**raise** 12:13 14:23 28:2 72:10 81:8
**raised** 4:9 54:24
**range** 40:14
**RAPIDS** 1:2,19 38:15 39:7,9,12,15
95:21
**rare** 93:4
**Rather** 24:6 66:19 75:4 86:4
**rationale** 23:12
**re-plow** 6:7
**reach** 26:13
**read** 4:12 33:7 39:6,9,12,15 61:12
65:9,12 66:9 87:18 88:12

**Reade** 35:8,9
**readers** 38:14
**reading** 63:5 65:13 67:10
**ready** 20:19 84:15,16
**real** 47:9,10,14,19 49:17 50:7 51:
24 85:20
**really** 20:10 22:8 24:1 25:18 28:1
30:13 33:8 38:10,12 42:13 52:11
53:12 59:16 61:17 73:5 75:10 79:
11 83:1 84:22,22 85:24 93:3,16 .
94:9
**Realtors** 46:19
**reason** 11:17 21:18 35:7 41:20
52:2 88:21 93:1
**reasonable** 59:15 73:20 75:24 76:
1 80:9 81:20 82:7
**reasonableness** 72:7,14,16 73:16
74:2
**reasonably** 33:3
**reasons** 60:16 72:17 73:25 77:14
79:6 80:24 82:10 86:5,25 88:23
89:8
**rebut** 91:25
**rebuttal** 91:13,24
**rebutting** 92:22
**recall** 16:1 33:6 44:1,25 45:2 53:1
**receive** 87:6
**received** 37:5 54:17 57:11
**recent** 21:6
**recently** 68:13
**recentness** 75:16
**Recess** 54:6 84:25
**reclaim** 35:9
**recognize** 22:23
**recollection** 13:8,22
**reconsider** 83:15
**reconvene** 54:4
**record** 4:2,5,7 25:23 26:10,17 27:
20 29:9,18 36:9 38:7 42:9,15 43:
11 53:8 55:15,15,22 56:14 60:21
62:14 63:6 71:24 76:5 79:11 80:
18,20,22 81:14,15 82:2 83:10,18,
24 84:9,24 85:2,5,21 86:1 87:1 88:
10 90:11,21 91:1,3 92:8 94:18,19,
21
**records** 50:12
**recovery** 69:21
**reduced** 30:11 87:22
**refer** 77:10 90:3
**reference** 37:20 87:12,13
**references** 21:25
**referring** 21:25
**refers** 68:18
**reflect** 4:5,10 36:9 62:14 83:18
85:5 90:21
**reflected** 14:10
**refuse** 26:23
**refusing** 38:7 42:16
**regard** 4:11 12:19 37:5,6,7 38:1
40:23 41:2 42:25 44:1 45:19,23
46:2 60:20 61:6,11,15,19 62:4,8
70:3 74:24 85:23 87:18 92:4 94:11
**regarding** 4:14 9:17 12:20 15:9
18:23 26:20 27:8,11,13 63:21 68:
12 72:7,14 82:14 86:18 87:4,19
**regardless** 60:9
**Registered** 1:24
**reinforces** 41:20
**rejected** 67:11
**related** 14:5 23:1 95:13
**relates** 14:24
**relating** 4:24 14:2 55:24 89:8
**relation** 13:3
**relationship** 71:14 72:2
**relative** 75:8 95:14
**relatively** 68:13
**release** 48:11
**relevant** 4:16 18:22 20:9 56:1 79:
2
**reliance** 59:15 61:15 81:23 82:7
**relied** 66:4
**relies** 66:11
**rely** 80:10
**relying** 66:10 68:5
**remains** 54:13
**remedies** 38:9
**remedy** 78:16,19,22
**remember** 18:9 30:22 52:18,22
77:5
**reminds** 76:16
**renters** 5:5 8:17
**repair** 4:21
**repairs** 11:8

**repeat** 28:19
**replacement** 41:3
**reply** 92:17
**reported** 36:5 66:8
**Reporter** 1:20,24 95:7,8,20
**reporting** 13:25
**reports** 21:24
**represent** 52:16
**representation** 42:20
**represented** 52:13,25 76:17
**representing** 37:22
**request** 23:19 70:14 71:13 73:6
88:16
**requested** 4:1 30:20 72:25 73:1
74:16 78:9,15 87:5,7,17 88:15 94:
20
**requesting** 90:24
**requests** 23:6
**require** 31:19 67:24 72:3
**required** 59:1,13 60:23 61:10 71:
18 74:5 89:18 91:12
**requirement** 7:20 11:14 65:23 67:
13,18,21,22 68:4,9 69:14,15
**requirements** 69:20,20 71:21
**reserve** 91:16 93:3
**reserved** 57:9
**resistance** 70:13 72:22
**resolved** 80:25
**respect** 5:3 6:14 14:3,17 23:12,19
26:19 54:23 58:2,2,5,21,22 59:10,
19,23 60:6,7 62:22 63:14 64:21
68:10 69:23,25 74:12 75:8 79:11
82:17 86:24 87:2 89:6,12 92:13
**respond** 14:4 60:18 92:12 94:1,10
**responded** 23:5
**response** 55:10 93:22
**rest** 15:13 31:10 34:6 35:23 80:12
91:18
**resume** 36:16 54:7
**retain** 5:7
**retry** 73:17
**return** 26:23
**returns** 5:4
**reversed** 24:9
**Reves** 64:2,9 65:8,21 66:4,13,15
67:10
**review** 83:22 85:9
**reviewed** 40:15
**rhino** 17:12
**Rich** 13:10,12,17
**Richard** 27:11
**RICO** 57:24 58:2,5,11,22,25 59:1
60:13,15,20 62:5 63:1,6,12,14 67:4
68:17 69:16
**right** 9:9 28:21,22 30:24 34:8 37:
11 49:16 50:21 51:4 53:3,9 84:24
92:3,23 93:3 94:3
**rigorous** 65:22 66:1
**Riley** 10:14 12:23 13:2 14:4,12 21:
21,22 22:16 28:9,24,25 29:14 31:
14,18 33:1,5,20 34:15,18 37:15,19,
24 40:6 41:9 53:8 54:21 55:20 56:
17 57:3,14,16,18 68:1 72:20,21 77:
16 82:1,3,25 83:14 86:8,9 88:9 90:
13 91:2 92:7,13,23 93:22,25 94:7,
14
**Riley's** 42:19
**rise** 68:19
**risks** 73:2,2
**ROBERT** 1:7 49:15 50:4,8
**role** 15:10
**roofs** 12:16 13:3,4,20,21 28:4 32:
15,17 58:19 59:22
**rule** 23:7 91:11
**ruling** 4:10,11 24:15 26:19 27:19
42:12 54:13 55:2,17 74:9 80:19,21
85:19
**rulings** 79:8

## S

**said** 10:3 11:17 12:16 17:15,25
28:18 61:16 63:22 77:23 79:10 80:
10 81:24 82:10 89:23 90:1,5 92:24
95:10,10
**sake** 9:23
**same** 6:10 22:14 40:7,21,24 54:13
59:20 69:17 71:24 77:6 88:23
**Sandbulte** 71:10 72:2
**satisfy** 67:13
**saw** 90:14
**say** 6:8,8 7:11 8:1 11:18,20,23 12:
24 13:15,17 17:7 19:4,13,16,18,19,
21 27:22 29:2 42:9 52:6,14 59:14

61:8 63:9 65:15 72:23 76:7 77:6,7
81:9,20 91:16 92:19
**saying** 8:1 9:6 11:6 14:18 22:16
36:1
**says** 4:12 15:18,19 18:12 20:5 22:
6 30:10 48:1,14 49:22,24 50:18
64:8 65:10 66:11 68:20 69:5,9 74:
14,14 79:15 81:12 87:19 89:21
**scheduled** 25:16,17
**scheduling** 33:20
**scheme** 13:14,19 20:7 62:9 64:24
65:1
**scope** 29:6 92:21
**se** 28:2
**second** 12:2 21:15 22:13 35:12
37:6 57:1 63:24 65:24 71:4,4 80:2
81:8 82:20 84:8 89:12
**Secondly** 22:5 72:25
**seconds** 62:13
**secret** 38:2
**Secretary** 10:23
**section** 65:9 69:7,8 90:16
**sections** 37:6
**see** 10:16 26:8 36:24 38:25 47:25
48:9,14 50:21,22 59:5 62:8 74:25
77:9 78:24 79:15,19 83:16 84:19
**seem** 14:1 73:12
**seems** 25:21 40:16 81:4
**seen** 7:5 81:3 90:25
**Seigel** 65:5
**selects** 68:8
**sending** 67:7
**sense** 17:13 80:12
**sent** 9:5 13:16 22:6,6 55:19
**sentences** 4:12
**Sentencing** 40:12,14
**separate** 55:16 60:6 85:24 92:5
94:12
**Sergeant** 8:14,15,18,21 10:4,15,
18,22 11:10,22 27:24 28:19,20 43:
12,20 46:6 51:21,24 52:3
**Sergeant's** 6:13 8:22 9:4,7 11:1
51:18
**service** 70:14
**services** 74:8,12
**set** 4:13 35:24 88:21 95:16
**sets** 68:18
**setting** 19:2 55:1 89:1
**settlement** 41:13 72:16 73:17,20
75:16 76:1
**settling** 74:3
**seven** 45:18,21,25
**seventh** 19:1
**several** 6:6 8:10 40:23 61:1 63:3
**Shanstrom** 13:10,12,15,24 14:2,5,
8,13,14,17 15:3,5,10,14,18,23 27:
12,13
**Shanstrom's** 15:21
**sheet** 22:12
**sheets** 21:10
**shocked** 25:6
**shop** 66:16
**short** 77:9
**shorten** 33:17
**Shorthand** 95:7,10,12,20
**shot** 24:9 33:24
**should** 57:6 62:14,25 63:13 75:21
77:3 83:18 85:16 86:6 89:5,11 90:
6
**show** 6:1,3 30:14 31:24 32:2 35:
21 36:23 47:6 50:20
**Showing** 48:9 49:8
**shows** 16:15 58:17
**side** 35:15 73:18 78:21
**sidebars** 72:12
**sign** 16:24,25 17:18 18:10,18 19:
4,6,21,22 20:5,8 43:23 51:7
**signature** 7:15,21,21 9:4 20:3,6,9
43:12,14 44:15:8,11 47:16 48:3,17
49:21 50:21
**signed** 19:9,22 20:7 43:12 51:18
**signing** 20:4 43:20
**signs** 6:13
**similar** 4:17,22,25 5:2,10 7:8,19,
23 8:2,7 10:10 11:5,13,14 12:4,7,
11 16:17 23:1 24:17,21 26:24 27:
5,14 31:16 54:20 59:8 69:15 76:18
**Similarly** 27:1 62:22 65:25
**simply** 11:2 24:6 25:14 30:17
**since** 26:5 30:12 33:7 42:8 59:6
65:16 92:23,24,25
**single** 49:15 68:1,2
**sir** 34:7 39:18,24 42:23 49:20 91:

5,6,8
**sits** 23:2
**sitting** 38:3
**situation** 6:13,24 16:4 59:3
**Six** 45:18 46:9 50:18
**skipped** 13:11 50:20
**slim** 22:4
**small** 20:20 23:15 65:9
**snags** 34:9
**so-called** 4:24 27:1 78:3
**sold** 28:5,10
**some** 7:2 11:5,6 12:10 13:25 14:7
15:6,20 17:8 18:11 20:2,5 21:25,
25 23:14,22 25:4,20 33:10 38:15
41:14 55:11 63:6 64:11 67:4 68:8
73:7 75:25,25 77:21 80:8,22 82:25
84:5 85:21 87:10 89:16 93:11,17,
18 94:12
**somebody** 6:21 7:12 10:8 16:7
18:2 19:12,16,24 23:2 47:21
**somehow** 10:5 11:1,10 41:23 78:
20 79:1
**someone** 6:9 7:12,14,16 16:9 18:
10 43:4 47:12
**someone's** 7:21
**someplace** 11:5 16:11
**something** 6:2 7:15 12:24 14:1
15:20 16:25 19:22 20:16,17 22:2,
9,11 30:10 35:24 40:7 43:11,12
78:20 80:16 81:5 90:1,5
**sometime** 33:8 90:23
**somewhat** 22:21
**sorry** 50:16
**sort** 5:7 11:6 12:2 13:24,25 32:22
41:20 51:24 52:9 56:23 64:1,11
65:9 76:15 82:24 84:5 94:12
**sound** 11:24 94:3
**sounds** 18:6 22:21 94:4,5
**Sparks** 16:24,24 17:17 25:1,17,24
52:9
**speaking** 17:14
**special** 69:8
**specific** 6:14 7:7 9:8 40:7 59:4
**Specifically** 6:15 14:6 66:2 67:11
71:6 74:14 75:2 77:7 82:21 93:9
**specified** 68:21,24 69:5,6,8
**speed** 41:11
**spell** 43:8
**spend** 13:19 33:17
**spent** 13:21 23:8 59:21 63:4
**spreadsheet** 30:14
**St** 63:8
**staff** 17:8,11,15,20
**stage** 20:17
**stamp** 6:9,15,21 7:12,16 8:22,23
9:4 43:3,4,6,21 44:5,12 45:2,5,7,20
51:10,15,16,16,20
**Stamped** 8:25
**stamps** 7:5 44:23 45:14
**stance** 8:9,10
**stand** 11:20 12:15 34:22 36:17 54:
8
**standard** 23:16 80:11
**standing** 6:23 29:4,11,21
**standpoint** 28:25
**start** 5:23 35:2 41:17 91:19
**started** 30:4 40:9
**starting** 35:16
**starts** 87:4
**State** 1:20 10:23 33:13 55:22 58:
16,23 63:2 68:11,14 69:12,13 71:
10 76:17 86:14
**stated** 68:5 89:8
**statement** 19:10,11 55:3
**statements** 13:23 89:2,16,17,19
**STATES** 1:1 38:11 40:11,12 64:2
**statute** 58:25 60:15 64:8 68:12,18
**statutory** 40:10
**Steiner** 66:6 67:5
**still** 8:10 30:5 31:12 36:17 38:22
81:2 83:2
**stipulated** 23:7
**stipulation** 26:10 61:12 72:14 81:
3
**stipulations** 76:11
**stole** 16:7
**stop** 91:20
**stores** 16:10
**straight** 39:6
**strategies** 42:6
**strategy** 41:6,18
**strict** 71:15
**strike** 64:7

**stuck** 18:4
**study** 84:23
**stuff** 10:25 18:11 23:7 35:25 84:19
**subject** 54:22 63:5 75:11
**submission** 59:4 86:3,15 88:20
87:7
**submit** 35:1 59:7 60:12 62:20 78:
16,22 81:11 87:17 88:5,7,11,25
**submitted** 9:20 10:22 14:19 23:
21,24 24:19 27:3 28:12 56:13 59:
18 62:25 63:13 66:17 70:12 77:23
79:25 82:5,16 87:15 90:10
**submitting** 63:20
**subparagraph** 68:8
**substance** 84:4
**substantial** 72:7 73:7,22,25 74:1
**such** 64:9 65:18 85:14 90:19
**sue** 8:21 52:4 78:20
**sufficiency** 73:6 74:2
**sufficient** 29:12 40:17 55:5 62:20
66:13 70:1 72:10 73:19 74:23
**suggest** 26:6 52:2
**suggested** 39:5 40:14 62:6
**suggestion** 9:21 57:5
**suggests** 64:19
**Suite** 2:5
**summary** 26:19 55:3 70:13,13 74:
76:19 80:25
**supervision** 95:11
**support** 17:25 47:8 67:20 70:12
93:23
**supporting** 84:21
**suppose** 18:16 92:3 93:11
**supposed** 45:14 74:11
**Supreme** 64:2 66:4 91:15
**sure** 1:18 18:7 19:16 25:15 27:19
28:17 36:25 44:17,19 45:24 46:1,3
48:4,8,23,25 49:12,19 50:6,19,25
51:6,9 52:15 53:5,12 56:17 60:24
88:12
**Surety** 63:19 66:19
**surprised** 75:10
**sustain** 86:15
**sustained** 41:19 69:24
**sympathetic** 67:15

---

# T

**table** 83:17
**take** 15:3 20:22 25:20 26:14 29:16
32:5 33:9 35:2 40:18 47:19 54:3,4,
20 57:1 62:13,17 82:8 84:1,13,17
85:10 88:24 93:7,13,15,20 94:8
**taken** 16:5 18:11 22:13 95:12
**taking** 58:6
**talk** 6:9 14:14 26:7 30:4 33:19 52:
6 68:9,16 83:25 92:14,15 94:15
**talked** 40:8 42:6 93:8
**talking** 6:11 7:9,18 10:6 12:15 14:
13 16:18 19:24 24:23 31:22 32:1
41:24 50:7,12 52:19 92:7 93:13
**talks** 66:9 69:4
**tax** 13:20 14:18
**taxing** 90:17,19
**tell** 6:16,18 16:6 29:8 43:16 47:7
48:10 50:13 51:23 52:9 53:3 79:14
80:2 93:14
**tells** 38:10 89:15
**ten** 40:20 46:4 80:1 84:22
**Ten-four** 91:21
**tenant** 11:6 16:6,12 22:19 37:7
**tenants** 9:2 12:17,19,21 13:6 16:5
20:21 23:16 26:21 52:4
**Tendrick's** 75:13
**Teri** 16:23,24 17:7,17,18,18 24:25,
25 25:17,24 52:9
**term** 78:4
**terms** 29:1,5 33:21 55:10 73:9 79:
18 80:3 83:2,5 93:2
**test** 65:12,12,20 66:14,15 67:10
**testified** 10:1
**testifies** 15:5,14
**testify** 14:8 17:7 19:15 21:23 26:
12,17 38:22 42:14 74:10 75:15
**testifying** 19:17 40:9
**testimony** 9:17 10:18 11:9,19 13:
2,8,23 15:9,21 18:8,17 21:16 24:
16,22 25:7,10 26:9,16 27:2,8,11
29:21 38:8,19 41:22,24 42:16,22,
24 52:20 54:10 59:18 71:7,20 72:
3,9 73:15 75:15 80:10 82:7,9 89:5
90:7,19
**Thank** 28:23 35:6 70:7 72:21 88:
18

that's 6:12 7:16 8:11,19 9:15 10:7,
15,22 11:5,14 12:2 14:16 15:19
16:4,13,16 17:4,20 18:15 19:10,13
20:5 21:6 22:16 26:23 27:9,22,25
28:22 29:22 32:15,17,24 34:11 35:
20 38:17 43:25 45:12,16,22 48:3,
17 50:13 51:3 61:17 65:1 68:5 68:
25 69:1,15 72:1 74:13,17 77:19
79:7 80:1,7,11 81:22 83:1 85:19,
24 86:7 92:3 94:14
**themselves** 24:10
**theoretically** 18:16,20 22:13 38:
21 75:12 92:4,6
**theory** 8:5 12 30:23 38:17 64:15
77:15,16,17 87:10 94:6
**there's** 7:22 8:20 10:4 11:5 13:24
18:23 20:2 21:14 22:8,12 23:11
27:20 29:2 34:13 40:12 47:13 49:
19 56:19 60:2 61:12,21 62:6 64:24
65:7 67:20 68:14 71:14,20,23 72:
1,6,14 73:21,25 74:1 75:25 77:24
79:21 80:13,21 81:12,19,25 82:8
84:22 93:17
**therefore** 6:2 9:20 10:9 12:8 26:
25 38:9 64:6 69:16,22 70:2 77:22
82:15 86:14 88:5,7 90:6,7
**they'll** 80:14
**they've** 23:23 24:9,10 85:9
**thing** 18:4 22:7,21 25:13 27:25 28:
1 35:19 56:23 59:4 75:6,7 77:6 80:
21 84:3 93:20 94:11
**things** 5:6 7:17 8:10 10:8,10 19:5
21:7 25:25 26:2 27:18,23 29:7 34:
22 41:11,24 42:5 94:12
**think** 8:2 9:25 10:4,7 11:13,22 12:
19 13:2,5 15:13,16 16:3,15,16 18:
24 20:3,10,16 21:20 22:2,25 23:13
24:15,16,21 25:7,8,18 26:13 27:9,
15,22 30:1,9,16 31:4 32:24 33:3,
21,21,23 34:13 36:12 38:23 40:8,
17 41:16 42:1 45:2 50:20 54:9 55:
3,14 57:2 59:15 60:22 61:8 62:15
65:1 67:19 68:16 69:1 70:15 71:22
73:25 75:14,17 76:18,25 77:1,7,11,
12,14 79:3,12 80:22,24 82:6,7,11,
18 83:7,13 84:6,17 85:15 88:4,10
90:16 92:6,14,15 93:10 94:12
**thinking** 5:2 6:17 25:13 34:3
**thinks** 24:5
**third** 12:22 27:3 32:18 35:9 52:14,
15 67:21 79:20,23
**Third-Party** 1:14 24:19 70:8 72:22
74:18,22 76:4 88:19 92:17,18 93:
23,25
**thirdly** 73:3
**those** 5:8,10,13 7:2 13:4 22:22 24:
1 26:1 27:4,7 30:12 31:20 33:13
34:21 37:14 40:2,16,24 56:15,24
60:8,8,16,22 67:15 72:17 80:13
82:11 83:22 85:9
**though** 31:10 35:25
**thought** 17:8 29:16 75:24 76:1 81:
21 90:20 92:2
**three** 34:24 35:8 63:1 69:23 82:22
84:19,20
**Throlson** 34:17,20,21 57:15 70:8,
20 71:6,16,22,25 72:17,25 73:3 74:
7,19,20 75:4,5,6 88:19 93:9,9
**throughout** 60:22
**throw** 10:8
**thrust** 10:7
**tied** 10:5
**ties** 71:24
**time** 4:18 5:1,11 6:3,7,10,23 9:21
10:19 12:5,7,11 17:6 22:10 24:22,
23,24 25:22 26:14,24 27:6 29:2
33:17 34:3 39:18,20,21 40:19 43:
16 51:14 56:16 57:18 60:3 63:5
65:14 67:25 80:7,8,15 83:19 84:1,
8,8 85:2 88:15 89:18,19 90:2,5,24
91:24 93:4 94:9,10 95:10
**times** 8:2 44:18 62:16
**title** 49:16
**today** 7:6 9:13 18:25 26:5 33:23
34:24 35:7,10 63:9 87:16
**together** 20:1 22:15 76:24 83:23
**told** 7:22 14:15 16:2,4 19:20 25:18
37:10 42:15 79:4,19 82:21 93:18
**tomorrow** 33:9,24,25 34:1 35:10,
21
**tonight** 33:9
**took** 21:10
**top** 76:10

totality 23:13
totally 72:15
track 91:19
trade 51:25
transcribed 36:6
transcript 95:12
transcription 95:11
transmission 22:7
treatises 63:6
treats 12:20
TRIAL 1:17 33:7 38:19 42:6 60:22
70:16 73:23 87:12 89:2,3,17,18,20
trick 81:19
tried 16:24 17:17,18 21:12 76:18,
23
trier 73:19
truck 70:14
true 16:16 18:14,18 21:14 38:17
41:6 73:18 75:9 77:20
try 9:11,16 15:4 17:5 20:24 26:3,4
35:10 38:24 39:1 41:7 60:19
trying 6:1,3 8:4 12:18 13:18 21:12
31:4 38:12,13 53:2 72:13 77:6
Tuesday 20:18,20 22:1 25:2 27:1
turn 19:6 69:18
turns 11:8 94:9
TV 83:16
twice 13:19
two 27:17 28:9 37:4 39:18 62:22
64:22 67:20 85:17 86:4 89:24 92:
11 94:12
type 16:17 59:17 70:25 71:9 84:3
typographical 84:2

## U

U.S 38:3 64:3
ultimately 17:22 58:17 59:21
un 69:4
unable 26:16
unclear 9:5 30:6
under 24:8 30:11,20 31:1,5 36:17,
20 41:22 57:25 59:5 60:2,15 65:13
67:16,22 68:19 69:13,17,21 70:15,
22 71:1,7,9,10 72:2,3 73:9 89:2
95:11
underlying 73:18
understand 7:25 8:3 11:16 23:22
29:14 31:5 33:1 39:22 75:7 76:15
77:15,17 80:21 86:2 93:20
understanding 5:5,14 30:8 37:13,
25 38:15,20 39:19
understands 90:14
understood 5:3 45:13 88:14
undertook 72:16
undisputed 58:17 70:24 71:16 79:
23,25 81:1,3
unduly 22:25 23:17
unemployment 17:22
unequivocally 10:1
unfair 38:4
uniform 84:18 89:13
UNITED 1:1 38:11 40:11,12 64:2
unlawful 7:17 68:20,22,24 69:5,5,
6,8
unless 10:12 11:1 20:2,4,9
unnecessary 23:8
until 12:25 15:5,14 35:22 42:10
54:6 73:4 84:25 87:9
up 8:22 9:11,14,25 12:15 13:14
16:3 20:15 25:20 29:7 31:4 35:16,
21,24 36:23 41:12,25 54:4,20 55:
19 62:17 91:11,22,23 93:10,19,24
upon 58:24 70:12 78:10
us 16:2 25:25 34:12 53:3 84:12
use 7:5 8:23 9:7 18:2 41:8 45:5,14
51:20 62:7 89:4
used 6:17,20,25 7:11,16,16 8:16,
23 9:1 27:21 43:3,21 44:5,10,23
45:7
using 6:9,22 11:21 22:14 45:20
51:15

## V

valuable 49:13
value 4:19 20:11 22:22 25:8,8 27:
15 42:2 60:7
variety 7:17
various 29:7 62:16
vehicle 63:21 70:22 71:1,6 93:7
94:2,11
verdict 57:21 59:11 60:17 69:23
70:3,9,22 72:6,23 76:3,8 79:13 81:

16 83:8 86:4,11,16,24 88:22,22 89:
8,10
verify 46:23
very 5:24 22:4,4 34:19 40:7,24 55:
20
viable 70:11
victim 68:2
victory 41:8
view 13:7 65:4 66:1 73:5 79:3 90:
18
viewing 62:18,23 74:21 82:12
violating 61:22
violation 69:3 76:10
violations 68:18
vital 66:25
void 59:25 60:5 61:20 76:13 78:19
80:4,7,15 81:10 83:1
voided 83:4 86:20 87:22,24 88:1,3
voiding 60:1,3,4 85:23
voids 30:25
VOIR 3:3 37:15,18
voluntarily 23:5
vs 1:6

## W

Wag 25:19
Waggoner 18:10,17 19:18 25:16,
21 52:7
wait 12:25 15:5,14 35:22 50:7
waiver 42:11
Walker 68:6
want 5:24 6:6 14:23 16:11 17:5
20:15 25:20,24 27:19 28:2 29:6,25
42:9,13 55:7 56:14 59:2 61:7 62:6
76:5 78:4 82:1 84:13 85:21 91:16
wanted 8:21 20:24 27:24 36:12
56:20 57:17 70:6 85:25 88:11,12
wanting 26:2
wasn't 18:18 53:4 61:17 87:7,8
waste 6:7 17:5
way 7:22 22:12 33:14 35:25 41:11
52:10 62:6 63:9 64:17 67:6,19 69:
2,17 72:22 75:7 86:9
ways 23:22 69:3
we'll 25:24 26:3,17 32:6 34:5,14,
21,25 35:2,6,12 54:4 83:23 84:9,16
92:15 94:6
we're 4:5 6:1,1,3,11 7:9,18 10:5
16:17 18:24 25:15 26:5,5 32:1 33:
25 34:3,16 35:7,11 38:9 54:9,10
70:18 76:9 77:23 82:19 85:5 86:1
90:24 91:9
week 34:10,11,14 35:1 42:22
weekend 33:14,15
weigh 75:20
weighs 12:19
weight 75:18
Well 8:14 11:19 13:11,17 15:8 16:
7 21:14,22 22:20 23:18 25:13 28:9
30:13 31:4,12 32:13 33:23 38:5,
17,22 41:19 42:8,13 47:1 54:25
55:13,20 56:11 62:16 64:7 65:12,
25 73:21 79:13,14 82:3 84:4,13
92:13 93:14
What's 8:13 12:22 15:22,24 19:1
29:11 32:8 37:3,13
whatever 24:15 27:12 78:4 79:5
91:23
WHEREOF 95:16
whether 5:19 6:20 7:8 12:11 14:
10 15:12,16,17 18:14 20:6,7 22:12
24:7 26:8 28:11 29:11 31:1 33:10
38:14 40:19 42:25 49:3 50:8,13
51:6 61:15 71:14 74:4 75:3,5 76:
13 79:6 80:7,14 82:20 90:1
white 20:23,24
whiteout 20:18 22:1 25:2 27:1
who's 19:17 44:4
whole 10:7 13:14 15:10 17:1,21
22:21 72:13 82:9 91:24 93:20
whom 8:16 93:16
will 4:10,22 5:22 6:12 8:8 15:3,11
20:18 24:22 27:2 29:22 34:6 35:9,
11,25 42:4 52:10 54:12,14 56:12,
13 57:8 61:23 62:13 65:9 69:23
70:3 80:22 81:11 82:16 84:24 88:7
90:7,9 91:11 92:24 93:11,22,23,24,
24,25 94:19
wilful 76:14
willing 18:3 22:23 29:16
Wilson 45:1,3,23 48:1 49:25 51:3
Wilson's 45:7,10 51:15
win 21:19 41:7

winking 52:10
winning 21:2
wish 9:8 60:18
withdraw 62:4
withdrawn 91:1
without 24:11 26:14 28:5 37:20
38:1
witness 9:12 36:17 37:16 41:17
54:8 74:5 89:22 90:1,5 95:16
witness' 89:19
witnesses 7:5,11 11:22
wonder 77:5
WOODWARD 2:11,11 29:25 30:1
57:15 70:5,7 76:8 83:15 88:17,18
91:7,8,25 92:21 93:14,24
Woodward's 94:1
word 64:10 92:19 94:3
words 6:11 19:6 21:1 24:3 26:10
53:24 56:2 71:9 78:17
work 14:7,9,15
worked 51:23
working 30:5
works 47:11
worms 41:25
worth 32:22
wouldn't 20:13 76:2 93:1
write 45:10
writing 48:17,22 49:21,24 50:24
51:3
written 48:19 51:21 56:6 88:8
wrong 10:14 24:8 30:24 63:7 77:
20
wrongful 4:14
wrote 21:11 22:14 53:24

## X

Xerox 23:3

## Y

year 18:4 39:25 40:4,20 59:5 61:1,
2 67:25 77:24 79:5 81:22
years 22:14 38:16 39:18 40:20 45:
18,18,21,25 46:4 51:13
yesterday 5:15 6:1 9:16 12:14 16:
4 23:9 53:14 87:9
yet 23:8 30:13
young 36:4 64:3,10