# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

      Plaintiff/Counterclaim
      Defendant,

vs.

ROBERT MIELL,

      Defendant/Counterclaimant.

------------------------------------------------

ROBERT MIELL,

      Third-Party Plaintiff,

vs.

BRETT THROLSON and
BRETT THROLSON AGENCY, INC.,

      Third-Party Defendants.

No. C04-0142

**RULING ON POST-TRIAL
MOTIONS**

----------------------

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. American Family's Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Miell's Third-Party Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV. MOTION FOR NEW TRIAL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Legal Standard on Motion for New Trial* . . . . . . . . . . . . . . . . . 5
    *B. Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          *1.*   *Did the Court Abuse its Discretion in Allowing Testimony of*
                *Other "Bad Acts?"*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          *2.*   *Did the Court Err in its Submission of the Punitive Damage*
                *Instruction?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V. MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR TO*
     *ALTER OR AMEND THE JUDGMENT.*. . . . . . . . . . . . . . . . . . . . . . . 15
     *A. Legal Standard to be Applied.*. . . . . . . . . . . . . . . . . . . . . . . . . . 16
          *1.*   *Motion for Judgment as a Matter of Law.* . . . . . . . . . . . . 16
          *2.*   *Motion to Alter or Amend Judgment*. . . . . . . . . . . . . . . . . 17
     *B. Discussion.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          *1.*   *Is Miell entitled to Judgment as a Matter of Law pursuant to*
                *Iowa Code Section 515.101?*. . . . . . . . . . . . . . . . . . . . . . 17
          *2.*   *Were the punitive damages awarded by the jury*
                *"unconstitutionally excessive?"*. . . . . . . . . . . . . . . . . . . . 22

*VI. MOTION FOR ATTORNEY FEES.*. . . . . . . . . . . . . . . . . . . . . . . . . 25

*VII. BILL OF COSTS.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*VIII. ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## I. INTRODUCTION

This matter comes before the Court on the Bill of Costs (docket number 163) filed by Plaintiff American Family Mutual Insurance Company ("American Family") on February 14, 2008; the Motion for New Trial (docket number 164) and Motion for Judgment as a Matter of Law and/or to Alter or Amend the Judgment (docket number 165), both filed by Defendant Robert Miell ("Miell") on February 14, 2008; and the Motion for Attorney Fees (docket number 166) filed by American Family on February 14, 2008. Pursuant to Local Rule 7.c, the Motions are deemed submitted without oral argument.

## II. PROCEDURAL HISTORY

On January 7, 2008, this matter came on for trial to a jury on the First Amended and Substituted Complaint (docket number 24) filed by American Family and the Third

Party Claim (docket number 26) filed by Miell. On January 15, 2008, the jury returned its verdict, finding that American Family was entitled to recover on its claims of breach of contract and fraudulent misrepresentation, and was also entitled to punitive damages. *See* Verdict Form (docket number 147). The jury further concluded that Miell was not entitled to recover against Third-Party Defendants Brett Throlson and Brett Throlson Agency, Inc. (collectively "Throlson"). *Id.* The pending post-trial motions followed.

## III. RELEVANT FACTS

### A. American Family's Complaint

Starting with one rental house in 1980, Miell acquired a real estate portfolio of approximately 1,000 rental units by the end of April 2006. According to a Stipulation introduced at the time of trial as Exhibit 231, Miell's properties were valued at $75 million to $80 million. The debt on the properties is approximately $28 million, and the parties stipulated that Miell's net worth "is in excess of $40 million, subject to capital gains taxes and depreciation recapture if his properties are sold."

On May 10, 2001, a hail storm damaged the roofs on many of the properties owned by Miell. At that time, the properties were insured by American Family for casualty losses, including hail damage. Between August and October 2001, American Family paid Miell the "actual cash value" for damage to 145 roofs. Miell subsequently submitted claims to American Family seeking additional payments pursuant to the "replacement cost" provisions of the policies. Miell admitted at the time of trial, however, that the roofs had not been repaired or replaced when he submitted the claims or cashed the checks subsequently received from American Family. The documentation submitted by Miell in support of his claims included phony repair bills by non-existent contractors and copies of checks which he purportedly paid to contractors, but which were never delivered.

American Family learned of Miell's fraudulent claims in 2004. Following an investigation, American Family notified Miell in a letter dated August 3, 2004, that the policies covering the subject properties were void as of 12:01 a.m. on May 10, 2001 (prior

to the hail storm), due to Miell's fraudulent claims. American Family then brought the instant action to recover the amounts previously paid and for other damages.

Following a trial, the jury found that American Family had sustained damages in the amount of $547,764.44 as a proximate result of Miell's breach of contract. *See* Verdict Form (docket number 147). The jury also concluded that American Family had proved its claim of fraudulent misrepresentation, and established damages in the amount of $339,100.78. *Id.* Finally, the jury awarded punitive damages against Miell in the amount of $1,017,332.30. *Id.* Pursuant to the jury's verdict, judgment was entered in favor of American Family and against Miell in the amount of $1,565,096.74.[1] *See* Order for Judgment (docket number 156).

### B. Miell's Third-Party Claim

In October 2001, Lisa Waggoner, while driving a pick-up truck owned by Miell and operated with his consent, was involved in a motor vehicle accident with Carrie Tendick. American Family provided liability insurance to Miell, with a policy limit of $100,000 per person.[2] Miell subsequently settled a lawsuit brought by Tendick and personally paid the settlement of $400,000. American Family tendered the policy limits to Miell.[3]

Throlson is an American Family insurance agent. In his third-party claim, Miell alleged that Throlson was negligent in failing to procure an umbrella insurance policy for Miell which would have provided excess liability coverage. That is, Miell claimed that

---

[1] The parties agreed that judgment should enter only for the larger of the two compensatory damage awards.

[2] Liability coverage on the motor vehicle was provided in a policy separate from the policies providing coverage to the rental properties.

[3] Prior to trial, the check tendered by American Family remained uncashed.

4

Throlson was negligent in failing to make sure that an umbrella policy covered Miell's motor vehicles.[4]

At the time of trial, the jury concluded that Miell had failed to prove that Brett Throlson was negligent. *See* Verdict Form (docket number 147). Accordingly, Miell's third-party claim was dismissed. *See* Order for Judgment (docket number 156).

## IV. MOTION FOR NEW TRIAL

Miell claims that he is entitled to a new trial, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59, for two reasons: first, Miell argues that the Court improperly admitted evidence of his other "bad acts," in violation of FEDERAL RULES OF EVIDENCE 403 and 404(b); and second, Miell argues that the Court erred in failing to submit a punitive damage instruction consistent with the Court's holding in *Philip Morris USA v. Williams*, ___ U.S. ___, 127 S. Ct. 1057 (2007).

### A. Legal Standard on Motion for New Trial

Following a jury trial, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The grant of a motion for a new trial is appropriate only if "the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice." *Murphy v. Missouri Dept. of Corrections*, 506 F.3d 1111, 1116 (8th Cir. 2007) (quoting *Jones v. TEK Industries, Inc.*, 319 F.3d 355, 358 (8th Cir. 2003)). *See also Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189, 1197 (8th Cir. 2001) ("A new trial is only appropriate if the verdict was against the great weight of the evidence so as to constitute a miscarriage of justice.").

---

[4] Count II of the third-party claim alleged that Miell was entitled to indemnification or contribution against Throlson for any judgment which may be entered in favor of American Family. That claim was dismissed by the Court, however, prior to trial. *See* Ruling on Third-Party Defendants' Motion for Summary Judgment (docket number 79).

## B. Discussion

### 1.    Did the Court Abuse its Discretion in Allowing Testimony of Other "Bad Acts?"

Miell argues that the Court abused its discretion in permitting American Family to offer evidence (1) that Miell falsified invoices in relation to tenants' damage deposits, (2) that Miell falsified leases and other documents in small claims actions with tenants, and (3) pertaining to J.J. McManus. Miell did not submit a transcript and, therefore, it is difficult to determine the precise nature of the objected testimony. Based on the Court's recollection, however, Miell accurately described the disputed evidence in his Brief in Support of Motion for New Trial:

> [T]his Court allowed the introduction of three categories of evidence: (1) evidence regarding damage deposit claims made by tenants in which Mr. Miell allegedly provided phony documents or false claims in order to improperly retain damage deposits; (2) evidence that Mr. Miell would allegedly alter or "whiteout" portions of documents, primarily leases, submitted in small claims court; and (3) testimony regarding J.J. McManus. Specifically, this Court found that these categories of evidence were admissible to prove Mr. Miell's "deceptive intent" and they were similar in kind and close in time to the events in the present case. Further, this Court found that their probative value outweighed their prejudicial effect.

Miell's Brief in Support of Motion for New Trial (docket number 164-2) at 3.

Generally, evidence of "other crimes, wrongs, or acts" is not admissible to prove a person's bad character, in order to show that he acted in conformity with that bad character. FED. R. EVID. 404(b). Evidence of other acts may be admissible for other purposes, however, such as showing the actor's intent. *Id.* The Eighth Circuit Court of Appeals has established a four-part test for determining admissibility of Rule 404(b) evidence.

> The evidence must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime;

> 3) supported by sufficient evidence; and 4) such that its
> potential prejudice does not substantially outweigh its
> probative value.

*United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002).[5] In the instant action, Miell admitted that he submitted false claims, supported by phony documentation, to secure "replacement cost" payments from American Family. Miell argued, however, that it was never his intent to defraud American Family. According to Miell, he intended to repair the roofs in the future, but believed that he was under a time restriction to submit claims to American Family.[6] Thus, Miell's intent -- one of the exceptions found in Rule 404(b) -- was an issue at the time of trial.

In order to recover on its claim of fraudulent misrepresentation, American Family was required to prove by a preponderance of clear, satisfactory, and convincing evidence, that "Miell intended to deceive American Family." *See* Final Jury Instructions (docket number 140), Instruction No. 7, ¶ 5. Accordingly, whether Miell intended to deceive American Family or was merely trying to meet a perceived filing deadline was a "material issue" at trial. If Miell previously made false claims or provided phony documents in an effort to obtain financial advantage, under circumstances where there was no perceived time constraints, then that fact would be relevant to his intent in the instant action.

At the time of trial, the Court considered the proffered evidence to determine whether it was similar in kind and close in time to Miell's submission of fraudulent claims to American Family. The Court concluded that some of the proffered testimony was

---

[5] In his Resistance to the Motion for New Trial, Throlson argues that "[b]ecause this is a civil case, this four-part test is inapplicable." Throlson does not, however, provide any authority for that argument. *See* Brief in Support of Throlson's Resistance (docket number 171-2) at 5. In *Berry v. Oswalt*, 143 F.3d 1127 (8th Cir. 1998), a civil case brought by a female inmate alleging that she was sexually assaulted by a correctional officer, the Court applied the four-part test to a Rule 404(b) issue. *Id.* at 1132 (citing *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992)).

[6] The Court notes, however, that the vast majority of roofs were not repaired or replaced until *after* American Family discovered Miell's fraudulent claims.

inadmissible under Rule 404(b).[7] The Court also concluded, however, that the preparation and submission of phony documents to support a claim for financial gain was similar in kind to the false claims and phony documents submitted by Miell to American Family. The Court further concluded that the wrongful events occurred within the same general time frame and, therefore, were "not overly remote in time."

The Court also concluded that the "prior bad acts" were supported by sufficient evidence. There was credible testimony that Miell prepared false documents to support his claims to retain tenants' damage deposits and altered documents to support his testimony in small claims court. In his brief, Miell seems to concede that the first three parts of the four-part test were met.[8]

Miell argues, however, that the Court abused its discretion in concluding that the potential prejudice of the 404(b) evidence did not substantially outweigh its probative

---

[7] This evidence was listed by American Family in its Resistance to the Motion for New Trial, as follows:

> (a) Evidence that Miell fraudulently notarized documents using the names and/or notary stamps of other persons (e.g., Cindi Peacock); (b) evidence that Miell used the name of imaginary person "R. Gordon Sargent," to defraud tenants; (c) evidence that Miell fraudulently used a credit card in the name of a non-existent brother, "John Miell"; (d) evidence that Miell misappropriated possessions of tenants by hiding them in a building called the "bat cave"; (e) evidence that Miell referred to his staff as "circus animals," and then tried to force one of his employees, Terri Sparks, to sign a fraudulent document stating that *she* had been the one who called them "circus animals."

American Family Mutual Insurance Company's Resistance to Miell's Motion for New Trial (docket number 183) at 10-11 (italics in original).

[8] According to his Brief, "Mr. Miell respectfully submits that this Court abused its discretion in applying the third part of the four-part test." *See* Brief in Support of Motion for New Trial (docket number 164-2) at 3. (It should be noted that the four parts of the test are in a different order in *United States v. Aranda*, 963 F.2d 211 (8th Cir. 1992), cited by Miell in his Brief.)

value. Not only is this balancing required for 404(b) evidence under the fourth prong of the four-part test set out in *Williams*, it is required of all relevant evidence pursuant to FEDERAL RULE OF CIVIL PROCEDURE 403. "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. "Though all Rule 404(b) evidence is inherently prejudicial, the test under Rule 403 is whether its probative value is *substantially* outweighed by the danger of *unfair* prejudice." *United States v. Cook*, 454 F.3d 938, 941 (8th Cir. 2006) (italics in original).

It was the Court's view at the time of trial -- and it remains the Court's view -- that the probative value of evidence relating to other false claims and phony documents prepared by Miell was not substantially outweighed by the danger of unfair prejudice. Rather, the evidence was highly probative to rebut Miell's claim that he had no intent to defraud American Family, but submitted the false claims and phony documents due to time constraints and with an innocent intent. While such evidence may have been prejudicial to Miell, it was not "unfairly" so.[9] The Court excluded other evidence which merely reflected poorly on Miell's character or behavior, but was not probative to a material issue in this case. The Court concludes that Miell is not entitled to a new trial on this ground.

## 2. Did the Court Err in its Submission of the Punitive Damage Instruction?

At the time of trial, the Court instructed the jury regarding punitive damages in Final Instruction No. 9. *See* Final Jury Instructions (docket number 140) at 12. The Instruction was similar to a punitive damage instruction requested by American Family prior to trial. *See* Proposed Jury Instructions (docket number 96) at 34-35. Miell did not submit a requested punitive damage instruction, nor did he object to the form of the

---

[9] Miell argues that even if evidence of other "bad acts" was relevant to the issue of whether he intended to defraud American Family, the evidence was not relevant to any issue pertaining to the third-party claim. Miell did not raise that argument at the time of trial, however, and did not request any limiting instruction. Notwithstanding the argument set forth in his Reply Brief, Miell could have requested that the Court submit a limiting instruction, without waiving his objection to the admissibility of the evidence.

9

instruction submitted by the Court at the time of trial. Miell now claims, however, that submission of Instruction No. 9 was "plain error."

Specifically, Miell argues that Instruction No. 9 fails to comply with the requirements set forth in *Philip Morris USA v. Williams*, ___ U.S. ___, 127 S. Ct. 1057 (2007). There, the widow of a man whose death was caused by smoking brought an action against Philip Morris, the manufacturer of Marlboro, the brand that her husband favored. An Oregon jury awarded compensatory damages of about $821,000 (about $21,000 economic and $800,000 non-economic) along with $79.5 million in punitive damages. 127 S. Ct. at 1061. The Oregon Supreme Court affirmed the verdict, rejecting Philip Morris' claim that the Constitution prohibits a jury "from using punitive damages to punish a defendant for harm to nonparties." *Id.* at 1062. The United States Supreme Court reversed.

> In our view, the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation.

*Id.* at 1063.

The Supreme Court agreed that the claimant was entitled to show harm to other victims because that evidence is relevant to the "reprehensibility" of the defendant's actions, "a different part of the punitive damages constitutional equation." *Id.* at 1063-1064. That is, "a plaintiff may show harm to others in order to demonstrate reprehensibility." *Id.* at 1064. While the jury may consider harm to others in measuring the reprehensibility of defendant's actions, however, "a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties." *Id.*

*Philip Morris* was decided on February 20, 2007. In June 2007, Iowa Uniform Jury Instruction No. 210.1 was amended to add a fourth factor to those which a jury may

consider in determining the amount of punitive damages. The four factors identified in the Uniform Instruction are:

1.  The nature of defendant's conduct that harmed the plaintiff.
2.  The amount of punitive damages which will punish and discourage like conduct by the defendant. You may consider the defendant's financial condition or ability to pay. You may not, however, award punitive damages solely because of the defendant's wealth or ability to pay.
3.  The plaintiff's actual damages. The amount awarded for punitive damages must be reasonably related to the amount of actual damages you award to the plaintiff.
4.  The existence and frequency of prior similar conduct. *If applicable, add*: although you may consider harm to others in determining the nature of defendant's conduct, you may not award punitive damages to punish the defendant for harm caused to others, or for out-of-state conduct that was lawful where it occurred, or for any conduct by the defendant that is not similar to the conduct which caused the harm to the plaintiff in this case.

*See* Brief in Support of Motion for New Trial, Exhibit 1 (docket number 164-3) (italics in original).

The punitive damage instruction submitted by the Court in this case (Final Instruction No. 9) included the first three factors set forth in Uniform Jury Instruction 210.1, but did not include the fourth factor. That is, the jury was not told that it could consider "[t]he existence and frequency of prior similar conduct." Neither was the jury instructed, however, that "[a]lthough you may consider harm to others in determining the nature of defendant's conduct, you may not award punitive damages to punish the defendant for harm caused to others." Miell argues that the failure to include the latter sentence constitutes plain error.

Generally, a party may preserve error in an instruction actually given by properly objecting to it. FED. R. CIV. P. 51(d)(1)(A). "Rule 51 makes it incumbent upon the

11

attorneys in a civil case to ascertain how the jury is to be instructed and to state any objections before the jury retires." *Phillips v. Parke, Davis & Co.*, 869 F.2d 407, 409 (8th Cir. 1989). In this case, Miell made no objection at the time of trial to the Court's submission of Instruction No. 9. Miell's failure to object to Instruction No. 9 therefore constitutes a waiver of any objection, unless submission of the Instruction constituted "plain error." *Niemiec v. Union Pacific Railroad Co.*, 449 F.3d 854, 857-858 (8th Cir. 2006) ("A party's failure to object to jury instructions results in a waiver of that objection, absent a showing of plain error."). "A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." FED. R. CIV. P. 51(d)(2). "Absent plain error, appellants must raise specific objections to the form or content of jury instructions, including special interrogatories, before the district court in order to preserve such matters for appeal." *Horstmyer v. Black & Decker, Inc.*, 151 F.3d 765, 770 (8th Cir. 1998).

Plain error is a stringently limited standard of review, especially in the civil context. *Wilson v. Brinker International, Inc.*, 382 F.3d 765, 771 (8th Cir. 2004) (citing *Horstmyer*). The Eighth Circuit Court of Appeals has "repeatedly emphasized the stringency of this standard." *Littrell v. Franklin*, 388 F.3d 578, 587 (8th Cir. 2004) (collecting cases).

To constitute plain error, (1) there must be an "error," which is a "deviation from a legal rule," (2) the error must be "plain," which "is synonymous with 'clear' or, equivalently 'obvious,'" (3) the party claiming plain error must demonstrate that the alleged error likely altered the outcome, and (4) the error "was sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." *Wilson*, 382 F.3d at 771; *Littrell*, 388 F.3d at 586 (citations omitted).

> "Any plain error exception to FED. R. CIV. P. 51 is confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." To require reversal, a plain error must result in a miscarriage of justice.

12

*Life Plus International v. Brown*, 317 F.3d 799, 805 (8th Cir. 2003) (citations omitted).

Miell argues that the punitive damages instruction submitted in this case "improperly permitted the jury to consider those 'bad acts' aimed at non-parties in assessing the amount of punitive damages." *See* Brief in Support of Motion for New Trial (docket number 164-2) at 5. American Family argues, on the other hand, that none of the four requirements necessary to establish plain error are met in this case.

First, American Family argues that *Philip Morris* is distinguishable on its facts. In that case, plaintiff's decedent was one of thousands of persons who have died as a result of smoking. Philip Morris' conduct was not directed specifically at the plaintiff's decedent, but instead was directed at consumers of cigarettes, all of whom (with the exception of plaintiff's decedent) were non-parties. In addition, plaintiff's counsel specifically asked the jury to "think about how many other Jesse Williams in the last 40 years in the State of Oregon there have been." In the instant action, however, Miell's fraud was specifically directed at American Family.[10] Testimony and argument regarding Miell's other fraudulent activity was limited.[11]

---

[10] When asked in Question Number 7 of the Verdict Form "[w]as the conduct of Robert Miell directed specifically at American Family Mutual Insurance Company," the jury answered "Yes." *See* Verdict Form (docket number 147) at 3.

[11] In its rebuttal argument, American Family refers to Miell's other fraudulent actions.

> Let's talk about another failure to address evidence. Teri Sparks came in here and sat right over there and she testified to you about how Mr. Miell deals with the justice system on a day-to-day basis with the tenants. Remember the tenants. They're supposedly the reason Mr. Miell wanted to fix these roofs; at least part of it. You heard about how he stands at the photo copier and alters documents when he's getting ready to go into court. That's how -- that's how Mr. Miell deals with the justice system week in, week out. And it's called white out Tuesday. And Ms. Sparks said -- well, she couldn't

(continued...)

13

The Court in *Philip Morris* recognized the "practical problem" in attempting to determine "whether a jury, in taking account of harm caused others under the rubric of reprehensibility, also seeks to *punish* the defendant for having caused injury to others." 127 S. Ct. at 1065. The Court's "answer" to that problem is that

> where the risk of that misunderstanding is a significant one --
> because, for instance, of the sort of evidence that was
> introduced at trial or the kinds of argument the plaintiff made
> to the jury -- a court, **upon request**, must protect against that
> risk.

*Id*. (emphasis added).

Turning to the facts in the instant action, the Court concludes that there was not a "significant risk" that the jury would go beyond considering the harm caused to others in determining the reprehensibility of Miell's conduct, and instead seek to punish him for his other fraudulent activity. Unlike the circumstances in *Philip Morris*, the harm caused to nonparties played only a minor role in "the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jury." Even if the risk was a significant

---

[11](...continued)

> remember whether she had made that up or just heard it, but
> there was not doubt in her mind about white out Tuesday.
>
> And the question today on this Monday is whether or
> not Mr. Miell can continue to manipulate the justice system;
> continue to throw up smoke screens; continue to pervert justice
> or not. And what I would like to say to you is that I think a
> new day should dawn. We can call it verdict Monday, or if
> you wait until tomorrow, we'll call it verdict Tuesday. And in
> that verdict, what I'm asking you to do is stand up for truth
> and stand up for justice and to send a message; send a message
> that white out Tuesday, that's not going to work here. Not on
> your watch. Not on your watch as jurors. You're going to
> see through -- see the truth and speak the truth in your verdict.
> Thank you very much.

*See* Supplement in Support of Motion for New Trial, Exhibit 3 (docket number 210-2) at 2-3.

one, however, the Court in *Philip Morris* held that "a court, upon request, must protect against that risk." Here, Miell made no such request.

Absent a request by Miell, the Court concludes that it was not error to omit from the punitive damages instruction the sentence which provides that "although you may consider a harm to others in determining the nature of Defendant's conduct, you may not award punitive damages to punish the Defendant for harm caused to others." Furthermore, the error, if any, could not be considered "clear" or "obvious." Moreover, Miell has completely failed to demonstrate that the failure to include the additional sentence "likely altered the outcome"[12] or that it was sufficiently fundamental "to threaten the fairness or integrity or public reputation of the judicial proceeding." *Wilson*, 382 F.3d at 771; *Littrell*, 388 F.3d at 587 (both quoting *Gray v. Genlyte Group, Inc.*, 289 F.3d 128, 134 (1st Cir. 2002)).

The grant of a motion for a new trial is appropriate only if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice. *Murphy*, 506 F.3d at 1116; *Jones*, 319 F.3d at 358. The jury's verdict in this case, including its award of punitive damages, is supported by substantial evidence. The Court cannot say that the verdict constitutes a miscarriage of justice and, therefore, the Court concludes that Miell is not entitled to a new trial.

## V. MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR TO ALTER OR AMEND THE JUDGMENT

Next, Miell requests that the Court grant judgment in his favor as a matter of law, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 50. According to Miell, American Family's recovery is prohibited by Iowa Code § 515.101. In the alternative, Miell

---

[12] Significantly, the amount of punitive damages awarded by the jury ($1,017,332.30) is almost precisely three times the amount of compensatory damages found by the jury to be caused by Miell's fraudulent misrepresentations ($339,100.78). *See* Verdict Form (docket number 147), pp. 2-3. This suggests that the punitive damages awarded by the jury were directly related to the compensatory damages suffered by American Family, and were not related to harm caused by Miell to others.

requests that the Court alter or amend the judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59(e). Miell argues that the punitive damages awarded by the jury are "unconstitutionally excessive."

## A. Legal Standard to be Applied

### 1. Motion for Judgment as a Matter of Law

At the conclusion of the evidence, the Court may grant judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). Rule 50(b) permits the movant to file a renewed motion for judgment as a matter of law not later than ten days after the entry of judgment.[13] If a motion for judgment as a matter of law under Rule 50(a) is not granted, then "the court is considered to have submitted the action to the jury subject to the court's later *deciding the legal questions raised by the motion.*" FED. R. CIV. P. 50(b) (emphasis added). "Consequently, a party cannot assert a ground in a motion for judgment notwithstanding the verdict that was not previously asserted in the party's motion for directed verdict." *Lowe v. Conlee*, 742 F.2d 1140, 1141 (8th Cir. 1984).

In considering a post-trial motion for judgment as a matter of law, the Court draws "all reasonable inferences in favor of the nonmoving party, and does not make credibility determinations or weigh the evidence." *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (quoting *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 896 (8th Cir. 2002)). "A jury verdict will not be set aside unless 'there is a complete absence of probative facts to support the verdict.'" *Id.* (quoting *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 634 (8th Cir. 1998)). This standard accords the jury's verdict substantial deference, but the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the disputed facts.'" *Top*

---

[13] Such a motion filed post-trial is often referred to as a motion for judgment notwithstanding the verdict. The preferred terminology, however, is "judgment as a matter of law." *Douglas County Bank & Trust Co. v. United Financial*, 207 F.3d 473, 476 at n.3 (8th Cir. 2000).

*of Iowa Co-op v. Schewe*, 149 F. Supp. 2d 709, 716 (N.D. Iowa 2001) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994) and *McAnally v. Gildersleeve*, 16 F.3d 1493, 1500 (8th Cir. 1994)).

## 2. Motion to Alter or Amend Judgment

The Court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59(e) motions serve a limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.*

## B. Discussion

## 1. Is Miell entitled to Judgment as a Matter of Law pursuant to Iowa Code Section 515.101?

In his instant Rule 50(b) Motion for Judgment as a Matter of Law, Miell argues, for the first time, that American Family's recovery is prohibited by Iowa Code Section 515.101. Miell did not raise the issue in his pleadings, did not identify the issue in the parties' proposed Final Pretrial Order, did not make any reference to Section 515.101 in his Trial Brief, did not raise the issue in his Rule 50(a) Motion for Judgment as a Matter of Law, and did not submit a requested jury instruction or object to the Court's instructions on that basis. Rather, in the instant post-trial Motion, Miell claims for the first time that Section 515.101 bars American Family's recovery.

Miell now argues that his submission of fraudulent claims to American Family does not prevent his recovery on the insurance policies because his violation of the anti-fraud provisions of the policy did not contribute to the loss. In support of his argument, Miell relies on Iowa Code Section 515.101, which provides:

17

> Any condition or stipulation in an application, policy, or
> contract of insurance making the policy void before the loss
> occurs shall not prevent recovery on the policy by the insured,
> if the plaintiff shows that the failure to observe such provision
> or the violation thereof did not contribute to the loss.

Iowa Code Section 515.101.[14]   American Family argues that Section 515.101 is
inapplicable to this case and, in any event, was waived by Miell as a consequence of his
failure to raise the issue until after the trial.

On December 21, 2007, the Court adopted an extensive Final Pretrial Order (docket
number 110) submitted by the parties and approved by counsel. Part IV of the Order
identifies "evidentiary and other legal issues." Miell identified seven issues, none of
which are remotely related to his instant claim. *See* Final Pretrial Order (docket number
110) at 20. Miell now argues that the issue was adequately raised by American Family's
general claim for damages.[15]

In federal court, the Final Pretrial Order "controls the course of the action."
FED. R. CIV. P. 16(d). "Accordingly, a party may not 'offer evidence or advance theories
at the trial which are not included in the order or which contradict its terms.'" *El-Hakem
v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005) (quoting *United States v. First Nat'l
Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981)). *See also Wilson v. Muckala*, 303
F.3d 1207, 1215 (10th Cir. 2002) (same), and *Valley Ranch Development Co., Ltd. v.
Federal Deposit Ins. Corp.*, 960 F.2d 550, 554 (5th Cir. 1992) ("If a claim or issue is
omitted from the order, it is waived.").[16]

---

[14] In 2007, Section 515.101 was combined with Sections 515.102, 515.105, and
515.106, and is now enumerated Section 515.101(1). *See* Iowa Acts 2007 (82 G.A.)
Ch. 152.

[15] *See* Reply Brief (docket number 193) at 9.

[16] At least one court has suggested that an untimely assertion of a new legal theory
is properly classified as a "forfeiture," rather than a "waiver," because "forfeiture is the
(continued...)

18

The Court concludes that by failing to raise the issue in the Final Pretrial Order, Miell has waived or forfeited his right to raise the issue for the first time in a post-trial Rule 50(b) motion for judgment as a matter of law.

> In order for a pretrial order to have any value as a procedural mechanism and to protect against the possibility of either of the parties being taken by surprise at trial, the parties must be held to the issues set forth in that order. Therefore, this court has consistently enforced a strict rule of forfeiture in a situation where a party seeks to introduce a new legal theory to the litigation after the pretrial order has issued.

*Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005).

Not only was the issue not raised in the Final Pretrial Order, Miell failed to raise the issue at any time during the trial. Neither Plaintiff nor the Court were advised that Miell believed that since his fraudulent claims did not contribute to the loss, he was nonetheless entitled to recover under the insurance policies. At the conclusion of the evidence, Miell's counsel[17] moved for a directed verdict on the contract claim. The entirety of the argument is set forth below:

> With respect to the contract claim, we believe that the Plaintiff has failed to establish an evidentiary basis to void the policies. Further, in the event that they have provided evidence to provide a basis for voiding the policies, that there's insufficient evidence under the policies as to the effect of the voiding or the time in which the voiding would be effective. Furthermore, we believe that there is no basis to void the contract with respect to the separate and discrete claim for actual cash value which was -- or with respect to the costs associated with adjusting that claim because those payments

---

[16](...continued)

failure to make the timely assertion of a right, while waiver is the intentional relinquishment or abandonment of a known right." *Harper v. Albert*, 400 F.3d 1052, 1062-63 (7th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725 (1993)).

[17] Miell's attorney for his post-trial motions is not the same attorney who represented him at the time of trial.

> and those costs would have been paid regardless of anything
> alleged to have been done by the Defendant.

*See* Exhibit 3 attached to Brief in Support of Motion for Judgment as a Matter of Law
(docket number 165-3), Trial Tr. 59:23-60:10.

A Rule 50(a) motion for judgment as a matter of law "must be sufficiently specific
so as to apprise the district court of the grounds relied on in support of the motion."
*Conseco Finance Servicing Corp. v. North American Mortgage Co.,* 381 F.3d 811, 821
(8th Cir. 2004). As set forth above, Miell's motion for directed verdict failed to alert the
Court that he believed American Family's recovery was barred by Iowa Code Section
515.101. By failing to raise the issue in his motion for directed verdict, Miell is precluded
from raising the issue in a motion for judgment notwithstanding the verdict.

> The grounds for the renewed motion under Rule 50(b) are
> limited to those asserted in the earlier Rule 50(a) motion.
> (citation omitted) In other words, the movant cannot use a
> Rule 50(b) motion "as a vehicle to introduce a legal theory not
> distinctly articulated in its close-of-evidence motion for a
> directed verdict."

*Id. (quoting Zachar v. Lee,* 363 F.3d 70 (1st Cir. 2004)).

In summary, by failing to raise the issue in the Final Pretrial Order or in his Rule
50(a) motion for directed verdict, Miell is precluded from raising the issue for the first
time in a Rule 50(b) motion for judgment notwithstanding the verdict.[18] Since Miell
waived or forfeited his right to raise the issue, the Court finds it unnecessary to determine

---

[18] Plaintiff also argues that since Iowa Code Section 515.101 requires the insured
to "show" that the contract violation did not contribute to the loss, Miell was required to
plead the issue as an affirmative defense. Given the Court's conclusions on the effect of
Miell's failure to raise the issue in the pretrial order or in his Rule 50(a) motion, however,
the Court finds it unnecessary to address the issue of whether it is an affirmative defense
which must be pleaded or waived.

whether Miell would be entitled to recover on the insurance policies, despite his submission of fraudulent claims, due to the operation of Section 515.101.[19]

Miell also complains that the Court improperly submitted certain compensatory damages to the jury. In particular, Miell argues that "there is nothing in the policies or in the law" which would allow American Family to recover adjustment expenses and investigation expenses. While the Court will not review the evidence in detail, there was clearly a sufficient evidentiary basis for a reasonable jury to conclude that Miell violated the anti-fraud provision of the policy. Indeed, at the time of trial Miell admitted breaching the contracts of insurance.[20] Pursuant to the terms of the insurance contract, the "entire policy is void" as a consequence of Miell's fraudulent actions.[21] Miell did not move for

---

[19] The Court notes parenthetically that in *Webb v. American Family Mutual Ins. Co.*, 493 N.W.2d 808 (Iowa 1992), the Iowa Supreme Court concluded that if material misrepresentations are made with the intent to defraud, the "fraud clause" would void the policy. *Id.* at 811. The Iowa Supreme Court adopted the reasoning of the Washington Supreme Court:

> The rationale behind these decisions is that "the insured should be penalized for the willfulness of his conduct regardless of the fact that the insurer would not have been required to pay any greater amount had the falsity not been demonstrated."
>
> [The insured] contends that the fraud was immaterial because his fraud did not prejudice [the insurer] since it bore no risk of additional loss. We do not find this argument persuasive. Insurance companies rely on insureds honestly filling out inventory lists of destroyed property. Dishonesty by insureds cannot be ignored.

*Id.* at 812 (citing *Mutual Enumclaw Ins. Co. v. Cox*, 757 P.2d 499 (1988)). As noted by Miell in his brief, however, *Webb* does not contain any discussion regarding Iowa Code Section 515.101.

[20] The relevant trial testimony is set forth in the Court's Ruling on Motion for Summary Judgment, filed contemporaneously with the instant ruling, and will not be repeated here.

[21] The "fraud clause" of the insurance contracts may be found in the parties'
(continued...)

judgment as a matter of law on the disputed damages at the close of the evidence and did not object to the Court's jury instructions on that ground.[22] Accordingly, he cannot raise the issue in the instant post-trial motion. *See Conseco*, 381 F.3d at 821 (a party cannot raise an issue in a Rule 50(b) motion unless it was first raised in his Rule 50(a) motion) and *Niemiec*, 449 F.3d at 857-858 ("a party's failure to object to jury instructions results in a waiver of that objection, absent a showing of plain error.").

## 2. Were the punitive damages awarded by the jury "unconstitutionally excessive?"

Finally, Miell argues that the punitive damages awarded by the jury were unconstitutionally excessive. The jury found that American Family sustained $547,764.44 in actual damages as a proximate result of Miell's breach of contract. *See* Verdict Form (docket number 147). The jury also found actual damages in the amount of $339,100.78 as a proximate result of Miell's fraudulent misrepresentation.[23] *Id.* Finally, the jury found that punitive damages were appropriate in the amount of $1,017,332.30. *Id.* American Family argues that the punitive damages awarded by the jury fall well within the limits dictated by the due process clause of the United States Constitution.

The general principles to be applied by the Court are found in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). There, a jury returned a verdict finding

---

[21] (...continued)
Stipulation, Trial Exhibit 231, ¶ 24.

[22] The only specific objection made by Miell to the Court's instructions was as follows:

> We would also object to that portion of the final Instruction No. 6 regarding measure of damages on the grounds that it fails to give the jury the opportunity to consider the issue of when the policy was voided and the consequence of that.

*See* Exhibit 3 attached to Brief in Support of Motion for Judgment as a Matter of Law (docket number 165-3), Trial Tr. 86:17-21.

[23] By agreement of the parties, judgment entered for compensatory damages in the larger amount only. *See* Order for Judgment (docket number 156).

BMW liable for compensatory damages of $4,000 and assessing $4 million in punitive damages. The state appellate court reduced the punitive damage award to $2 million. In concluding that the punitive damages violated the due process clause of the Fourteenth Amendment, the United States Supreme Court identified three "guideposts" in determining whether punitive damages are unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award (*i.e.*, the "ratio" between compensatory and punitive damages); and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 575. The Court confirmed its prior view that it could not "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case," citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), but concluded that "the grossly excessive award imposed in this case transcends the constitutional limit." *Id.* at 583 and 585-86.

The Court reached a similar conclusion in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). In that case, a jury found compensatory damages of $2.6 million and awarded punitive damages of $145 million. The trial court reduced the awards to $1 million and $25 million respectively. The state appellate court, however, reinstated the $145 million punitive damages award. Finding that "this case is neither close nor difficult," the United States Supreme Court concluded that the punitive damage award violated the due process clause of the Fourteenth Amendment. *Id.* at 418.

Reviewing the three guideposts set out in *Gore*, the Court in *State Farm* noted that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 419 (quoting *Gore*, 517 U.S. at 575). The Court identified five factors to be considered by the courts in determining the reprehensibility of a defendant's actions: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a

23

reckless disregard of the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Id.* (citing *Gore*, 517 U.S. 576-577).

Again, the Court declined to impose a "bright-line ratio which a punitive damages award cannot exceed." *Id.* at 425. Nonetheless, the Court opined that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* The Court noted that in upholding a punitive damages award in *Haslip*, it "concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* "Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 (referencing *Gore*) or, in this case, of 145 to 1." *Id.*

Turning to the facts in the instant action, the first three "reprehensibility" factors enumerated in *State Farm* weigh in favor of Miell. That is, the harm caused to American Family was economic, rather than physical; Miell's wrongful conduct did not evince an indifference to or a reckless disregard for the health or safety of others; and there is no evidence that American Family suffers from financial vulnerability. The Fourth and Fifth factors, however, weigh in American Family's favor. That is, Miell engaged in repeated fraudulent activity over a substantial period of time. He submitted 145 fraudulent claims in 16 batches over the course of a full year.[24] His actions involved substantial "trickery," including submission of phony repair bills by non-existent contractors, and copies of checks which he purportedly paid to contractors, but which were never delivered.

Similarly, in *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820 (8th Cir. 2005), the first three reprehensibility factors weighed in the defendant's favor, while the last two reprehensibility factors weighed on plaintiff's side. *Id.* at 839. The Court

---

[24] *See* Trial Exhibit 208.

concluded that a punitive damage award of $2.6 million -- representing a four-to-one ratio between the punitive and compensatory awards -- did not exceed constitutional limits. *Id.* ("The punitive damage award is not doomed, however, simply because some factors weigh in the defendant's favor."). *See also Eden Electrical, Ltd. v. Amana Co.*, 370 F.3d 824, 829 (8th Cir. 2004) (concluding that "the ratio of slightly more than 4.5:1 does not offend due process and that the award appropriately furthers the state's twin goals of punishment and deterrence.").

The Court cannot say that the punitive damages found by the jury violate the due process clause of the Fourteenth Amendment. Miell's fraud was deliberate and repeated. It required planning and a clear intention to deceive. The ratio between the punitive damages awarded and compensatory damages is approximately 1.85 to 1, well within the single-digit limit suggested by *State Farm* and below the ratios found constitutionally valid in *Diesel Machinery* and *Eden Electrical*.

It should be noted that the United States Supreme Court recently addressed the award of punitive damages in maritime law in *Exxon Shipping Co. v. Baker*, ___ U.S. ___, 2008 WL 2511219 (decided June 25, 2008). In determining federal maritime common law, the Court concluded that punitive damages should not exceed the compensatory damages awarded. The Court made it clear, however, that its inquiry involved "reviewing a jury award for conformity with maritime law, rather than the outer limit allowed by due process." *Id.* at *16. That is, the Court did *not* conclude that the Constitution prohibits a punitive damage award greater than the amount awarded for compensatory damages, and cited with approval its prior holdings in *Gore* and *State Farm*. *Id.*

## VI. MOTION FOR ATTORNEY FEES

American Family asks that it be awarded "common law attorney fees," citing *Williams v. Van Sickel*, 659 N.W,2d 572 (Iowa 2003), and *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153 (Iowa 1993). Miell notes that no

statute or contract authorizes attorney fees in this case, and argues that common law attorney fees are not warranted.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). This "American Rule" is recognized in Iowa. *Miler v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006) ("Generally, attorney fees are recoverable only by statute or under a contract."). There is a "rare exception" to this general rule, however, "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hockenberg*, 510 N.W.2d at 158 (quoting *Alyeska Pipeline*, 421 U.S. at 258-59).

The standard for awarding common law attorney fees is distinct from, and greater than, the standard for awarding punitive damages.

> [A] plaintiff seeking common law attorney fees must prove that the culpability of the defendant's conduct exceeds the "willful and wanton disregard for the rights of another"; such conduct must rise to the level of oppression or connivance to harass or injure another.

*Hockenberg*, 510 N.W.2d at 159-160.

> "Oppressive" conduct "denotes conduct that is difficult to bear, harsh, tyrannical, or cruel." "Connivance" is defined as "voluntary blindness or an intentional failure to discover or prevent the wrong." "These terms envision conduct that is intentional and likely to be aggravated by cruel and tyrannical motives. Such conduct lies far beyond a showing of mere 'lack of care' or 'disregard for the rights of another.'"

*Williams*, 659 N.W.2d at 579 (quoting *Hockenberg*).

In support of its claim, American Family sets forth a laundry list of Miell's wrongdoing. In response, Miell argues that in determining whether common law attorney fees should be awarded, the Court must consider only those actions which occurred during the conduct of the litigation, and must disregard Miell's prior fraudulent activity. *See, e.g., Kelly v. Golden*, 352 F.3d 344, 352 (8th Cir. 2003) ("the power to award fees is

26

exercisable only with respect to conduct occurring during the litigation, not conduct that gave rise to the cause of action."). The Court finds it unnecessary, however, to resolve this dispute. Even if the Court considers Miell's pre-litigation actions, this case does not rise to the standard of proof set forth in *Hockenberg* and *Williams*, and does not qualify as "a rare exception" to the American Rule. Therefore, American Family's Motion for Attorney Fees will be denied.

## *VII. BILL OF COSTS*

Finally, the parties dispute the appropriate costs which are assessable in this case. Following trial, American Family filed a Bill of Costs (docket number 163), totaling $6,287.57. The claimed costs are itemized by American Family as follows:

| | | |
|---|---|---|
| 1 | Filing Fee | $150.00 |
| 2 | Service of Summons and Complaint | 120.00 |
| 3 | Service of Subpoena on Terry Sparks | 150.00 |
| 4 | Service of Subpoena on Lisa Waggoner | 150.00 |
| 5 | Service of Subpoena on Rich Shanstrom | 150.00 |
| 6 | Service of Subpoena on John Nau | 101.50 |
| 7 | Deposition of Cindi Peacock and Miell | 1,615.50 |
| 8 | Deposition of Miell | 1,110.15 |
| 9 | Deposition of Jennifer Gideon | 350.52 |
| 10 | Copying of documents | 994.83 |
| 11 | Copying of documents | 708.76 |
| 12 | Copying documents | 61.20 |
| 13 | Witness fee of Rich Shanstrom | 41.89 |
| 14 | Witness fee of Terry Sparks | 44.16 |
| 15 | Witness fee of Lisa Waggoner | 43.85 |

| 16 | Witness fee of John Nau | 172.71 |
| 17 | Video deposition of Jennifer Gideon | 322.50 |
| | TOTAL | $6,287.57 |

With the exception of the filing fee (item number 1) and the witness fees (items 13-16), Miell objects to all of the other requested costs.

Initially, Miell objects to taxing the cost of serving the summons and complaint (item 2 above) and the cost of serving subpoenaes on trial witnesses (items 3-6 above). Miell argues that these costs are allowed only if the documents are served by the United States Marshal, citing *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985). While arguing that the "modern trend" is to permit the recovery of private process server fees, American Family acknowledges that *Crues* is controlling in the Eighth Circuit and it "concedes that this District Court must deny the private service costs in this case." (*See* American Family's Reply (docket number 185) at 6.) Accordingly, the Court finds that items 2-6 above are not properly taxed as costs to be paid by Miell.

Next, Miell objects to the costs associated with the depositions of himself and Cindi Peacock (items 7 and 8 above). Miell argues that the depositions "were investigative in nature" and were not used significantly at the time of trial. In response, American Family argues that the costs are recoverable if the deposition transcript was "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(2). Even if a deposition is not introduced at trial, a district court has discretion to award costs if the deposition was "necessarily obtained for use in a case" and was not "purely investigative." *Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). Clearly, the deposition of Miell was "necessarily obtained for use in the case" and the costs are recoverable pursuant to § 1920(2). On the other hand, the Court concludes that the deposition of Cindi Peacock was investigative in nature and, therefore, the costs associated with that deposition are not recoverable.

Unfortunately, the bill submitted by the court reporter for the depositions of Cindi Peacock and Robert Miell, taken April 26-27, 2006, was not itemized. (*See* Bill of Costs (docket number 163) at 11.) The court reporter charged $270 for a "reporting fee" of 9 hours, $1,311 for an expedited original transcript, and $34.50 for Federal Express.[25] Since the Court is unable to determine what portion of the total cost of $1,615.50 is attributable to Miell's deposition on April 26-27, 2006, and what portion is attributable to Ms. Peacock's deposition, the Court finds that charge (item number 7 above) is not recoverable as costs.

Miell also argues that American Family cannot recover both the cost of a transcript of Jennifer Gideon's deposition (item number 9 above) and a video copy of that deposition (item number 17 above). Due to her pregnancy, Jennifer Gideon could not attend the trial and her videotaped deposition was shown to the jury. A transcript of the testimony was used by counsel to lodge objections. The Court concludes that both the transcript and the video were necessarily obtained for use in the case and, therefore, are properly taxed as costs. *Brown v. The McGraw-Hill Companies, Inc.*, 526 F. Supp. 2d 950, 958 (N.D. Iowa 2007).

Finally, Miell objects to American Family's claims for printing costs, totaling $1,764.79 (items 10-12 above). FEDERAL RULE OF CIVIL PROCEDURE 54(d) provides that costs "should be allowed to the prevailing party." Included in the costs which may be taxed are "fees and disbursements for printing." *See* 28 U.S.C. § 1920(3). "Rule 54 represents a codification of the presumption that the prevailing party is entitled to costs." *Brown*, 526 F. Supp. 2d at 952 (quoting *Martin v. Daimler Chrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001)). This case, which involved the submission of 145 fraudulent claims by Miell, was particularly document intensive. The Court concludes that American Family

---

[25] In his Resistance, Miell suggests that the transcript for Ms. Peacock's deposition was $270. It would appear to the Court, however, that the $270 was a reporting fee applicable to both depositions and, similarly, the transcript charge was applicable to both depositions.

is entitled to recover the substantial costs associated with copying the documents related to this action.

In summary, the Court concludes that the service costs (items 2-6 above) and the deposition costs for Cindi Peacock (item 7 above) are not properly assessed as costs. The remaining costs, totaling $4,000.57, shall be taxed as costs to Miell.

## VIII. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Bill of Costs (docket number 163) filed by American Family on February 14, 2008, is hereby **GRANTED** in part and **DENIED** in part as follows: Costs shall be taxed against Miell in the amount of Four Thousand Dollars and fifty-seven cents ($4,000.57).

2. The Motion for New Trial (docket number 164) filed by Miell on February 14, 2008, is hereby **DENIED**.

3. The Motion for Judgment as a Matter of Law and/or to Alter or Amend the Judgment (docket number 165) filed by Miell on February 14, 2008, is hereby **DENIED**.

4. The Motion for Attorney fees (docket number 166) filed by American Family on February 14, 2008, is here by **DENIED**.

DATED this 1st day of July, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA